IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MSC MEDITERRANEAN SHIPPING
COMPANY S.A.,

*Petitioner*

v.

FEDERAL MARITIME COMMISSION

*Respondent*

Case No. 24-1262

## PETITION FOR REVIEW

Petitioner MSC Mediterranean Shipping Company S.A. ("MSC") seeks this Court's review under the Hobbs Administrative Orders Review Act, *see* 28 U.S.C. §§ 2342(3)(B), 2344, of the following Order of the Federal Maritime Commission: *Order Affirming Initial Decision on Remand,* FMC Dkt. No. 21-05 (served July 16, 2024), and all orders or rulings encompassed in or made reviewable by that order, including as necessary the *Order Partially Affirming Initial Decision on Default and Remanding for Further Proceedings,* FMC Dkt. No. 21-05 (served January 3, 2024). Copies of the July 16 Order and January 3 Order are attached to this Petition.

Petitioner has previously filed a Petition for Review of the Commission's January 3 Order that is docketed in this Court as No. 24-1007. Petitioner requests that this petition be consolidated with that petition.

Respectfully submitted,

*/s/ Michael F. Scanlon*

Michael F. Scanlon
John Longstreth
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com

*Counsel for MSC Mediterranean Shipping Company S.A.*

July 30, 2024

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MSC MEDITERRANEAN SHIPPING
COMPANY S.A.,

*Petitioner*

v.

FEDERAL MARITIME COMMISSION

*Respondent*

Case No.

**CORPORATE DISCLOSURE STATEMENT OF
MSC MEDITERRANEAN SHIPPING COMPANY S.A.,**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, and District of Columbia Circuit Rule 26.1, Petitioner MSC Mediterranean Shipping Company S.A. ("MSC") states that it is a fully owned subsidiary of MSC Mediterranean Shipping Company Holding S.A., which is not publicly held.

Pursuant to the requirement of Circuit Rule 26.1(b) that it provide a statement of general nature and purpose relevant to the litigation, MSC states that it is a Vessel Operating Common Carrier, organized under the laws of Switzerland and with its principal place of business in Geneva, Switzerland, that provides ocean shipping services worldwide, including to and from the United States.

3

Respectfully submitted,

*/s/ Michael F. Scanlon*

Michael F. Scanlon
John Longstreth
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com

*Counsel for MSC Mediterranean Shipping Company S.A.*

July 30, 2024

## CERTIFICATE OF SERVICE

Pursuant to Rule 15(c) of the Federal Rules of Appellate Procedure, I hereby certify that I have this 30th day of July, 2024, caused to be served copies of the foregoing Petition for Review by first class mail to:

> David Eng, Secretary
> Federal Maritime Commission
> 800 North Capitol Street, N.W.
> Washington, D.C. 20573

and by email on all parties on the Commission's service list in the underlying proceeding, Commission Docket No. 21-05.


__*/s/ John Longstreth*_____
John Longstreth

# FEDERAL MARITIME COMMISSION

MCS Industries, Inc.,

    *Complainant*,

       v.

MSC Mediterranean Shipping Company S.A.,

    *Respondent.*

Docket No. 21-05

Served: July 16, 2024

**BY THE COMMISSION:** Daniel B. MAFFEI, Chairman, Rebecca F. DYE, Louis E. SOLA, Carl W. BENTZEL, Max VEKICH, Commissioners.

### Order Affirming Initial Decision on Remand

    This case is before the Federal Maritime Commission (Commission or FMC) on Exceptions to an Initial Decision on Remand (Remand Decision) of the Administrative Law Judge (ALJ) dated February 16, 2024. The Remand Decision followed the Commission's Order Partially Affirming Initial Decision on Default and Remanding for Further Proceedings dated January 3, 2024 (January 2024 Order). The January 2024 Order upheld as to liability an earlier decision of the ALJ imposing default on Respondent MSC Mediterranean Shipping Company S.A. (Mediterranean), a vessel-

operating common carrier, for its failure to comply with multiple discovery orders in a case filed by Complainant MCS Industries, Inc. (MCS), a shipper.

The Commission's January 2024 Order also remanded this matter to the ALJ for further consideration of two issues. First, the Commission remanded for a determination as to whether the sanctions available under 46 U.S.C. § 41302(d) for delay in the issuance of final FMC decisions are a potential additional basis for the imposition of default here. Second, the Commission remanded for the submission of evidence sufficient to support the reparations MCS seeks.

In the Remand Decision, the ALJ first determined that 46 U.S.C. § 41302(d) was an independent basis supporting the imposition of default in this matter. The ALJ found that section 41302(d) applied to private-party complaint actions like this one and that Mediterranean's conduct here had caused "undue delay" under that provision. Second, the ALJ determined that MCS had provided sufficient evidence to support an award of reparations. Although the ALJ denied MCS's request for reparations that were outside the scope of the amended complaint — about one quarter of the total requested — the ALJ awarded reparations in the amount of $861,706.50 plus interest.

We affirm the Remand Decision with respect to section 41302(d). The ALJ was correct to find that the delay sanction described in that provision applies to private-party complaint proceedings like this one, under the plain terms of the statute. In addition, the ALJ permissibly found that Mediterranean's conduct had caused undue delay in this matter, whether that determination is reviewed de novo or under an abuse of discretion standard. And the ALJ properly rejected Mediterranean's arguments that a section 41302(d) sanction cannot be imposed here because Swiss law bars the discovery production at issue and because such a sanction would ostensibly create tension with the notification provision of 46 U.S.C. § 41108(c).

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        3

       We also affirm the Remand Decision as to reparations. The ALJ's reparations award was based on a declaration from MCS's sole logistics analyst and extensive supporting documentation. As explained below, the ALJ permissibly determined the overall scope and amount of reparations at issue, matters about which there now seems to be little dispute. Mediterranean does object that MCS's declarant lacked sufficient knowledge of the relevant activities in part of the time period at issue, that MCS failed to provide evidence sufficiently linking the violations to its replacement shipments, and that MCS failed to show it had mitigated its damages. It is true that MCS's evidentiary showing could have been more detailed in some respects. However, on the whole the evidence MCS has provided is sufficient to support the reparations the ALJ ordered in the context of this case and under the relevant legal standards. The ALJ also permissibly rejected Mediterranean's claim that it was entitled to an evidentiary hearing. Thus, the reparations award was within the ALJ's discretion, and in any case her analysis was well-reasoned and well-supported.

       Finally, we deny Mediterranean's request for oral argument.

## I. BACKGROUND

### A.    Procedural history prior to the ALJ's Initial Decision on Default

       MCS, a U.S. shipper, initiated this case with a Complaint dated July 28, 2021, alleging that Mediterranean and COSCO Shipping Lines Co., Ltd. (COSCO), who are vessel-operating common carriers, had violated 46 U.S.C. § 41102(c) and several provisions of 46 U.S.C. § 41104(a) of the Shipping Act of 1984 in connection with their provision of ocean carriage services. Verified Complaint; January 2024 Order, Doc. 68 (Jan. 3, 2024) at 3.

       On September 23, 2021, the ALJ issued a Scheduling Order that set the close of discovery for January 27, 2022. On that same

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.    4

day, the ALJ approved a proposed settlement agreement between MCS and COSCO. Initial Decision Approving Confidential Settlement Agreement.

On November 22, 2021, MCS filed a motion to compel discovery, and on December 8, the ALJ granted MCS's motion to compel. Order Granting Motion to Compel (First Order). This extensive Order required Mediterranean to produce additional information in connection with 14 topics, encompassing responses to document requests and interrogatories. First Order; January 2024 Order at 3. The ALJ rejected Mediterranean's general objections that sought to limit its discovery obligations to what it saw as "core issues" and to put the burden on MCS to justify its discovery. *Id*. She also ordered Mediterranean to provide further information about interactions related to MCS as well as conduct beyond the specific transpacific bookings at issue. *Id*.

Although Mediterranean did not administratively appeal the First Order issued in December 2021, it also did not comply with the Order. Instead, later in December Mediterranean moved to dismiss the complaint, and MCS moved to file an amended complaint. FMC Docket No. 21-05, Docs. 31-34, 36. On February 4, 2022, the ALJ denied Mediterranean's motion to dismiss and granted MCS's motion to amend the complaint. Order on Motion to Amend Complaint and Motion to Dismiss (MTD Order).

In late February 2022, Mediterranean filed a notice that raised issues related to the production of documents in Switzerland, and the parties filed a joint status report; then, on March 4, the ALJ issued an order directing the parties to submit further detail as to what procedure they were requesting for the production of that evidence. Order on Proposed Revised Schedule and Discovery Notice. On April 4, the parties filed a joint status report requesting that a letter be issued under Hague Evidence Convention procedures, and on May 4, the ALJ granted that request. Order Granting Request for Letter of Request Under Hague Convention.

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        5

On July 8, 2022, MCS filed a notice attaching the response from a Swiss court that rejected the Request as outside the scope of the Hague Evidence Convention because the relevant FMC proceeding is an administrative one. Notice of Decision on Letter of Request.

On July 29, 2022, the ALJ issued an Order Requiring Production of Discovery (Second Order). January 2024 Order at 4. The Second Order rejected Mediterranean's request that a new request be submitted to the Swiss Federal Office of Justice, explaining that the Swiss court had determined that its involvement was not needed. *Id*. Relying on federal court precedent, the ALJ noted that a party seeking to use Hague Evidence Convention procedures must show they are necessary, and that foreign law actually bars the discovery at issue, but here Mediterranean had failed to do so. *Id*. The ALJ cited recent federal court decisions that had rejected similar claims based on the same Swiss provision because there was no threat of criminal sanction in the U.S. cases, and she noted that the same was true as to the sanctions available here under 46 C.F.R. § 502.150(b). *Id*. Thus, the ALJ ordered Mediterranean to produce the outstanding discovery by August 29, 2022. Second Order at 4.

Although Mediterranean did not administratively appeal the Second Order issued in July 2022, it also did not comply with the Order. Instead, it proceeded to seek advice from the Swiss government, requesting an extension of time to facilitate that, and on September 6, 2022, it submitted a Notice of Advice of the Swiss Federal Office of Justice, attaching a communication from that Office. In essence, Mediterranean argued that the Swiss Federal Office had indicated that a new request for judicial assistance could be submitted despite the earlier ruling of the Swiss court, and it further argued that the Office's response supported Mediterranean's insistence that Hague Evidence Convention procedures apply. Notice of Advice at 1-2.

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.      6

On September 8, 2022, the ALJ issued an Order Denying Respondent's Motion for an Extension of Time and Order to Show Cause (Third Order). January 2024 Order at 5. The Third Order directed Mediterranean to "either provide the required discovery or show cause why default judgment should not be entered against it." *Id*. The ALJ rejected Mediterranean's continued arguments that Swiss law barred it from producing the outstanding discovery, noting that the "advice" from the Swiss Federal Office of Justice did not compel the result Mediterranean sought, and that Mediterranean was seeking to relitigate an issue that had already been decided. *Id*. Accordingly, the ALJ directed Mediterranean to show cause why default should not be entered under 46 C.F.R. § 502.150(b), although the Order specifically noted that if Mediterranean produced the required discovery, the issue would be moot, and the case could proceed. *Id*.

Mediterranean did not provide discovery in response to the Third Order, but the parties did file responses. Mediterranean argued that further consultation with Swiss authorities was the proper course because it would otherwise risk criminal sanctions, that default was a drastic remedy not called for where it had a good faith belief in that risk, that the consultation procedure in 46 U.S.C. § 41108(c)(2) had not been used, and that in any event the agency lacked jurisdiction over the matter. Respondent Mediterranean Shipping Company S.A.'s Response to Order to Show Cause (Sept. 22, 2022) at 1-4; Reply with Respect to Order to Show Cause (Oct. 14, 2022). MCS argued that Mediterranean had violated multiple FMC discovery orders and that a default sanction was justified under the standards applicable to the analogous Federal Rule of Civil Procedure 37(b)(2). Complainant MCS's Response to Order to Show Cause (Oct. 6, 2022) at 1-2.

While a decision on the Order to Show Cause remained pending, Mediterranean filed further notices attaching materials from the Swiss government that it insisted showed Hague Evidence Convention procedures were required. Notice of Determination of the Swiss Federal Office of Justice (Oct. 18, 2022); Notice of

Issuance of Formal Decision of the Swiss Federal Office of Justice and Police That Hague Evidence Convention Procedures Apply to This Proceeding and Must Be Used (Nov. 8, 2022). MCS argued that Mediterranean was improperly attempting to relitigate the issues and that default remained the proper remedy. Response Letter of Complainant (Oct. 28, 2022).

### B.    The ALJ's Initial Decision on Default

On January 13, 2023, the ALJ issued the Initial Decision on Default (Default Decision), Doc. 64. The ALJ noted that 46 C.F.R. § 502.150(b) describes the remedies available for failure to comply with an FMC discovery order, and section 502.150(b)(3) authorizes the ALJ to issue "a decision by default against the disobedient party." Default Decision at 14. The ALJ pointed out that the Commission had previously approved dismissals of cases where a party had willfully failed to provide discovery. *Id*. First turning to the FMC's jurisdiction, the ALJ stated that Mediterranean's claims on that issue were untimely, but in any case, the FMC has jurisdiction over Shipping Act claims even if, as Mediterranean argued, a related proceeding is underway, such as an arbitration of a breach of contract claim required by a service contract. *Id*. at 14-16.

Next, the ALJ concluded that a default should be entered. *See* Default Decision at 17-22. The ALJ emphasized Mediterranean's failures to comply with FMC discovery orders and its failure to show Hague Evidence Convention procedures were required. *Id*. at 17. The ALJ focused on the three factors set out in *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) — prejudice to the other party as a result of the conduct at issue, prejudice to the judicial system, and the need to deter similar conduct. Default Decision at 17-18. First, with regard to prejudice to MCS, the ALJ stressed that Mediterranean had failed to produce additional information as ordered in more than a dozen categories and that it had wrongly tried to limit the scope of discovery to less than what was required to evaluate MCS's claims. *Id*. at 18. The ALJ noted that the information wrongly withheld here would likely have

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.    8

led to additional discovery requests, significantly hampering MCS's ability to proceed. *Id*. at 19. The ALJ also found that Mediterranean's conduct had prejudiced MCS by delaying the proceeding. *Id*. Second, as to prejudice to the adjudicatory system, the ALJ emphasized that federal agencies must protect their integrity and the orderly conduct of business, citing an FMC case upholding a dismissal where complainant had failed to respond to discovery. *Id*. The ALJ listed case deadlines that had not been met because of Mediterranean's failure to provide the discovery ordered. *Id*. at 20. Third, as to deterrence, the ALJ noted that the most severe sanction had to be available to deter future misconduct. *Id*. at 21. The ALJ noted that Mediterranean had not specifically described the information it claimed was protected because it was located in Switzerland. *Id*. The ALJ found that Mediterranean's refusal to follow the determination of the Swiss court or the ALJ's orders supported a finding that its refusal was willful and deliberate. *Id*. The ALJ also found that the violations alleged in the case were significant, and that Mediterranean's conduct had to be addressed to deter similar conduct. *Id*. at 21-22.

Finally, the ALJ considered the appropriate remedy. *See* Default Decision at 22-23. She cited precedent authorizing the award of reparations following default of "specified liquidated amounts requiring little or no calculations." *Id*. The ALJ looked to MCS's complaint, as well as information in its order to show cause brief, and awarded $944,655 in reparations. *Id*. at 22.

### C.    The Commission's Order Partially Affirming the Initial Decision on Default and Remanding as to Two Issues

On January 3, 2024, after evaluating Mediterranean's exceptions to the ALJ's Default Decision, the Commission issued the January 2024 Order. As to liability, the Commission denied the exceptions and affirmed the Default Decision. January 2024 Order at 2. The Commission concluded that the ALJ had permissibly found Mediterranean's conduct merited default as a discovery sanction,

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        9

whether the Default Decision was reviewed de novo or under an abuse of discretion standard. *Id*.

As a threshold matter, the Commission found that the ALJ had properly determined that the FMC has jurisdiction over MCS's claims and that those claims were adequately stated. *See* January 2024 Order at 11-14. That was so even though the parties had agreed in their service contracts to resolve disputes by arbitration, the Commission explained, because Shipping Act claims like those made by MCS are distinct and can still be pursued in an FMC adjudication. *Id*. at 11-13.

The Commission also concluded that the ALJ's decision to impose default as a discovery sanction was within her discretion and, in any event, it was well-reasoned and well-supported by the record. *See* January 2024 Order at 14-24. First, the Commission noted, Mediterranean had failed to comply with multiple orders, dating back to December 2021, that it provide substantial outstanding discovery. *Id*. at 14-17. The ALJ had properly rejected Mediterranean's repeated claims that Swiss law bars it from providing that discovery under FMC procedures. *Id*. at 14-16, 21-22. In addition, the Commission found, the ALJ had properly determined that all three factors set out in the *Webb* decision for the evaluation of default as a discovery sanction were present. *Id*. at 17-23. In particular, the ALJ had permissibly found that Mediterranean's conduct had prejudiced MCS in this case, that it had prejudiced the FMC's adjudicatory system by creating burdens and delays, and that its willfulness presented a need to deter potential future misconduct. *Id*. at 17-22. Finally, the Commission determined that the ALJ's Default Decision showed that lesser sanctions would not be adequate to address this situation. *Id*. at 22-23.

After affirming the decision as to liability, the Commission remanded the matter to the ALJ for further consideration of two issues. *See* January 2024 Order at 25-30. First, the Commission remanded for consideration of whether the sanctions available under

46 U.S.C. § 41302(d) for delay in the issuance of final FMC decisions were an additional basis to impose default in this proceeding. *Id*. at 25-27. Second, as to the appropriate remedy, the Commission remanded for the submission of evidence that was sufficient to support the reparations MCS sought. *Id*. at 27-30.

On remand, the ALJ immediately issued a schedule for briefing on the remanded issues, *see* Remand Scheduling Order (Jan. 4, 2024), but before the parties began that briefing, Mediterranean filed a petition seeking judicial review of the January 2024 Order, *see* Petition, *Mediterranean v. FMC*, No. 24-1007 (D.C. Cir. filed Jan. 12, 2024), Doc. No. 2037017; Clerk's Notice (Jan. 23, 2024), Doc. No. 2037032. The petition stated that it was "filed protectively, despite the pendency of remand proceedings before the Commission, to assure that there is no question" about whether the January 2024 Order could be reviewed. Mediterranean also stated that it would seek to stay its petition until completion of the FMC No. 21-05 matter. Petition at 1-2. The FMC moved to dismiss the case for lack of jurisdiction because there had been no "final order," as is required for review under the Hobbs Act, 28 U.S.C. § 2342(3). *See* FMC's Motion to Dismiss (Feb. 28, 2024), Doc. No. 2042683. Mediterranean did not oppose the motion, but argued that if the case was not dismissed, it should be held in abeyance. Mediterranean's Response to Motion to Dismiss and Conditional Cross-Motion to Hold Case in Abeyance (Mar. 11, 2024), Doc. No. 2044450. On March 22, 2024, the court issued an order deferring the FMC's motion to dismiss and holding the case in abeyance, with the parties to file motions about further proceedings "within 30 days after resolution of the agency proceedings." Order (Mar. 22, 2024), Doc. No. 2046262. Separately, the court granted MCS's motion to intervene in the case. Order (Mar. 22, 2024), Doc. No. 2046264.

In the meantime, MCS filed its Brief on Remand and related materials in FMC No. 21-05 on January 19, 2024. MCS argued that 46 U.S.C. § 41302(d) constitutes an additional independent basis for the ALJ's default decision, and it sought $1,152,677 in reparations, based on a declaration and supporting documents related to relevant

shipments. Brief on Remand. Mediterranean filed its Response Brief on Remand on February 2, 2024. Mediterranean argued that the evidence MCS had provided was so insufficient as to justify a complete denial of reparations, or at a minimum a hearing at which Mediterranean could challenge MCS's declarant and supporting evidence. Response Brief on Remand at 1-11. Mediterranean also argued that section 41302(d) did not support imposing a default in this case. *Id*. at 11-15.

## D.      The ALJ's Initial Decision on Remand

On February 16, 2024, after evaluating the parties' submissions, the ALJ issued the Remand Decision, Doc. 75. First, the ALJ found that the delay sanction at 46 U.S.C. § 41302(d) was an additional basis supporting the entry of default against Mediterranean. *Id*. at 6-9. The ALJ noted that section 41302(d) authorizes sanctions, including an "adverse decision," where the Commission is "unable to issue a final decision" within the period it set to do so under section 41302(c) "because of undue delay caused by a party to the proceeding." *Id*. at 7-8. The ALJ noted that not all delays are "undue," and Mediterranean had a right to vigorously defend itself. *Id*. at 8. However, she concluded that when Mediterranean failed to provide the outstanding discovery after the July 2022 order (the Second Order), which warned of the potential for a default sanction, its delay of the case became "undue." *Id*. First, the ALJ found that under the terms of the statute, section 41302(d) does apply to complaint proceedings like this one. *Id*. Next, she rejected Mediterranean's reliance on its claim that the delay sanction could not be applied where a foreign law barred discovery production. *Id*. at 9. She explained that a legitimate dispute of that nature would not create delay that was "undue," but here, even after the ALJ and the court in Switzerland had rejected the approach Mediterranean advocated, it still failed to produce the outstanding discovery, instead filing additional documents renewing its claims throughout the rest of 2022. *Id*. The ALJ found that these delays prevented the Commission from meeting its August 2023 deadline for a final decision, and that had the default not been imposed, the

case might still be pending at the discovery stage, as the outstanding discovery would be needed for a merits decision. *Id.*

Turning to reparations, the ALJ undertook an extensive analysis of the evidence MCS provided to support its claims, as well as Mediterranean's objections. Remand Decision at 9-24. First, the ALJ explained the basic legal standards governing the award of reparations in the default context. *Id.* at 9-11. Complainants have the burden of proving entitlement to reparations based on their actual damages, and under analogous federal court precedent, they may do so with detailed affidavits or documentary evidence. *Id.* at 10-11.

To support its claims, the ALJ noted, MCS submitted a sworn affidavit from its logistics analyst attaching copies of the relevant service contracts between MCS and Mediterranean, the 2020 contract (May 2020-April 2021) and 2021 contract (May 2021-April 2022); a table with extensive data about replacement shipments of MCS cargo for the time frames and port pairs covered by these service contracts, but that were not carried under any service contract; and invoices, freight bills, sea waybills, and other documents supporting that data. Remand Decision at 11-13. Based on this evidence, MCS sought reparations of (1) the difference between MCS's 2020 service contract rate and the amount it actually paid for the 299 twenty-foot equivalent units (TEUs) it alleges that Mediterranean refused to carry under that contract, or $400,509; (2) the difference between MCS's 2021 service contract rate and the amount it actually paid for the 123.5 TEUs it alleges that Mediterranean refused to carry under the three months of that contract that were the "focus" of MCS's original FMC complaint (May-July 2021), or $463,936; and (3) the difference between MCS's 2021 contract rate and the amount it actually paid for the 112.25 TEUs it alleges that Mediterranean refused to carry in the final months of that 2021 contract (December 2021-April 2022), or $288,232, for total requested reparations of $1,152,677. *Id.* at 12-13.

Next, the ALJ addressed Mediterranean's claims that MCS could not recover for the third category of reparations claimed above, specifically the $288,232 for the final months of the 2021 service contract, because it failed to provide adequate notice it was seeking such damages. Remand Decision at 14-16. The ALJ noted that under Federal Rule of Civil Procedure 54(c), a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Id*. at 15. She also noted that MCS's amended complaint did put Mediterranean on notice that the alleged violations were ongoing, and that some federal court precedent permits recovery of amounts not specified in pleadings where adequate notice is provided later, such as in connection with a motion for default judgment. *Id*. However, MCS's response to the Order to Show Cause (Third Order), where default was at issue, had sought only reparations incurred during the period of the 2020 service contract and the first three months of the 2021 service contract, which MCS at that time calculated to total $944,655. *Id*. at 14-15. Therefore, although notice was sufficient as to those earlier amounts, the ALJ concluded that MCS could not recover for any damages after that period, namely the $288,232 for the last five months of the 2021 contract. *Id*. at 15, 16.

The ALJ rejected Mediterranean's claim that it was entitled to an oral hearing to cross-examine MCS's declarant and otherwise challenge its evidentiary showing. Remand Decision at 16-17. She noted that oral hearings are not required in the default context under federal court precedent, and that the Commission generally awards reparations without such hearings even outside that context, under its Rules of Practice and Procedure. *Id*. The ALJ explained that the evidence MCS had submitted was sufficient for decision as to the reparations at issue. *Id*. at 17. Finally, the ALJ noted that she had discretion under FMC Rules to determine whether an oral hearing was needed, and that in this case Mediterranean had failed to show that one was. *Id*.

The ALJ addressed Mediterranean's numerous objections to the specific evidence MCS provided to support its reparations

claims. Remand Decision at 17-23. First, the ALJ rejected Mediterranean's claim that MCS's declarant Brittany Montesano lacked the required personal knowledge. *Id*. at 18. The ALJ explained that as MCS's logistics analyst since 2016, Montesano had signed the relevant service contracts and verified MCS's FMC complaints. *Id*. Her knowledge of the relevant shipments had been established and her statements were supported by the documents attached to her declaration, even though she had been on maternity leave for three months in mid-2021. *Id*.

The ALJ also rejected Mediterranean's arguments that MCS had failed to show the differentials between its service contract rates and the spot market rates it paid for the replacement shipments reflected in its evidence were adequately supported measures of its damages. Remand Decision at 18-20. She found that Mediterranean was advocating for an excessively high standard of proof, and she rejected its apparent claims that MCS had to tie each spot shipment to a prior request that Mediterranean carry the shipment and to show that each spot shipment could not have been made any other way. *Id*. at 19-20.

In addition, the ALJ concluded that the evidence supported reparations as to most specific port pairs for which MCS sought reparations. Remand Decision at 20-21. However, the ALJ noted that the amended complaint did not allege any violations involving the port of Jakarta, and so she excluded requested reparations related to that port, resulting in a reduction of $2,738.50. *Id*.

Next, the ALJ turned to Mediterranean's arguments as to the timing of the shipments for which MCS sought reparations. Remand Decision at 21-22. She concluded that reparations were appropriate for the year of the 2020 service contract and the first three months of the 2021 service contract, as MCS had included those periods in its amended complaint and evidence supplied was sufficient to support those reparations. *Id*. With regard to shipments involving the port of Tianjin, the ALJ found that even though evidence showed MCS received its full shipping allocation from Mediterranean for

July 2021 from that port, reparations based on some spot market shipments that took place in August 2021 were appropriate because of delays caused by earlier violations. *Id*.

Finally, the ALJ reviewed the evidence as to the specific number of shipments for which MCS was entitled to reparations. Remand Decision at 22-23. She explained that MCS was entitled to the difference between its allocation of shipments under the service contracts and the shipments Mediterranean actually did carry for the time frames and port pairs at issue. *Id*. at 22. This totaled 422 twenty-foot equivalent units (TEUs), or 419.75 TEUs after removal of the Jakarta shipment. *Id*. at 22-23. The ALJ determined that certain minor discrepancies in the way TEUs were listed in MCS's evidence did not require a reduction in the overall reparations amount. *Id*.

The ALJ concluded that MCS was entitled to a total of $861,706.50 in reparations: $397,770.50 for the period of the 2020 service contract (the $400,509 sought minus $2,738.50 for the Jakarta shipment), plus $463,936 for the first three months of the 2021 service contract. Remand Decision at 23. The ALJ also awarded interest under 46 U.S.C. § 41305(a) accruing from July 31, 2021, the last date for which the amended complaint alleged violations. *Id*. at 23-24.

On March 11, 2024, Mediterranean timely filed its Exceptions to Initial Decision on Remand (Exceptions), Doc. 76. MCS did not file exceptions to any aspect of the ALJ's award. On April 2, 2024, MCS timely filed a Reply to Mediterranean's Exceptions to Initial Decision on Remand (Exceptions Reply), Doc. 77.

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        16

## II.  DISCUSSION

### A.        Standard of Review

When the Commission reviews exceptions to an ALJ's Initial Decision, it normally has "all the powers which it would have in making the initial decision." January 2024 Order at 9 (quoting 46 C.F.R. § 502.227(a)(6)). The Commission therefore generally reviews the ALJ's determinations de novo. *Id.*; *see also Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, FMC Docket No. 12-02, 2015 WL 9426189, at *5 (FMC Dec. 18, 2015). In particular, when reviewing an ALJ's Initial Decision on default after a respondent has failed to appear, the FMC has adopted the ALJ's findings of fact and law if "they are well-reasoned and supported by evidence in the record." *United Logistics (LAX) Inc. – Possible Violations of Sections 10(A)(1) and 10(B)(2)(A) of the Shipping Act of 1984*, FMC Docket No. 13-01, 2014 WL 5316339, at *1 (FMC Feb. 6, 2014). Here, the ALJ's conclusion that the sanctions for undue delay described in 46 U.S.C. § 41302(d) are potentially available in private-party complaint proceedings is reviewed de novo, as a legal determination.

However, other elements of the Remand Decision under review here are more appropriately reviewed under an abuse of discretion standard. As explained in the January 2024 Order, the Commission reviews discovery orders, including orders imposing sanctions, under an abuse of discretion standard. *See* January 2024 Order at 9-10; *Rana v. Franklin*, FMC Docket No. 19-03, 2022 WL 1744905, at *4 (FMC May 25, 2022); *Kawasaki Kisen Kaisha, Ltd. v. Port Auth. of N.Y. and N.J.*, FMC Docket No. 11-12, 2014 WL 7328475, at *7-8 (FMC Nov. 20, 2014)). "In reviewing district courts' orders on discovery, the United States Courts of Appeal apply an abuse of discretion standard because a 'narrowly circumscribed' scope of review is consistent with district courts' 'considerable discretion in managing discovery' and their 'broad discretion to impose sanctions for discovery violations under [Federal] Rule [of Civil Procedure] 37.'" *Rana*, 2022 WL 1744905,

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.      17

at *4 (quoting *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015) (additional citations omitted)); *see also Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996) (reviewing court should reverse discovery sanctions only if they are found to be "clearly unreasonable, arbitrary, or fanciful"). The D.C. Circuit "review[s] the district court's imposition of discovery sanctions, including a default judgment award, for abuse of discretion." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv.*, 776 F.3d 1, 4 (D.C. Cir. 2015). The Commission has reviewed decisions dismissing actions for failure to comply with discovery orders, *see, e.g.*, *Interpool, Ltd. v. Pac. Westbound Conf.*, 22 F.M.C. 762, 764, 19 S.R.R. 1719 (FMC May 15, 1980), available at https://www.fmc.gov/wp-content/uploads/2019/04/vol22.pdf, and in *Kawasaki*, it clarified that it would do so under an abuse of discretion standard, *see* 2014 WL 7328475, at *8.

In light of the above, the Commission concluded in the January 2024 Order that the abuse of discretion standard is appropriate for review of the ALJ's imposition of *default as a discovery sanction* under 46 C.F.R. § 502.150(b). *See* January 2024 Order at 10. Of course, default may be considered a more severe sanction than dismissal, as it determines liability and will likely lead to remedies, rather than a mere preservation of the status quo. The D.C. Circuit has described its abuse of discretion review in the default context as "more 'thorough' because the 'drastic' sanction 'deprives a party completely of its day in court.'" *Reliable Limousine*, 776 F.3d at 4 (quoting *Webb*, 146 F.3d at 971).

The same abuse of discretion standard is properly applied to review of the ALJ's imposition in the Remand Decision of *default as a sanction for undue delay* under 46 U.S.C. § 41302(d). Section 41302(d) serves a purpose comparable to that of the discovery sanctions provision at 46 C.F.R. § 502.150(b). Specifically, the delay sanction provision deters parties from obstructing the conduct of the FMC's administrative adjudication proceedings under 46 U.S.C., Chapter 413, and 46 C.F.R., Part 502, and deciding whether to impose such a sanction involves a similar exercise of ALJ

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        18

discretion. MCS advocates for an abuse of discretion standard in the current situation for similar reasons. Exceptions Reply at 3-4. In any event, below we review the Remand Decision's imposition of the delay sanction at 46 U.S.C. § 41302(d) with reference to both abuse of discretion and de novo standards.

Now we turn to the standard of review applicable to the Commission's review of the ALJ's reparations determination. At least some federal agencies review ALJ decisions as to damages under an abuse of discretion standard. *See*, *e.g.*, *In the Matter of: Office of Federal Compliance Programs v. Bank of America*, Admin. Rev. Bd., U.S. Dept. of Labor, No. 13-099, 2016 WL 2892921, at *14 (DOL Adm. Rev. Bd. Apr. 21, 2016) (like a federal appellate court, review board will adopt ALJ's methodology for awarding damages if she "exercised reasonable discretion"); *In the Matter of: Larry Barnum v. J.D.C. Logistics, Inc.*, Admin. Rev. Bd., U.S. Dept. of Labor, No. 08-030, 2009 WL 564763, at *4 (DOL Adm. Rev. Bd. Feb. 27, 2009) (Board affirms ALJ's damages award because substantial evidence supported it and the ALJ did not abuse his discretion). Federal appellate courts reviewing awards of damages by district courts also generally use an abuse of discretion standard. *See Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 909 (D.C. Cir. 2018) (statutory damages award under Copyright Act reviewed for abuse of discretion). The basic rationale is that "[d]amage awards are 'findings of fact governed by Federal Rule of Civil Procedure 52(a), which will not be disturbed unless clearly erroneous.'" *U.S. for Use and Benefit of Am. Civil Construction, LLC v. Hirani Eng'g & Land Surveying, PC*, 26 F.4th 952, 959 (D.C. Cir. 2022) (quoting *Bucheit v. Palestine Liberation Org.*, 388 F.3d 346, 350 (D.C. Cir. 2004) (internal quotations omitted)). MCS's brief advocates for an abuse of discretion standard in this case generally, and it discusses the ALJ's reparations decision in those terms. *See*, *e.g.*, Exceptions Reply at 2-3. Mediterranean does not appear to take a position on the standard of review for the reparations award. On balance, we find that it is appropriate to review the reparations award for abuse of discretion. In any case,

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        19

below we will review the award with reference to both abuse of discretion and de novo standards.

> **B.**  **The ALJ correctly found that delay sanctions under 46 U.S.C. § 41302(d) are available in private-party complaint proceedings, and her finding that a default was appropriate under that provision here was permissible**

The ALJ's determination in the Remand Decision that delay sanctions under 46 U.S.C. § 41302(d) are available in private-party complaint proceedings was correct. In addition, her determination that default was an appropriate remedy under section 41302(d) for Mediterranean's failure to comply with discovery orders here was within her discretion and well-supported by the record.

> 1.    Section 41302(d) applies to private-party complaint proceedings

The ALJ correctly found that 46 U.S.C. § 41302(d) applies to private-party complaint proceedings like this one. Remand Decision at 6-8. That is evident from the plain language of the statute. Section 41302(d) provides that, where the Commission is "unable to issue a final decision because of undue delay caused by a party" to a proceeding "within the period for final decision under" section 41302(c), the Commission "may impose sanctions, including issuing a decision adverse to the delaying party." And as the ALJ explained, section 41302(c) specifically states that it applies to proceedings under sections 41302 *and* 41301, the latter of which is the "Complaints" section under which proceedings like this one arise. *See* Remand Decision at 8 (citing January 2024 Order at 25). Thus, Congress clearly intended section 41302(d) to apply to proceedings originating as "Complaints" under section 41301, as well as those that are "Investigations" under section 41302.

Mediterranean's arguments to the contrary are unpersuasive. *See* Exceptions at 13-14. It claims that Congress did not intend for

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.      20

section 41302(d) sanctions to apply to private-party complaint proceedings, but the only support it offers for that claim is that the original heading of what is now section 41302 was "Conduct of Investigations." *Id*. at 13. The headings of statutory sections may aid in interpretation, but they cannot limit the plain meaning of the text. *Citizens for Responsibility and Ethics in Wash. v. FEC*, 316 F.Supp.3d 349, 396 (D.D.C. 2018) (citing *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528–29 (1947) and later cases). And Mediterranean offers no response to the ALJ's careful analysis of the interplay between the subsections of section 41302, as described above, which makes clear that Congress did indeed intend that section 41302(d) apply in complaint proceedings. Mediterranean notes that extensions of final decision deadlines at the FMC are not unusual, citing a 1983 House Report describing the deadlines as "a target," and it argues that the deadlines operate only as "guidelines." *Id*. at 13. But again, these claims founder on the text of section 41302(d), which leaves no doubt that, when a party causes "undue" delay, the Commission "may impose sanctions, including issuing a decision adverse to the delaying party." Mediterranean also notes that it appears section 41302(d) has never before been applied to a reparations proceeding or as a basis for default. *Id*. at 13-14. However, the fact that section 41302(d) does not seem to have been applied in such situations before is no reason to disregard its potential application in an appropriate case today.

> 2.  The ALJ permissibly determined that
> default was an appropriate section
> 41302(d) delay sanction in this case

The ALJ's determination that section 41302(d) provides an independent basis to support a default sanction against Mediterranean here was within her discretion, and in any case was well-supported. Remand Decision at 6-9. In reviewing the issue, the ALJ first quoted the Commission's January 2024 Order at length. *Id*. at 6-7 (quoting January 2024 Order at 25-27). In the quoted material, the Commission had noted that Mediterranean's failures to comply with discovery orders appeared to be at least the primary

cause of two extensions of the final decision deadline in FMC No. 21-05, setting the date back by about a year. *Id*. In her own analysis, the ALJ stated that although Mediterranean had a right to defend itself, its delays became "undue" under section 41302(d) when it failed to provide the extensive outstanding discovery after her July 2022 order (the Second Order). *Id*. at 8. She rejected Mediterranean's argument that it could not comply because Swiss law barred the production and the issue should have been resolved using international procedures. *Id*. at 9. The ALJ noted that a legitimate dispute of that nature would not create delay that was "undue," but here, the ALJ and the court in Switzerland had rejected the approach Mediterranean advocated, yet it still failed to produce the outstanding discovery, instead continuing to file materials arguing the point. *Id*. The ALJ concluded that these undue delays prevented the Commission from meeting its August 2023 deadline for a final decision. *Id*.

Mediterranean's arguments to the contrary are unavailing. *See* Exceptions at 13-19. As an initial matter, Mediterranean's claim that the ALJ engaged in only a "cursory analysis in support of its retrospective finding" to impose the delay sanction under section 41302(d) is incorrect. *Id*. at 14. In fact, the ALJ undertook an in-depth analysis that addressed Mediterranean's arguments, and she reached her conclusion only after Mediterranean had ample opportunity to show why section 41302(d) should not apply here. *See* Remand Decision at 6-9. Mediterranean was warned repeatedly that default was a possible sanction for its failure to produce the discovery at issue, starting with the Second Order in July 2022, and again in the Third Order in September 2022. *Id*. at 8. Thus, Mediterranean's claim that the finding was "retrospective" has little force.

Mediterranean's main argument against the section 41302(d) sanction is that it cannot be applied here because Swiss law barred the production at issue, but as MCS notes, that claim has been repeatedly rejected and is unavailing. *See* Exceptions at 14-18; Exceptions Reply at 4-6. First, the ALJ's January 2023 Default

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.      22

Decision correctly rejected the claim that Swiss law bars production of the discovery at issue under FMC procedures, and the Commission affirmed that conclusion. *See* January 2024 Order at 14-16, 21-22; Second Order at 2-3 (discussing cases rejecting the claim that the provision of Swiss law on which Mediterranean relies bars the production of information where, as here, there is no risk of criminal sanctions). As the Commission already noted, Mediterranean has failed to identify any specific information or categories of documents that Swiss law supposedly bars it from providing, or even to show that any responsive information is located in Switzerland and otherwise unavailable. January 2024 Order at 20-21. And even if Mediterranean believed it had identified such information, that would not justify its complete failure to comply with the ALJ's discovery orders. Its remedy in that event would be either to comply and pursue the issue on later review by the Commission, or if it felt it was genuinely at risk, to seek to appeal the rulings immediately. Instead, it continued to re-assert its rejected claims, obstructing the adjudication and causing significant delay. Indeed, Mediterranean continues to rely on these rejected claims here, including its lengthy arguments that the Swiss court was wrong to reject the Hague Evidence Convention request and that production really would subject it to criminal liability. But its argument that the ALJ's Remand Decision wrongly failed to discuss the arguments and precedent on which it relies for those points is misplaced; the ALJ had no obligation to discuss authority on claims that were previously rejected. *See* Exceptions at 15-18.

Mediterranean's claim that application of a section 41302(d) default sanction here would create tension with 46 U.S.C. § 41108(c)(2) is also incorrect. *See* Exceptions at 17, 18. First, the January 2024 Order already rejected Mediterranean's claim that section 41108(c)(2) precludes default here, explaining that even if the claim had not been waived by Mediterranean's failure to raise it earlier, Mediterranean has failed to show it would bar a default here. *See* January 2024 Order at 23-24. In particular, although part of section 41108(c)(2) is phrased in mandatory terms, directing the agency to notify the Secretary of State when a carrier "alleges" that

foreign law bars production, the Commission noted that "[g]iven the burdens that implementation of the provision would impose on both the U.S. and foreign governments, and the potential effects on FMC discovery, it is reasonable to interpret the statute to require a more specific and developed showing that the documents sought actually are located in a foreign country, not available in the United States, and cannot be produced because of foreign laws." *Id*. at 24. Mediterranean has failed to make such a showing. *Id*. Moreover, its renewed claims about MCS's prior position on section 41108(c)(2) must fail because that position would not bind the ALJ or the Commission. *See id*. And as the ALJ noted, a default sanction here creates no tension with section 41108(c)(2) because legitimate discovery disputes that lead to consultation under that section would not cause delays that were "undue." Remand Decision at 9. Certainly, after the Second Order, there was no legitimate discovery dispute before the ALJ.

In addition, though there was no need earlier to explore all the infirmities in Mediterranean's argument, Mediterranean has failed to show that section 41108(c)(2) even applies outside the context of the potentially severe tariff-suspension and vessel-clearance revocation penalties available under section 41108(c)(1), neither of which is involved in this case. The remedies currently available under section 41108(b) where a tariff has been suspended for a failure to supply information ordered to be produced include civil penalties of up to $146,092 *per shipment*. *See* 46 U.S.C. § 40102(22) ("shipment" means all "cargo carried under the terms of a single bill of lading"); 46 C.F.R. § 506.4 (inflation adjustments). In addition, penalties imposed under section 41108 must be submitted for expedited Presidential review before they become effective. 46 U.S.C. § 41108(e). The potential for penalties of that magnitude may well call for diplomatic resolution under section 41108(c)(2). The default and reparations imposed on Mediterranean in this case are clearly distinguishable.

And even if section 41108(c)(2) were interpreted to require that the FMC notify the Secretary of State based merely on

Mediterranean's allegation about Swiss law, it would frustrate the overall purpose of the Shipping Act to permit Mediterranean to rely on the agency's failure to do that to refuse to produce discovery where the carrier utterly failed to show that the Swiss statute it relied on would actually prevent it from providing the discovery at issue. Section 41108(c)(2) is designed to aid the Commission in obtaining evidence, not to provide carriers with a way to evade discovery obligations with demonstrably insufficient claims about foreign law. Thus, any failure to meet a requirement to notify the Secretary of State here would be at most harmless error.

Finally, Mediterranean's claims that it was not responsible enough for the delays here to justify a default sanction are unpersuasive. *See* Exceptions at 18-19. The ALJ emphasized Mediterranean's right to "vigorously defend" itself, and she carefully assessed the progress of FMC No. 21-05, determining that the delay was not "undue" until Mediterranean failed to comply with the Second Order issued in July 2022 — after the First Order granting MCS's motion to compel in December 2021, after the Swiss court rejected the Hague Evidence Convention request, and after the Second Order rejected Mediterranean's arguments that Swiss law prevented it from producing the outstanding information. Remand Decision at 8-9. MCS argues that the delay caused by Mediterranean actually became "undue" before July 2022, starting with the "discovery misconduct" that led to the original 2021 motion to compel. Exceptions Reply at 5. There is a strong basis to find that some of the pre-July 2022 delay was "undue." Mediterranean never complied with the First Order from December 2021, and it never established that Swiss law barred any, much less all, of the discovery ordered to be produced then. But in any case, rather than providing the outstanding discovery after the Second or Third Orders, Mediterranean persisted in its arguments in additional filings through the end of 2022. That led to the ALJ's January 2023 Default Decision, followed by exceptions briefing and the Commission's consideration of the difficult non-merits issues that Mediterranean's conduct has forced the agency to confront since then. In these circumstances, the agency's February 2023 and August 2023 final

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        25

decision deadlines could not be met, as the Commission discussed earlier. *See* Remand Decision at 6-7.

In sum, it was not an abuse of discretion for the ALJ to conclude that the undue delay Mediterranean caused by failing to provide discovery in accord with her orders merited a default sanction under 46 U.S.C. § 41302(d), as that conduct was, at a minimum, the primary reason the agency could not meet its August 2023 final decision deadline. And in any event, the ALJ's determination was well-reasoned and well-supported by the record.

### C.    The reparations award was within the ALJ's discretion, and it was well-supported by a sworn declaration and extensive documentary evidence

As explained in section I.D above, the ALJ's reparations award was based on a detailed analysis of the relevant submissions, and it entailed substantial reductions (totaling about 25%) of the amount MCS requested. Thus, Mediterranean's assertion that the ALJ "effectively rubber-stamped" the requested award is plainly incorrect. Exceptions at 25. On the contrary, the award was within the ALJ's discretion, and in any case her analysis was well-reasoned and well-supported by a declaration from MCS's logistics analyst and extensive documentation. In particular, as explained below, the ALJ permissibly determined the scope and amount of reparations at issue, while rejecting Mediterranean's arguments that MCS's evidence was inadequate and that Mediterranean was entitled to an evidentiary hearing.

### 1.    The ALJ permissibly determined the scope and the amount of claimed reparations

The ALJ took considerable care in evaluating the scope of the reparations MCS claimed and what would be recoverable, and the manner in which she did so was reasonable. *See* Remand Decision at 12-24. Indeed, even the Exceptions present little

objection to how she made these determinations, focusing instead on whether MCS had established a sufficient link between the claimed reparations and Mediterranean's conduct as an evidentiary matter, as discussed in the sections below. Before addressing those objections, however, we will review the basic universe of damages at issue, about which there seems to be little if any remaining dispute.

Toward the start of her analysis, the ALJ analyzed the extent to which the specific reparations MCS claimed were consistent with its previous positions and whether Mediterranean had received sufficient notice of the claims. Remand Decision at 14-16. As explained in section I.D above, MCS claimed reparations of $400,509 for the period of the 2020 service contract, $463,936 for the first three months of the 2021 service contract (May-July 2021), and $288,232 for the final five months of that contract (December 2021-April 2022). Mediterranean argued that MCS could not recover reparations for the final months of the 2021 service contract, because it had failed to provide adequate notice. *Id*. The ALJ noted that under Federal Rule of Civil Procedure 54(c), damages following a default cannot exceed what is demanded in the pleadings, and that even though recovery of amounts not specified in pleadings may be permitted where adequate notice is provided in briefing as to a default judgment, here MCS's response to the Order to Show Cause (Third Order) had sought only reparations caused by conduct during the first two periods above. *Id*. at 14-15. The ALJ concluded that MCS could not recover any damages for conduct after those periods, namely the $288,232 for the final five months of the 2021 contract. *Id*. at 15, 16. This determination was well-supported, and MCS filed no exception to it. It is upheld.

The ALJ also addressed whether the port pairs as to which MCS sought reparations were within the scope of the service contracts at issue and the permitted time periods above. Remand Decision at 20-21. As explained in section I.D above, because the amended complaint did not allege any violations involving the port of Jakarta, the ALJ excluded the requested reparations related to that

port, in the amount of $2,738.50. *Id*. This determination was well-supported, and MCS filed no exception to it, so it is affirmed.

In addition, the ALJ evaluated MCS's use of the differentials between its service contract rates and the spot market rates it paid for the shipments reflected in its evidence as a measure of its damages. Remand Decision at 18-20. She concluded that using such rate differentials was an appropriate way to measure damages in this context, and that MCS had provided sufficient evidence to link Mediterranean's failure to carry shipments to the spot market shipments involved. *Id*. at 19-20. The ALJ's discussion indicated that she understood Mediterranean to be disputing both of these major points—the use of rate differentials and MCS's specific evidence. But in its Exceptions, Mediterranean disputes only the latter point. Mediterranean states that if MCS had provided adequate evidence linking its spot shipments to unjustified Mediterranean conduct and showing that it could not have otherwise mitigated its harm, "then the difference between the contract rates and the spot rates paid might be a reasonable basis for calculating reparations owed." Exceptions at 22. Thus, there appears to be no dispute that the use of such rate differentials is a permissible method here, and the ALJ's determination on that point is affirmed.

The ALJ also addressed the overall time frame and the number of shipments for which MCS sought reparations, concluding that these were supported by the evidence MCS supplied, subject to the limitations discussed above. Remand Decision at 21-23. Thus, the ALJ determined that reparations were appropriate for the year of the 2020 service contract and the first three months of the 2021 service contract. *Id*. at 21-22. The ALJ's allowance of reparations for specific shipments involving the port of Tianjin was reasonable, and Mediterranean does not appear to renew its specific objection to that determination here. *Id*. In addition, the ALJ's conclusion that MCS was entitled to reparations for shipments reflecting the difference between its full allocation of shipments under the service contracts and the shipments Mediterranean actually did carry for the time frames and port pairs at issue, minus the Jakarta shipment, was

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        28

reasonable. *Id*. at 22. This totaled 419.75 TEUs and $861,706.50 in reparations. *Id*. at 22-23. Mediterranean does not appear to object to the specific manner in which the ALJ made these calculations. The calculations are well-supported and are upheld.

Finally, the ALJ awarded interest under 46 U.S.C. § 41305(a) accruing from July 31, 2021, the last date for which the amended complaint alleged violations. Remand Decision at 23-24. That was a conservative choice, in light of recent precedent the ALJ identified which could have supported use of an earlier date, specifically one at the mid-point of relevant shipments. *Id*. Mediterranean has not specifically challenged the award of interest, and neither party has challenged the ALJ's choice of the date. The ALJ's interest determination was reasonable and is affirmed.

In sum, the ALJ's above determinations as to the overall time frame, shipments to be included, and the calculation of reparation amounts due were permissible and are upheld.

2.    The ALJ permissibly determined that MCS had established a sufficient evidentiary link between its claimed damages and Mediterranean's conduct

Mediterranean's main challenge to the ALJ's award of reparations is that MCS failed to show a sufficient link between Mediterranean's alleged violations and the specific damages MCS claims. Exceptions at 19-25. As part of this evidentiary challenge, Mediterranean argues that the declarant MCS offered to support the documentation of its claimed injuries lacked sufficient personal knowledge to provide that support, and that MCS failed to show it had made sufficient efforts to mitigate its damages. These claims are substantial and merit careful consideration. But on balance we affirm the ALJ's decisions as to the evidence MCS provided, because those decisions were within the ALJ's discretion and in any case well-supported by the record. *See* Remand Decision at 17-23.

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.          29

       a.  MCS sufficiently established the knowledge of its declarant

The ALJ's determination that the declarant MCS provided to support its evidentiary showing had the knowledge required to do so was permissible. Remand Decision at 18. The ALJ noted that declarant Brittany Montesano had been MCS's logistics analyst since 2016, had signed the two service contracts at issue, and had verified MCS's FMC complaints, concluding that Montesano had demonstrated sufficient knowledge of the relevant shipments and other activities, which were confirmed by the voluminous documentation attached to her declaration. *Id*.; *see* Declaration of Brittany Montesano, Doc. 72 (Jan. 19, 2024), at 2-3, Exhs. 1-5.

Mediterranean's challenge to Montesano's personal knowledge is unpersuasive. Mediterranean concedes that "[n]o one is arguing Ms. Montesano is a complete stranger to the litigation," but it claims that she lacks the required knowledge because she "was on leave for the key period in 2021 for which Complainant is seeking reparations." Exceptions at 24. The ALJ acknowledged evidence indicating that Montesano had been on maternity leave for three months, from May 9 to August 9, 2021, but the ALJ concluded that the overall record in the case established that Montesano had sufficient knowledge, "including from review of corporate records, of the basis for the reparations claim." Remand Decision at 18. The declaration itself states that it is based in part on "information received from others." Montesano Decl. at 4.

As an initial matter, the above maternity leave dates indicate that Montesano was absent from MCS's day-to-day operations for less than three of the 15 months for which reparations were awarded (May 2020-July 2021), or less than 20% of the total time in question. Mediterranean does not appear to challenge the basis for Montesano's knowledge for the remainder of the 15 months. Mediterranean is correct that May-July 2021 were important months, as they are the basis for a slim majority of the reparations the ALJ awarded. Still, Montesano's leave did not begin until more

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.    30

than a week into that May-July 2021 period. And $397,770.50 of the total of $861,706.50 awarded, or about 46%, did stem from the preceding 2020 service contract period.

In any event, in the context of the record in this case, Montesano can permissibly rely on company records in testifying as to the relevant information for the short time gap at issue. Under Commission rules, evidence must be reliable and otherwise admissible "in accordance with the Administrative Procedure Act." 46 C.F.R. § 502.204(a). The Commission has "long recognized the liberal standards of admissibility of evidence in administrative proceedings and the need for considerable relaxation of the rules of evidence followed by the federal courts in proceedings before the Commission." Rules of Practice and Procedure; Presentation of Evidence in Commission Proceedings, FMC Docket No. 16-08, 81 Fed. Reg. 93831 (Dec. 22, 2016). With regard to declarations in particular, a "corporate representative can provide a declaration based on personal knowledge even if that personal knowledge is based on a review of the corporation's business records and if the declarant's position within the corporation makes him competent to testify on the matters set forth in the declaration." *United States, et al. v. Dish Network, L.L.C.*, 75 F.Supp.3d 942, 963 (C.D. Ill. 2014). Indeed, "[s]uch a declarant may rely on business records to testify as to matters that occurred before his tenure at the corporation." *Id*.

Here, it is undisputed that Montesano served as MCS's lone logistics analyst for years before and after the time gap, and that she was deeply involved in the factual events at issue, rendering her well-qualified to testify on the matters at issue. Remand Decision at 18. And Mediterranean has provided no reason to doubt that any of her specific statements are correct. It is true that Montesano's declaration in this case would have benefited from a specific statement about her review of company records, beyond the more general "information received from others" statement noted above. On the whole, though, in light of Montesano's longtime position at MCS, her unique competence in the matters at issue here, and the extensive documentation she attaches, the declaration is sufficiently

reliable to support the reparations award under the relevant standards.

>    b. MCS showed an adequate link between the violations and its claimed damages

Mediterranean argues forcefully that MCS has failed to establish a sufficient evidentiary link between the carrier's conduct and the shipper's injury, and in particular between Mediterranean's refusals to carry shipments and MCS's replacement shipments on the spot market during the relevant period. Exceptions at 19-23. The ALJ considered these claims but ultimately concluded that MCS had met its evidentiary burden. Remand Decision at 18-20. Although Mediterranean is correct that the evidence here does not include specific links between each of MCS's requests to Mediterranean and each of MCS's replacement shipments, on the whole the detailed declaration and extensive supporting documentation sufficiently establish MCS's injury.

As the ALJ noted, 46 U.S.C. § 41305(b) states that the Commission "shall direct the payment of reparations to the complainant for actual injury caused by a violation." Remand Decision at 10. It is the complainant's burden to show actual damages resulting from such violations. *Id*. at 11. "That does not require absolute precision but does require evidence sufficient to reasonably infer the actual loss sustained." *MAVL Capital Inc. v. Marine Transp. Logistics, Inc.*, Docket No. 16-16, 2022 WL 2209421, at *3 (FMC June 10, 2022). Moreover, as noted above, under Commission rules evidence must be admissible "in accordance with the Administrative Procedure Act," 46 C.F.R. § 502.204(a), which entails "liberal standards of admissibility [and] considerable relaxation of the rules of evidence followed by the federal courts." 81 Fed. Reg. 93831 (Dec. 22, 2016).

MCS's evidence as to reparations meets the above standards. As the ALJ noted, with liability already established by the default decision, MCS has supported its longtime injury claims with "a

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        32

declaration, the service contracts, a table of shipments made under spot rates, and over 700 pages of supporting documents such as freight invoices." Remand Decision at 19. Montesano's sworn declaration states that MCS intended to use the full number of TEUs of cargo space provided for in the two service contracts at issue; that prior to and during the terms of the contracts MCS instructed its booking agent to book space under the contracts; that during this time the MCS agent "consistently and diligently attempted to book space" under the contracts through Mediterranean's booking agents; that MCS "complained directly to Mediterranean on many occasions" during the terms of the contracts "regarding Mediterranean's failure to provide contracted space"; that MCS would have used the full number of TEUs for which it had contracted had Mediterranean made that space available; and that because Mediterranean did not make the space available, MCS "had to seek carriage from other sources, at higher rates, in order to meet its ocean shipping needs." Montesano Decl. at 2-3. The declaration authenticates the exhibits, including the detailed table of replacement shipments and the documentation of those shipments. *Id*. at 1-4; Exhibits 4-5. Except to the very limited extent discussed below, Mediterranean does not seem to dispute the accuracy of any of these statements or documents.

What Mediterranean does argue is that MCS had to show that each of these spot market shipments was the result of a Mediterranean refusal to carry that specific shipment. Exceptions at 20; *see id*. at 19-23. But the ALJ correctly found that Mediterranean had not shown that that extremely demanding standard of proof was required in this context. Remand Decision at 20. Mediterranean claims that 46 U.S.C. § 41305(b) and relevant Commission regulations require the use of its standard. Exceptions at 19-20. But that is not the case. Section 41305(b) says only that a complainant must show "actual injury caused by a violation." At one point Mediterranean misquotes 46 C.F.R. § 502.252 as requiring that reparations be the "proximate result of violations of the statute" — in fact, that language comes from a 2003 FMC decision, which was itself quoting a 1950 Federal Maritime Board case, as Mediterranean

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.          33

itself notes elsewhere in its brief. Exceptions at 19-21. But in any event, a general "proximate result" standard likewise does not require the adoption of Mediterranean's demanding standard here.

On the contrary, MCS persuasively argues that such a standard would be impractical given the complex and fluid nature of the type of ocean shipping arrangements involved here. Exceptions Reply at 12-13. It is unreasonable to expect documentation on either end of these arrangements to consistently reflect such a link as to hundreds of containers over a 15-month period. For example, it is not clear why documentation of a particular shipment would bother to, or even be able to, note, "This shipment A is to replace a shipment B that MCS tried to make with Mediterranean on date X." MCS also argues that it would need more discovery to make such a showing, and that Mediterranean is responsible for the premature end of discovery, which is persuasive at least as to materials not within MCS's own custody or control. *Id*. at 13-15. MCS has provided sworn statements evidencing the shipper's persistent efforts to book the cargo space for which it had contracted, Mediterranean's failure to provide that space, and MCS's need to make the well-documented alternative arrangements. That is sufficient under the liberal standards of evidence that apply here.

The causal link between Mediterranean's conduct and MCS's damages is particularly evident because, when default has been entered and liability determined, as in this case, the factual allegations in the complaint are deemed to be admitted. *See Crabtree v. Overcash Pipeline LLC*, Civ. No. 20-1506, 2021 WL 6753416, at *2 (D.D.C. June 7, 2021); *SNH Med. Office Properties Trust v. Healthy Eateries, L.L.C.*, 325 F.R.D. 514, 518 (D.D.C. 2018); Exceptions Reply at 7. That means that, although it is still necessary to make an independent determination as to the amount of reparations, it has been established by MCS's Amended Complaint (verified by Montesano) that Mediterranean's unlawful failure to meet its obligations to MCS as to the time periods and port pairs at issue caused MCS to need to seek carriage from other sources and

to have to pay higher rates for that carriage. *See* Am. Compl. (Doc. 38) at 7-9, 14-17, 23-24 (Feb. 4, 2022).

Mediterranean does make two more specific objections to MCS's showing, but they are too limited and vague to undermine that showing. Mediterranean argues that (1) evidence obtained in discovery shows "there were no communications for weeks at a time" between MCS and Mediterranean during the May-July 2021 period, and (2) Mediterranean "did not receive any booking requests for the Port of Qingdao, for example, from May 2021 to July 8, 2021 or any indication of issues with Complainant attempting to make bookings during that period." Exceptions at 23. The first claim is simply that there were no communications between the parties for some undefined period of weeks within the May-July 2021 period, with no indication whether that includes booking agents. The statement is not inconsistent with MCS having made sufficient attempts to book cargo space for the three-month period and with Mediterranean having failed to provide that space. Mediterranean's second objection appears to apply to only one of the two ports at issue in the 2021 service contract (Qingdao and Tianjin), and to apply to a time period that is more than three weeks short of the full three-month period at issue. Again, Mediterranean's claim is not inconsistent with MCS or its booking agents having made requests that were not met for the full relevant period. Also, Mediterranean's failure to provide requested space as to Qingdao and Tianjin did not begin with the May-July 2021 period, but in the preceding 2020 service contract period. MCS is not required to show continuous requests for space or complaints where a carrier has been failing to provide adequate space for some time. And factual statements in MCS's complaint, now deemed admitted, detail specific interactions showing MCS's unsuccessful efforts to obtain sufficient space from Mediterranean in July 2021. *See* Am. Compl. at 14-17.

c.  Mediterranean has not shown that MCS failed to mitigate its damages

Mediterranean also argues that MCS has failed to show sufficient efforts to mitigate its damages, and in particular failed to show that it tried to find more affordable cargo space than the spot market bookings it ended up with, but this argument misses the mark. *See* Exceptions at 22-23. It is true that MCS has provided no detail beyond the statements in the Montesano declaration and the complaint that MCS was forced to seek carriage elsewhere at higher rates, and the ALJ does not seem to have addressed the mitigation issue directly. But it is Mediterranean's burden to show that MCS failed to meet a duty to mitigate, and it has not met that burden.

"Failure to mitigate damages is an affirmative defense, on which the party opposing the award of damages bears the burden of proof." *Adenariwo v. FMC*, 808 F.3d 74, 79 (D.C. Cir. 2015). "Mitigation requires a party to take reasonable steps after it has been injured to prevent further damage from occurring." *Id*. at 80. Finding substitute performances, as MCS did here, is a classic example. *See id*.

Mediterranean has failed to meet its burden to show MCS did not mitigate damages under these standards. Instead, Mediterranean tries to shift the burden to MCS to show that it acted reasonably, suggesting that MCS had other service contracts it might have used to ship its containers. Exceptions at 22-23. But MCS has documented exactly what it did to mitigate damages when, in the challenging 2020-2021 time period, it "had to seek carriage from other sources, at higher rates, in order to meet its ocean shipping needs." Montesano Decl. at 3; *see id.* Exhs. 4-5. MCS might have offered more detail about its mitigation efforts, but it clearly did not stand idle and increase its damages by shipping nothing. Mediterranean fails to challenge the specific spot rates MCS has documented as unreasonable or to provide any other reason to doubt MCS acted reasonably to ship at the lowest rates it could consistent with its needs. Mediterranean also fails to suggest any reason MCS

would accept unreasonably high rates, which would obviously increase its own costs, if it could avoid them. Indeed, that could be a difficult claim for Mediterranean to make here. The complaint includes allegations, now deemed admitted, that some of the spot market purchases MCS made resulted in MCS's containers being "carried on [Mediterranean]'s own ships or pursuant to [Mediterranean]'s own bills of lading." Am. Compl. at 10. MCS's chart of replacement bookings indicates that this did in fact occur as to at least seven containers in the May-July 2021 period, resulting in payments totaling $39,803 in excess of the rates at which MCS had contracted with Mediterranean for such shipments. *See* Montesano Decl. Exh. 4 (public version).

3.    The ALJ did not abuse her discretion in declining Mediterranean's request for an evidentiary hearing

The ALJ permissibly declined Mediterranean's request for an evidentiary hearing to cross-examine MCS's declarant. Remand Decision at 16-17. Mediterranean now argues at some length that it was entitled to such a hearing, Exceptions at 23-25, but that is incorrect. Such hearings may be held in a proper case, but there is no support for the idea that they are mandatory in a situation like the current one.

In the Remand Decision, the ALJ carefully considered Mediterranean's hearing request, but she provided ample reasoning in support of her exercise of discretion not to grant it. First, the Commission's rules make clear that, in adjudicating private party complaints, "[t]he presiding officer will determine whether an oral hearing is necessary." 46 C.F.R. §§ 502.62(a)(5), 502.62(b)(3); *see* Remand Decision at 17. With regard to evidence of damages on default in particular, the ALJ correctly noted that federal courts have the discretion to hold such hearings under Federal Rule of Civil Procedure 55(b)(2), but they are not required as long as there is a basis for the damages sought. *See* Remand Decision at 16-17 (citing *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35-36 (D.D.C.

2014), in turn quoting cases including *Transatlantic Mar. Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). The ALJ further explained that "[i]n Commission proceedings, reparations are typically awarded without an oral hearing," on the basis of documentary evidence. *Id*. at 17. The ALJ described the extensive documentary evidence that MCS supplied with the Montesano Declaration to support its reparations request, noted that Mediterranean had had an opportunity depose key MCS witnesses in discovery, and concluded that an oral hearing at this point would unnecessarily create further delay in the resolution of the proceeding. *Id*.

Mediterranean cites a number of cases to support its claim to be "entitled at the very least to a hearing" on the reparations, Exceptions at 23-25, but those cases do not support that claim. Mediterranean makes no reference to FMC procedure or adjudications, or to any administrative agency authority, and none of its cases show that an ALJ is required to hold an evidentiary hearing in a context like this one. Mediterranean particularly faults the ALJ's reliance on the *Transatlantic* case, arguing that the court of appeals there reversed the trial court and that the cases it relied on are distinguishable from this one. Exceptions at 23-24. In fact, the *Transatlantic* court did remand that case in part for the development of further evidence as to damages — in a situation where, in stark contrast to the current state of this FMC proceeding, the district court had "simply accepted at face value Transatlantic's statement in its complaint that it 'has sustained damages as nearly as can now be estimated in the amount of $45,976.83.'" 109 F.3d at 111. But even then, the appeals court did not *require* the lower court to hold a hearing. *Id*. And contrary to Mediterranean's claims, the cases on which *Transatlantic* relied, whose elements included affidavits, documentary evidence, and long experience with the matter by the decision-maker, are in fact quite similar to this case, which includes a declaration supported by a detailed chart of bookings and more than 700 pages of documentation, and which, at the time of the Remand Decision, had been pending for more than two and a half years. *See* Docket, FMC No. 21-05.

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.    38

    **D.**    **Mediterranean's request for oral argument is denied**

Mediterranean requests oral argument pursuant to 46 C.F.R. § 502.241. *See* Exceptions at 1. The request is denied under section 502.241(b).

## III.  CONCLUSION

The Commission hereby:

    (1) **DENIES** Respondent Mediterranean's March 11, 2024 Exceptions; and

    (2) **AFFIRMS** the ALJ's February 16, 2024 Initial Decision on Remand.

By the Commission.


David Eng
Secretary

# FEDERAL MARITIME COMMISSION

| | |
|---|---|
| MCS INDUSTRIES, INC., | |
| *Complainant*, | |
| v. | Docket No. 21-05 |
| MEDITERRANEAN SHIPPING COMPANY S.A., | |
| *Respondent.* | |

Served: January 3, 2024

**BY THE COMMISSION:** Daniel B. MAFFEI, *Chairman*, Rebecca F. DYE, Louis E. SOLA, Carl W. BENTZEL, Max VEKICH, *Commissioners*.

### Order Partially Affirming Initial Decision on Default and Remanding for Further Proceedings

This case is before the Commission (FMC) on Exceptions to an Initial Decision on Default (Decision) of the Administrative Law Judge (ALJ) dated January 13, 2023. The Decision imposed a default on Respondent MSC Mediterranean Shipping Company S.A. (Mediterranean), a vessel-operating common carrier, for its failure to comply with multiple discovery orders in a case filed by

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.          2

Complainant MCS Industries, Inc. (MCS), a shipper. The Decision also ordered reparations.

As to liability, we deny the Exceptions and affirm the ALJ's Decision. The ALJ permissibly found that Mediterranean's conduct merited default as a discovery sanction, whether the Decision is reviewed de novo or under an abuse of discretion standard.

As a threshold matter, the Decision properly determined that the FMC has jurisdiction over MCS's claims. That is so even though the parties agreed in service contracts at issue here to resolve disputes by arbitration, because Shipping Act claims like those made by MCS are distinct and can still be pursued in an FMC adjudication.

In addition, the ALJ's decision to impose default as a discovery sanction was within her discretion, and in any event it was well-reasoned and well-supported by the record. First, Mediterranean has failed to comply with multiple orders, dating back to December 2021, that it provide substantial outstanding discovery. The ALJ properly rejected Mediterranean's repeated claims that Swiss law bars it from providing that discovery under FMC procedures. In addition, the ALJ properly determined that all three factors set out in relevant D.C. Circuit precedent for the evaluation of default as a discovery sanction are present here. The ALJ found that Mediterranean's conduct had prejudiced MCS in this case, that it had prejudiced the FMC's adjudicatory system by creating burdens and delays, and that its willfulness presented a need to deter potential future misconduct. Finally, the Decision shows that lesser sanctions would not be adequate to address this situation.

However, we remand to the ALJ for further consideration of two issues. First, we remand for consideration of whether the sanctions available under 46 U.S.C. § 41302(d) for delay in the issuance of final FMC decisions are a potential additional basis for the imposition of default in this proceeding. Second, as to the appropriate remedy, we remand for the submission of evidence that is sufficient to support the reparations MCS seeks.

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.    3

## I. **BACKGROUND**

### A.    **Procedural history**

MCS, a U.S. shipper, initiated this case with a Complaint dated July 28, 2021, alleging that Mediterranean and COSCO Shipping Lines Co., Ltd. (COSCO), who are vessel-operating common carriers, had violated 46 U.S.C. § 41102(c) and several provisions of 46 U.S.C. § 41104(a) of the Shipping Act of 1984 in connection with their provision of ocean carriage services. Verified Complaint; Initial Decision on Default (Decision) at 2.

On September 23, 2021, the ALJ issued a Scheduling Order that set the close of discovery for January 27, 2022. On that same day, the ALJ approved a proposed settlement agreement between MCS and COSCO. Initial Decision Approving Confidential Settlement Agreement.

On November 22, 2021, MCS filed a motion to compel discovery, and on December 8, the ALJ granted MCS's motion to compel. Order Granting Motion to Compel (First Order). This extensive Order required Mediterranean to produce additional information in connection with 14 topics, encompassing responses to document requests and interrogatories. First Order; Decision at 4-8. The ALJ rejected Mediterranean's general objections that sought to limit its discovery obligations to what it saw as "core issues" and to put the burden on MCS to justify its discovery. Decision at 4-5. She also ordered Mediterranean to provide further information about interactions related to MCS as well as conduct beyond the specific transpacific bookings at issue. *Id*. at 5-8.

Although Mediterranean did not administratively appeal the First Order issued in December 2021, it also did not comply with the Order. Instead, later in December Mediterranean moved to dismiss the complaint, and MCS moved to file an amended

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        4

complaint. FMC Docket No. 21-05, Docs. 31-34, 36. On February 4, 2022, the ALJ denied Mediterranean's motion to dismiss and granted MCS's motion to amend the complaint. Order on Motion to Amend Complaint and Motion to Dismiss (MTD Order).

In late February 2022, Mediterranean filed a notice that raised issues related to the production of documents in Switzerland, and the parties filed a joint status report; then, on March 4, the ALJ issued an order directing the parties to submit further detail as to what procedure they were requesting for the production of that evidence. Order on Proposed Revised Schedule and Discovery Notice. On April 4, the parties filed a joint status report requesting that a letter be issued under Hague Evidence Convention procedures, and on May 4, the ALJ granted that request. Order Granting Request for Letter of Request Under Hague Convention.

On July 8, 2022, MCS filed a notice attaching the response from a Swiss court that rejected the Request as outside the scope of the Hague Convention because the relevant FMC proceeding is an administrative one. Notice of Decision on Letter of Request.

On July 29, 2022, the ALJ issued an Order Requiring Production of Discovery (Second Order). Decision at 9-12. The Second Order rejected Mediterranean's request that a new request be submitted to the Swiss Federal Office of Justice, explaining that the Swiss court had determined that its involvement was not needed. *Id*. at 9. Relying on federal court precedent, the ALJ noted that a party seeking to use Hague Convention procedures must show they are necessary and that foreign law actually bars the discovery at issue, but here Mediterranean had failed to show that the provision of the Swiss criminal code it cited has that effect. The ALJ cited recent federal court decisions that had rejected similar claims based on the same Swiss provision because there was no threat of criminal sanction in the U.S. cases, and she noted that the same was true as to the sanctions available here under 46 C.F.R. § 502.150(b). *Id.* at 9-11. Thus, the ALJ ordered Mediterranean to produce the outstanding discovery by August 29, 2022. Second Order at 4.

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        5

Although Mediterranean did not administratively appeal the Second Order issued in July 2022, it also did not comply with the Order. Instead, it proceeded to seek advice from the Swiss government, requesting an extension of time to facilitate that, and on September 6, 2022, it submitted a Notice of Advice of the Swiss Federal Office of Justice, attaching a communication from that Office. In essence, Mediterranean argued that the Swiss Federal Office had indicated that a new request for judicial assistance could be submitted despite the earlier ruling of the Swiss court, and it further argued that the Office's response supported Mediterranean's insistence that Hague Convention procedures apply. Notice of Advice at 1-2.

On September 8, 2022, the ALJ issued an Order Denying Respondent's Motion for an Extension of Time and Order to Show Cause (Third Order). Decision at 12-14. The Third Order directed Mediterranean to "either provide the required discovery or show cause why default judgment should not be entered against it." *Id*. at 12. The ALJ rejected Mediterranean's continued arguments that Swiss law barred it from producing the outstanding discovery, noting that the "advice" from the Swiss Federal Office of Justice did not compel the result Mediterranean sought, and that Mediterranean was seeking to relitigate an issue that had already been decided. *Id*. at 12-13. Accordingly, the ALJ directed Mediterranean to show cause why default should not be entered under 46 C.F.R. 502.150(b), although the Order specifically noted that if Mediterranean produced the required discovery, the issue would be moot and the case could proceed. *Id.* at 13-14.

Mediterranean did not provide discovery in response to the Third Order, but the parties did file responses. Mediterranean argued that further consultation with Swiss authorities was the proper course because it would otherwise risk criminal sanctions, that default was a drastic remedy not called for where it had a good faith belief in that risk, that the consultation procedure in 46 U.S.C. § 41108(c)(2) had not been used, and that in any event the agency

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.    6

lacked jurisdiction over the matter. Respondent Mediterranean Shipping Company S.A.'s Response to Order to Show Cause, Sept. 22, 2022, at 1-4; Reply with Respect to Order to Show Cause, Oct. 14, 2022. MCS argued that Mediterranean had violated multiple FMC discovery orders and that a default sanction was justified under the standards applicable to the analogous Federal Rule of Civil Procedure 37(b)(2). Complainant MCS's Response to Order to Show Cause, Oct. 6, 2022, at 1-2.

While a decision on the Order to Show Cause remained pending, Mediterranean filed further notices attaching materials from the Swiss government that it insisted showed Hague Convention procedures were required. Notice of Determination of the Swiss Federal Office of Justice, Oct. 18, 2022; Notice of Issuance of Formal Decision of the Swiss Federal Office of Justice and Police That Hague Evidence Convention Procedures Apply to This Proceeding and Must Be Used, Nov. 8, 2022. MCS argued that Mediterranean was improperly attempting to relitigate the issues and that default remained the proper remedy. Response Letter of Complainant, Oct. 28, 2022.

On January 13, 2023, the ALJ issued the Initial Decision on Default. Mediterranean timely filed Exceptions on February 6, and MCS filed its Response on February 28.

### B.    The Initial Decision on Default

The ALJ's Initial Decision on Default noted that 46 C.F.R. § 502.150(b) describes the remedies available where a party fails to comply with an FMC discovery order, and that section 502.150(b)(3) specifically authorizes the ALJ to issue "a decision by default against the disobedient party." Decision at 14. The ALJ pointed out that the Commission had previously approved dismissals of cases where a party had willfully failed to provide discovery. *Id.* (citing, *inter alia*, *Kawasaki Kisen Kaisha, Ltd. v. Port Auth. of N.Y. and N.J.*, FMC Docket No. 11-12, 2014 WL

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        7

7328475, at *7-8, 2014 FMC LEXIS 35, at *17 (FMC Nov. 20, 2014)).

First turning to the FMC's jurisdiction, the ALJ stated that Mediterranean's claims on that issue had been resolved in the February 2022 MTD Order, which Mediterranean had not appealed, making its current claims untimely. Decision at 14-16. In any event, the ALJ determined that the FMC has jurisdiction over Shipping Act claims even if, as Mediterranean argued, a related proceeding is underway, such as an arbitration of a breach of contract claim required by a service contract. *Id.*; *see Anchor Shipping Co. v. Aliana Navegãao E Logística Ltda.*, FMC Docket No. 02-04, 2006 WL 2007808, at *10-11, 30 S.R.R. 991, 998 (FMC May 10, 2006).

Next, the ALJ evaluated whether default should be entered and concluded that it should. Decision at 17-22. The ALJ emphasized Mediterranean's failures to comply with FMC discovery orders and its failure to show Hague Convention procedures were required. *Id.* at 17. For the default analysis, the ALJ focused on the three factors set out in *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) — prejudice to the other party as a result of the conduct at issue, prejudice to the judicial system, and the need to deter similar conduct. *Id.* at 17-18. She noted that only one factor need be present to support a default, but she found that all three were present here. *Id.* at 18.

First, with regard to prejudice to MCS, the ALJ stressed that Mediterranean had failed to produce additional information as ordered in more than a dozen categories and that it had wrongly tried to limit the scope of discovery to less than what was required to evaluate MCS's claims. Decision at 18. The ALJ noted that the information wrongly withheld here would likely have led to additional discovery requests, and that this significantly hampered MCS's ability to proceed. *Id.* at 19. Finally, the ALJ found that Mediterranean's conduct had prejudiced MCS by delaying the proceeding, making it harder for MCS to obtain evidence and exacerbating its injury. *Id.*

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        8

Second, as to prejudice to the adjudicatory system, the ALJ emphasized that federal agencies must protect their integrity and the orderly conduct of business. Decision at 19 (citing *Interpool, Ltd. V. Pac. Westbound Conf.*, 22 F.M.C. 762, 764, 19 S.R.R. 1719 (FMC May 15, 1980), available at https://www.fmc.gov/wp-content/uploads/2019/04/vol22.pdf (upholding dismissal where complainant had failed to respond to discovery)). The ALJ listed case deadlines that had not been met because of Mediterranean's failure to provide the discovery ordered, noting that this had disrupted FMC business and burdened the docket, harming the public. *Id*. at 20.

Third, the ALJ evaluated the deterrence factor. Decision at 20-22. She again relied on *Interpool*, which noted that the most severe sanction had to be available to deter future misconduct. *Id*. at 21. The ALJ noted that Mediterranean had not specifically described the information it claimed was protected because it was located in Switzerland, and it was not clear whether its refusal to produce was actually based on its disagreement with the ALJ's substantive findings about the case. *Id*. The ALJ found that Mediterranean's refusal to follow the determination of the Swiss court or the orders of the ALJ, even after repeated warnings, supported a finding that its refusal was willful and deliberate. *Id*. The ALJ also found that the violations alleged in the case were significant, and that Mediterranean's conduct had to be addressed to deter similar future conduct. *Id*. at 21-22.

Finally, the ALJ considered the appropriate remedy. Decision at 22-23. She cited precedent authorizing the award of damages following default of "specified liquidated amounts requiring little or no calculations." *Id.* (citing *Go/Dan Indus., Inc. v. Eastern Mediterranean Shipping Corp.*, 1998 WL 940249, at *3, 1998 FMC LEXIS 5, at *5-6 (ALJ Dec. 10, 1998) (Adm. final Jan. 27, 1999)). The ALJ looked to MCS's complaint, as well as information it had submitted in its order to show cause brief as

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.      9

permitted by 46 C.F.R. § 502.65(c), and awarded $944,655 in reparations. *Id.* at 22.

## II. **DISCUSSION**

### A.    **Standard of Review**

Normally, when the Commission reviews exceptions to an ALJ's Initial Decision, it has "all the powers which it would have in making the initial decision." 46 C.F.R. § 502.227(a)(6). The Commission therefore generally reviews the ALJ's findings de novo. *Id*.; *see also Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, FMC Docket No. 12-02, 2015 WL 9426189, at *5, 2015 FMC LEXIS 43, at *10-11 (FMC Dec. 18, 2015). In particular, when reviewing an ALJ's Initial Decision on default after a respondent has failed to appear, the FMC has adopted the ALJ's findings of fact and law if "they are well-reasoned and supported by evidence in the record." *United Logistics (LAX) Inc. – Possible Violations of Sections 10(A)(1) and 10(B)(2)(A) of the Shipping Act of 1984*, FMC Docket No. 13-01, 2014 WL 5316339, at *1 (FMC Feb. 6, 2014).

However, the Commission reviews discovery orders, including orders imposing sanctions, under an abuse of discretion standard. *See Rana v. Franklin*, FMC Docket No. 19-03, 2022 WL 1744905, at *4 (FMC May 25, 2022); *Kawasaki*, 2014 WL 7328475, at *7-8. The FMC's rules do not expressly address the standard of review in this context. *See Rana*, 2022 WL 1744905, at *4; *Kawasaki*, 2014 WL 7328475, at *7-8. But "for situations which are not covered by a specific Commission rule, the Federal Rules of Civil Procedure will be followed to the extent that they are consistent with sound administrative practice." 46 C.F.R. § 502.12. "Federal Rule of Civil Procedure 37(b) is the corollary to the Commission's rule on discovery sanctions (46 C.F.R. § 502.150) for violating an order directing discovery responses." *Rana*, 2022 WL 1744905, at *4. "In reviewing district courts' orders on discovery, the United States Courts of Appeal apply an abuse of discretion standard because a 'narrowly circumscribed' scope of review is

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        10

consistent with district courts' 'considerable discretion in managing discovery' and their 'broad discretion to impose sanctions for discovery violations under Rule 37.'" *Id*. (quoting *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015) (additional citations omitted)); *see also Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996) (reviewing court should reverse discovery sanctions only if they are found to be "clearly unreasonable, arbitrary, or fanciful").

The abuse of discretion standard is appropriate for review of the ALJ's imposition of default as a discovery sanction. Indeed, the D.C. Circuit "review[s] the district court's imposition of discovery sanctions, including a default judgment award, for abuse of discretion." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv.*, 776 F.3d 1, 4 (D.C. Cir. 2015). Although there is no direct precedent for review of an FMC ALJ's decision imposing *default* as a discovery sanction, the Commission has reviewed decisions *dismissing* actions for failure to comply with discovery orders, *see*, *e.g.*, *Interpool*, 22 F.M.C. at 764, and in *Kawasaki,* it clarified that it would do so under an abuse of discretion standard, *see* 2014 WL 7328475, at *8. For its part, MCS advocates for that standard, although it argues that the ALJ's Decision here meets the higher de novo standard as well. Response at 1-4. Of course, default may be considered a more severe sanction than dismissal, as it determines liability and will likely lead to remedies, rather than a mere preservation of the status quo. The D.C. Circuit has described its abuse of discretion review in the default context as "more 'thorough' because the 'drastic' sanction 'deprives a party completely of its day in court.'" *Reliable Limousine*, 776 F.3d at 4 (quoting *Webb*, 146 F.3d at 971). Accordingly, the Commission has determined to review the ALJ's Decision with reference to both abuse of discretion and de novo standards.

**B.**    **Imposing default as a discovery sanction was within the ALJ's discretion as to liability, and in any event the Decision on that point was well-reasoned and supported by the record**

In the Initial Decision on Default, the overall analysis and conclusions as to liability were within the ALJ's discretion. In particular, she properly determined that MCS had sufficiently stated claims within the FMC's jurisdiction, and that default was an appropriate remedy for Mediterranean's failure to comply with discovery orders. In any case, those determinations were well-reasoned and well-supported.

1.    Jurisdiction and Adequacy of Claims

The ALJ's ultimate conclusions as to jurisdiction and the adequacy of MCS's claims are affirmed. In her discussion of jurisdiction, Decision at 14-16, the ALJ first noted that the issue had already been decided in the February 2022 MTD Order denying Mediterranean's motion to dismiss, an order that Mediterranean did not appeal, *id*. at 15. And she stated that as a result, Mediterranean's current effort to relitigate that issue is "not timely." *Id.* at 16. It is true that an appeal of the MTD Order would have enabled an early resolution of the issue. That would have allowed the parties to avoid re-briefing the issue now, in the midst of the pending Exceptions briefing, and if Mediterranean were correct about the issue, enabled the parties and the agency to have avoided all future proceedings in the matter. However, the ALJ does not cite authority for the principle that Mediterranean's pursuit of the jurisdictional issue now is time-barred, and we are not aware of any. In particular, Mediterranean had no obligation under FMC rules to appeal that interim ruling immediately or else waive the issues raised. *See* 46 C.F.R. § 502.221 (interim rulings other than orders of dismissal may not be appealed unless the ALJ finds it necessary or on motion of party seeking to appeal). In addition, as Mediterranean points out, the issue of whether a federal court has jurisdiction can be raised at any time. Exceptions at 26. MCS emphasizes that Mediterranean is

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        12

trying to relitigate settled matters it failed to appeal, Response at 25, but it does not appear to specifically contend that the jurisdictional claims are untimely. It may be that the ALJ was simply indicating that the jurisdictional issue had already been resolved at the administrative level, and thus it was effectively "the law of the case" and not timely raised again at that level. *See Wye Oak Technology, Inc. v. Republic of Iraq*, 24 F.4th 686, 697-98 (D.C. Cir. 2022) (the law-of-the-case doctrine reflects the rule that courts should not re-open questions decided earlier in the case absent clear error or an intervening change of law). In any event, we conclude that Mediterranean is entitled to raise jurisdiction before the Commission now.

As to the substance of the jurisdictional question, the ALJ's Decision is well-reasoned and is affirmed. The ALJ reiterated the conclusions from her earlier Order, explaining that FMC precedent makes clear that the agency has jurisdiction over Shipping Act claims even if a related proceeding is underway, such as an arbitration required by a service contract that is also at issue in claims before the FMC. Decision at 15-16; *see Anchor Shipping*, 2006 WL 2007808, at *10-11, 30 S.R.R. 991, 998; *Cargo One, Inc. v. Cosco Container Lines Co. Ltd*, FMC Docket No. 99-24, 2000 WL 1648961, at *14-15, 28 S.R.R. 1635, 1645, 2000 FMC LEXIS 14 (FMC Oct. 31, 2000). The ALJ emphasized that the FMC in fact has an obligation to address Shipping Act claims, even if the relevant facts may also give rise to other claims between the parties, and even if, as Mediterranean argues here, a service contract requires contract claims to be arbitrated. Decision at 15-16. Shipping Act claims are distinct from breach of contract claims, entailing a different analysis of statutory standards that includes review of the carrier's broader practices beyond those directly affecting the complainant. In addition to the precedent the ALJ cites in her Decision, the Response by MCS cites further persuasive case support for these principles. *See* Response at 25-30. Mediterranean argues that the claims are barred by 46 U.S.C. § 40502(f), Exceptions at 27-31, but as MCS notes, Response at 28-29, that provision does not bar pursuit of the statutory allegations made here.

In fact, the provision simply says breach of service contract claims are resolved in court or as otherwise agreed by the parties. But this FMC matter is not a breach of contract action. Mediterranean also argues that MCS's claims are barred by the Federal Arbitration Act. Exceptions at 31-33. But again, that claim is contrary to the above precedent, including *Anchor Shipping*, as MCS notes, Response at 30. The ALJ correctly determined that the FMC has jurisdiction over this matter.

In addition, Mediterranean argues that MCS's complaint fails to state a claim as to the merits of any of its claims, Exceptions at 33-37, but that argument is unavailing. As an initial matter, as MCS notes, Response at 30, Mediterranean's basic arguments were already raised and rejected in February 2022, MTD Order at 3-10. But again, Mediterranean had no obligation under FMC rules to appeal that interim ruling. *See* 46 C.F.R. § 502.221. In addition, although the claims are beyond the scope of the briefing ordered by the ALJ's show cause order and the Decision understandably did not address them, the ALJ did address Mediterranean's basic arguments as to each of the five claims in considerable detail in the MTD Order. We conclude that Mediterranean is entitled to raise the claims here.

In any case, the ALJ's prior rejection of Mediterranean's failure-to-state-a-claim arguments was well-reasoned and consistent with the facial-plausibility standard under which such claims are analyzed under Federal Rule of Civil Procedure 12(b)(6). *See* MTD Order at 3-10. First, Mediterranean does not appear to specifically renew here its claims as to Counts I-II of the operative complaint, and so those claims have been waived. Mediterranean does make comparable arguments, that MCS's claims are inherently contractual ones that must be resolved by arbitration, as part of its current jurisdictional challenge. But those arguments are addressed above, and the ALJ persuasively rejected them in the failure-to-state-a-claim context in the MTD Order, *see id.* at 4-8. With regard to Counts III-IV, Mediterranean argues, as it did in moving to dismiss, that the activity MCS alleges does not state a discrimination claim under the relevant provisions of the Shipping Act, especially

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        14

as amended by the Ocean Shipping Reform Act of 1998. Exceptions at 33-35. But the ALJ's earlier rejection of those same arguments was well-reasoned, MTD Order at 8-9, and MCS's Response to the Exceptions also persuasively refutes those claims, Response at 30-33. Finally, Mediterranean argues that Count V does not state a refusal-to-deal claim, but again, the ALJ addressed that argument and rejected it in a well-reasoned discussion, which the Commission adopts. MTD Order at 9-10; *see also* Response at 33-34. Mediterranean's failure-to-state-a-claim arguments are rejected and the ALJ's conclusions affirmed.

## 2.     The Initial Decision on Default

### a.   General considerations

The ALJ began the discussion of default by reviewing the applicable FMC rule, explaining that 46 C.F.R. § 502.150(b) authorizes procedural consequences for discovery violations, and that section 502.150(b)(3) specifically authorizes default. Decision at 14. The ALJ also noted that the Commission has upheld dismissals of cases where *complainants* willfully failed to comply with discovery orders. *Id.* (citing *Kawasaki*, 2014 FMC LEXIS 35, at \*17, and *Interpool*, 22 F.M.C. 762 at 764). As stated above, no FMC case precedent has been cited in this case for the imposition of default against a *respondent* as a discovery sanction, and we are not aware of one.

The ALJ noted that defaults are disfavored and a last resort. Decision at 17. However, she explained, Mediterranean had multiple chances to conform to the discovery orders at issue here. *Id*. The ALJ pointed out that she had even agreed to make the request Mediterranean had sought to the Swiss court under Hague Convention procedures, yet when that request was rejected, Mediterranean had still failed to comply with the discovery orders, seeking further relief from the Swiss executive branch. *Id*. The ALJ summarized her earlier conclusions from the Second Order as to Mediterranean's Hague Convention claims, emphasizing that the

Convention does not deprive district courts of jurisdiction, and that Mediterranean had failed to show that a specific foreign law actually bars the production at issue here. *Id*. Without the outstanding discovery, the ALJ concluded, the case was at an impasse.

We also note that the issues raised here with regard to the alleged need to use Hague Convention procedures to obtain discovery in an FMC adjudication are broadly comparable to those raised in FMC No. 22-23. In that case, the Commission rejected the respondent's argument that it could not comply with an FMC discovery order because of a French statute. *See Marine Transport Logistics, Inc. v. CMA CGM, S.A.*, FMC Docket No. 22-23, 2023 WL 7328874 (FMC Oct. 30, 2023).

Finally, before turning to the specifics of the default analysis, we will consider MCS's threshold claim that Mediterranean has waived the right to make arguments that amount to objections to the First and Second Orders because it failed to appeal them in a timely way. Response at 4-5. This argument relies on interpreting those orders as being "directed to persons or documents located in a foreign country" under 46 C.F.R. § 502.150(d), and therefore as orders that became final shortly after they were issued because Mediterranean failed to appeal them. *Id*. It is not clear where the documents at issue are actually located, as discussed below in connection with the alleged obligation to consult with the Department of State under 46 U.S.C. § 41108(c)(2). It is true that the First and Second Orders were directed to a "person" — Mediterranean — that is located in a foreign nation. But it is not clear if the location of a corporate respondent answering discovery in a foreign nation is sufficient to bring a discovery order within the scope of section 502.150(d). It may well be that the section should apply only where a discovery target is genuinely unavailable because it is located overseas beyond the reach of the FMC, which is not the case here. In any case, if this MCS argument were accepted, it would preclude challenges to the ALJ's specific determinations as to the proper substance and scope of discovery, including her findings as to the extent discovery in this proceeding

is controlled by Swiss law and, as MCS suggests, whether the consultation process under section 41108(c)(2) is appropriate. Although we are not persuaded by MCS's argument, Mediterranean's repeated failures to either appeal or provide the discovery ordered do speak to its good faith, as discussed below. We conclude that it is appropriate to review Mediterranean's challenges to the discovery determinations, under an abuse of discretion standard. As explained below, those determinations survive that review.

### b.  Specific default standards

Under the analogous Federal Rule 37(b)(2), whether default is appropriate as a discovery sanction entails showing that three basic conditions are met: (1) a party has failed to obey an order to provide discovery; (2) any one of the three factors described in *Webb*, 146 F.3d 964, is present, namely prejudice to the other party, prejudice to the judicial system, or a need to deter future misconduct; and (3) lesser sanctions are inadequate to deter and punish the misconduct. *See SEC v. China Infrastructure Inv. Corp.*, 189 F.Supp.3d 118, 129–32 (D.D.C. 2016); Response at 6-7. Although the ALJ explicitly addressed only the second condition (the *Webb* factors), Decision at 17-22, her Decision adequately addresses the other factors in its overall discussion.

### i.  Mediterranean's failure to obey discovery orders

As to the first condition, the Decision amply demonstrated that Mediterranean has failed to obey discovery orders. Specifically, it did not provide discovery as directed by the First Order of December 2021, the Second Order of July 2022, and arguably the Third Order of September 2022, insofar as that last Order explicitly offered Mediterranean the option to avoid default by simply providing the outstanding discovery. *See* Decision at 4-14, 17. In addition, these Orders warned Mediterranean multiple times about the risk of sanctions if it did not comply. *See* Response at 7-10. And

as MCS observes, *id*. at 7, Mediterranean does not actually seem to dispute that it has failed to provide the discovery ordered.

ii.    The three *Webb* factors

The ALJ provided a detailed analysis of the *Webb* factors, concluding that although only one factor was needed, all three were present here. Decision at 17-22.

As to the *first Webb* factor, prejudice to MCS, the ALJ stressed that Mediterranean had failed to produce additional documents as ordered in more than a dozen categories, as laid out in the First Order in December 2021. Decision at 18-19. As a threshold matter, she noted that Mediterranean had failed to appeal the First Order, and so, she found, its arguments now are not timely. *Id*. at 18. Substantively, she noted that Mediterranean cannot limit the scope of discovery to preclude review of its practices beyond its interactions with MCS, because the FMC must review those broader practices to evaluate Shipping Act claims. *Id*. The ALJ also found that the written discovery compelled by her orders would likely have led to more discovery, such as depositions, so in the absence of the requested information, only default, not lesser sanctions, would fully address the prejudice to MCS. *Id*. at 19. Finally, the ALJ emphasized that Mediterranean's failure to provide the discovery ordered had "significantly delayed" the proceeding, causing additional prejudice to MCS since evidence becomes harder to develop as time passes, and she noted that the alleged injury may reasonably be found to increase to the extent violations were ongoing, as MCS alleged. *Id*.

The ALJ's analysis of the first *Webb* factor is generally correct. Although we are not persuaded that Mediterranean's failure to appeal the First Order actually precludes it from making arguments about the scope of discovery now, as discussed above in section II.B.2.a, the ALJ's findings in that First Order were well within her discretion, and her evaluation here of the prejudice caused to MCS is well-supported. Mediterranean argues that the

Decision failed to meet the standards needed to show prejudice by failing to make a sufficiently specific showing that the outstanding discovery was "essential" to resolving the claims at issue; it notes that Mediterranean has produced thousands of pages of documents on issues directly related to MCS and claims that the outstanding information related to other shippers is at best "tangential." Exceptions at 41-44. It is true that the Decision's section about the prejudice to MCS does not itself discuss specific types of information. Decision at 18-19. But the section does refer to the ALJ's exhaustive review earlier in the Decision of more than a dozen specific categories of outstanding discovery that she had ordered produced but Mediterranean never provided. *Id.* at 18 (citing earlier discussion, *id*. at 4-13). In addition, as to the material related to other shippers, the ALJ made clear that the claims MCS has made under the Shipping Act, as well as Mediterranean's defenses, require evaluation of practices beyond the carrier's relations with MCS itself. *See*, *e.g.*, *id*. at 6 (ordering production of information relevant to certain alleged conduct "occurring on a normal, customary, and continuous basis," 46 C.F.R. § 545.4, and force majeure notifications by Mediterranean to other shippers). Finally, the production of *some* material in response to discovery requests, as Mediterranean notes it has done, obviously does not excuse the repeated failure to comply with orders to produce a great variety of other materials.

Mediterranean also argues that the ALJ's analysis of prejudice to MCS was flawed because MCS is not actually harmed by the delay, Exceptions at 45, but that claim is incorrect. In particular, Mediterranean asserts that MCS has "consistently maintained" that the consultation procedure at 46 U.S.C. § 41108(c) is "mandatory" here. Even if MCS had taken that position in the past, however, it would not negate the ALJ's independent current findings of prejudice, and as discussed below in section II.B.2.c, such a position as to section 41108(c) would be incorrect in any case. Mediterranean also claims that delay is not prejudicial because the violations alleged are not really "continuous and ongoing," given that MCS is seeking reparations only for conduct occurring during

a period that has now ended. Exceptions at 45. That argument has some force, but the ALJ's analysis made clear that the violations at issue are indeed alleged to be "continuous and ongoing" within the meaning of the Shipping Act, even if MCS is not currently seeking reparations for recent or future violations. Decision at 19; *see also* Response at 10-12.

On balance, the Decision is adequately supported on the first *Webb* factor, and even if it were not, any error would be harmless as long as either of the other two *Webb* factors was present.

As to the *second Webb* factor, prejudice to the judicial system, the ALJ relied on *Interpool*, in which the FMC had found dismissal the only appropriate sanction where a complainant had willfully failed to respond to discovery. Decision at 19. The ALJ noted that in that case the Commission had emphasized that agencies must protect their integrity and the orderly conduct of business, in order to protect all parties before them. *Id*.; *Interpool*, 22 F.M.C. at 767-68. Turning to the current matter, the ALJ listed many 2022 case deadlines that had not been met because of Mediterranean's failure to provide the discovery ordered, including multiple discovery deadlines and an initial decision deadline of August 2022. Decision at 20. She explained that these delays had disrupted FMC business and burdened the FMC docket, requiring multiple revisions of the schedule as well as harming MCS, the Commission, and the public. *Id*.

This evaluation of the harm to the Commission's adjudicatory system is well-supported. The ALJ described in some detail the burden to the system caused by Mediterranean's continuing failure, since the First Order in December 2021, to provide *any* further discovery in the many categories of information at issue. Decision at 20. Mediterranean argues that it should not be punished for delay caused by the purportedly "mandatory" consultation procedures described in 46 U.S.C. § 41108(c)(2), Exceptions at 46, but of course, those procedures have not actually been used here. To the extent Mediterranean means the unsuccessful

request to the Swiss court under Hague Convention procedures, even if that were not deemed to be part of the delay for which Mediterranean is responsible, the docket shows that only about three months passed between the parties' April 2022 joint filing describing the request as an option and the filing of the July 2022 notice that the Swiss court had denied the request. In addition, as MCS observes, Mediterranean's failure to provide the discovery first ordered in December 2021 has played the dominant role in the case since then, accounting for many rounds of filings and the accompanying burdens to all concerned. Response at 12-14. That situation has also diverted FMC resources that might have been used for other matters. Finally, Mediterranean's repeated failures to either comply with or appeal the ALJ's discovery orders harm the FMC's adjudicatory system by undermining its authority.

As to the *third Webb* factor, the ALJ correctly emphasized that the most severe sanctions must be available not just to penalize wrongdoers, but also to deter bad conduct by those who might be tempted to engage in similar activity. Decision at 21; *Interpool*, 22 F.M.C. at 766. The ALJ stressed that Mediterranean has not provided any list of documents and witnesses it alleges are protected because they are located in Switzerland, but instead it has just broadly asserted that it has provided substantial discovery and only some items are still outstanding. Decision at 21. The ALJ therefore found that it was "not clear whether the refusal to provide discovery is in fact because information is located in Switzerland or whether MSC Mediterranean Shipping is refusing to provide the discovery because it disagrees with the findings related to the Commission's jurisdiction and scope of these proceedings." *Id*. The ALJ also found Mediterranean's misconduct to be willful and deliberate, citing its decision not to follow the finding of the Swiss court, but instead to seek further relief from the Swiss executive branch, as well as its refusal to comply with the ALJ's orders, even after repeated warnings that such conduct was sanctionable. *Id*. The ALJ reiterated that Mediterranean was an FMC-regulated entity that had to follow the FMC's direction and could not be allowed to hide evidence overseas; its repeated refusals to comply with the above decisions

were not consistent with good faith or respect for the process. *Id*. And the ALJ noted the national significance of the allegations about Mediterranean, one of the largest container lines, which was a respondent in other FMC proceedings. *Id*. at 22. The ALJ reasonably concluded that default was needed to deter similar conduct in the future. *Id*.

In addressing the third *Webb* factor, Mediterranean argues that it has been actively engaged in this case, producing substantial discovery to MCS, but that it cannot simply choose not to comply with foreign law, and so there is an insufficient basis to justify the most severe discovery sanction of default. Exceptions at 46-48. Mediterranean also points out that the Swiss court did not actually order it do anything. *Id*. at 47. That is correct, but as the ALJ emphasized, Decision at 21, the Swiss court did reject the Hague Convention request as inappropriate. Rather than accept that and provide the discovery the ALJ had ordered, Mediterranean appears to have gone around the court to the Swiss executive branch, looking for a different answer. Mediterranean does not seem to have sought further *judicial* review in Switzerland. In addition, as the ALJ and MCS emphasize, Mediterranean chose to neither appeal the ALJ's adverse discovery rulings nor provide the discovery ordered, a practice that calls into question its good faith. Decision at 18; Response at 19. Those rulings would appear to have been in effect the "law of the case," at least until Mediterranean obtained a different decision from the Commission itself. *See Wye Oak Technology*, 24 F.4th at 697-98 (courts should not re-open questions decided earlier in the case absent clear error or an intervening change of law). Most fundamentally, Mediterranean has failed to show that Swiss law bars it from providing any particular information or categories of documents, as it must under relevant precedent, or even to show what responsive material may actually be located in Switzerland, as the ALJ noted. Decision at 17, 21. Mediterranean has simply failed to provide discovery responses, despite repeated orders from the ALJ, since December 2021.

In this situation, the ALJ correctly identified a substantial risk, in the absence of a meaningful sanction, of encouraging obstructive tactics in other FMC matters. Decision at 22. Such tactics could involve vague allegations that foreign law controls the discovery sought in comparable future matters involving similar activities by foreign carriers. Indeed, the Commission recently rejected such claims in an appeal of a discovery order in another case. *See Marine Transport Logistics*, FMC Docket No. 22-23, 2023 WL 7328874. This case provides ample reason for ongoing concern regarding the potential use of such tactics. Permitting FMC-regulated entities to subject ordinary FMC discovery proceedings about U.S. shipping activities to foreign control, and the inevitable disputes about international procedure, simply because a party asserts that unspecified information exists overseas, poses a significant threat to the fair and timely resolution of cases before the Commission.

### iii.     The inadequacy of lesser sanctions

With regard to the third condition for the entry of default under Federal Rule 37(b)(2), the inadequacy of lesser sanctions, the ALJ did not identify this as a distinct, stand-alone factor, but she did sufficiently address it as part of her overall discussion. First, in outlining the prejudice to MCS under the first *Webb* factor, the ALJ stressed that the lack of the range of discovery ordered had significantly limited MCS's ability to make its case, including the ability to identify additional needed discovery. Decision at 19. Accordingly, she continued, "a lesser sanction such as directing that certain matters be taken as established, prohibiting certain claims or defenses, or striking pleadings would not be effective to remedy the failure to provide such broad discovery." *Id*. And MCS argues persuasively that given the magnitude of the discovery failures here, no lesser sanction would adequately address its situation. Response at 20-21. Much of the discussion above as to the third *Webb* factor is also relevant here, as failing to impose a meaningful sanction in the face of Mediterranean's conduct would not adequately deter such conduct going forward. Finally, the ALJ emphasized the

multiple warnings she had given Mediterranean that if it did not provide the discovery ordered, sanctions including default were possible. Decision at 20-21. The failure of those warnings to produce any effect also supports our conclusion that only default is an adequate sanction here.

c. The potential applicability of 46 U.S.C. § 41108(c)(2)

Mediterranean also makes a stand-alone argument that default is inappropriate because consultation with the U.S. Department of State under 46 U.S.C. § 41108(c)(2) is the proper way to resolve the discovery dispute at issue, Exceptions at 37-40, but that claim is unavailing. Section 41108(c)(2) states that such consultation shall occur where a carrier alleges that information "located in a foreign country cannot be produced because of the laws of that country." This issue was also raised in the recent *Marine Transport Logistics* case. *See* 2023 WL 7328874, at *7.

As an initial matter, MCS argues that this claim by Mediterranean, like others that amount to challenges to the ALJ's previous discovery orders, has been waived under 46 C.F.R. § 502.150(d), which states that ALJ orders "directed to persons or documents located in a foreign country" become final unless promptly appealed. Response at 4-5, 5 n.2. While that waiver claim did not persuade us as applied to the full scope of discovery orders to Mediterranean in this matter, as discussed above, it has more force to the extent Mediterranean's refusal to produce the information at issue is specifically based on its own claim that it cannot produce the information because the information is in fact "located in a foreign country." Thus, to the extent Mediterranean is accurately describing that situation, its claim would indeed appear to have been waived under section 502.150(d). The ALJ did not explicitly reach this issue in her Decision, although she did note that Mediterranean had argued section 41108(c)(2) applies in its opposition to the order to show cause. Decision at 4. It seems possible that she regarded the

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.     24

argument as untimely or marginal in light of Mediterranean's overall record of non-compliance with her discovery orders.

In any case, Mediterranean has not shown that 46 U.S.C. § 41108(c)(2) bars the imposition of default here. Given the burdens that implementation of the provision would impose on both the U.S. and foreign governments, and the potential effects on FMC discovery, it is reasonable to interpret the statute to require a more specific and developed showing that the documents sought actually are located in a foreign country, not available in the United States, and cannot be produced because of foreign laws. *See Marine Transport Logistics*, 2023 WL 7328874, at *7. In this case, Mediterranean has not adequately shown that responsive materials actually are located exclusively in Switzerland. As the ALJ explained in her discussion of deterrence, "[i]t is not clear whether the refusal to provide discovery is in fact because information is located in Switzerland or whether MSC Mediterranean Shipping is refusing to provide the discovery because it disagrees with the findings related to the Commission's jurisdiction and scope of these proceedings." Decision at 21. Mediterranean emphasizes that MCS itself has at times described the section 41108(c)(2) procedure as mandatory in the current situation. Exceptions at 37-38. But even if true, that would not control the ALJ's or the Commission's independent determination as to whether the statute compels the use of that procedure here. Finally, although Mediterranean describes the section 41108(c)(2) procedure as "proper" in this case, Exceptions at 37, 40, it does not appear to be arguing that it is in fact required, only that Hague Convention procedures are. And if the section 41108(c)(2) procedure is not required, it provides no independent basis to support Mediterranean's claim that default was improper.

In sum, the ALJ's decision to enter a default here was within her discretion, and in any event was well-reasoned and well-supported by the record.

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.      25

**C.      The matter is remanded for consideration of whether the delay sanction provision at 46 U.S.C. § 41302(d) is an additional basis to support default in this case**

The Shipping Act provides an additional basis to impose default as a sanction where a party has delayed an adjudication, in 46 U.S.C. § 41302(d). Although neither the ALJ nor the parties appear to have discussed the potential application of section 41302(d) here, it is appropriate to remand this matter for consideration of whether that provision may be an alternative basis to support that sanction.

The provision at 46 U.S.C. § 41302(d) (Sanctions for Delay) states that if, within the period the Commission has set for issuing a final decision as required by section 41302(c), the Commission "determines that it is unable to issue a final decision because of undue delay caused by a party to the proceeding," it may impose sanctions "including issuing a decision adverse to the delaying party." This provision authorizes what would amount to a default sanction if the Commission determines that a party's "undue" delay has caused the agency to be unable to issue a final decision within the period it has set to do so. Section 41302(c) specifically applies to final decision periods in proceedings initiated under "this section or section 41301," and section 41301 is the "Complaints" section describing the initial procedure for adjudications. This makes it clear that section 41302(d), which specifically applies to final decision periods established under section 41302(c), also applies to adjudications like the current case.

In this case, the deadline for final decision has been extended twice, resulting in a delay of almost one full year. The Secretary's initial Notice in August 2021 set a deadline for the final decision of February 17, 2023. FMC Docket No. 21-05, Doc. 2. The ALJ's First Order, which Mediterranean neither appealed nor complied with, was issued in December 2021. The ALJ's Second Order, which Mediterranean neither appealed nor complied with, was issued on

MCS Industries, Inc. v. Mediterranean Shipping Company S.A.        26

July 29, 2022. On that same day, the Secretary extended the final decision deadline to August 17, 2023. FMC Docket No. 21-05, Doc. 49. In September 2022, the ALJ issued the Third Order, which offered Mediterranean the option of simply producing the outstanding discovery in lieu of responding to the order to show cause. Mediterranean chose to resist the order, with several filings in late 2022. In January 2023, the ALJ issued the Initial Decision on Default, and Mediterranean filed Exceptions in February 2023. In August 2023, the Secretary again extended the final decision deadline, this time to February 16, 2024. FMC Docket No. 21-05, Doc. 67.

In this situation, imposing the sanction of default for the delay Mediterranean has caused may well be appropriate under 46 U.S.C. § 41302(d). Mediterranean's repeated failures to comply with discovery orders appear to have been the primary, if not the exclusive, cause of the two extensions which currently have set the final decision deadline back about a year, to February 2024. Obviously, the Commission cannot now issue a final decision by the initial deadline of February 2023, nor by the second deadline of August 2023. The Decision at issue here did not discuss the effect of Mediterranean's delay on the final decision deadline specifically. But the ALJ did discuss the effects of that delay at some length in explaining how it prejudiced the complainant (first *Webb* factor), noting that it "significantly delayed this proceeding." Decision at 19. And she returned to the subject in finding that Mediterranean's conduct had prejudiced the adjudication system (second *Webb* factor), describing the failure to meet a number of deadlines, which "caus[ed] multiple revisions of the schedule to accommodate the delays." *Id*. at 20. It may be that Mediterranean's failure to produce the discovery ordered was not the sole cause of the first extension of the final decision deadline in July 2022, since MCS and the ALJ did sign off on the initial effort to get documents from the Swiss court using a Hague Convention procedure in the preceding few months. But regardless, it seems likely that Mediterranean's failure to comply with the Second Order, also issued in July 2022, eliminated any chance of meeting the original February 2023 deadline for a

final decision, and Mediterranean's continued resistance to producing the discovery also made the August 2023 deadline impossible to meet.

At a minimum, 46 U.S.C. § 41302(d) merits careful consideration because it reflects clear Congressional concern that causing undue delay to FMC proceedings may well merit the most extreme sanction: a "decision adverse to the delaying party." That concern may support the imposition of the default at issue here even if that result is based primarily on the discovery sanctions described in 46 C.F.R. § 502.150(b).

In view of the above, this matter is remanded to the ALJ for consideration, with the benefit of focused and prompt briefing from the parties, of whether 46 U.S.C. § 41302(d) provides an additional basis to support the imposition of default here.

**D.      The matter is remanded for the submission of evidence sufficient to support the claimed reparations**

The Decision awarded $944,655 in reparations, plus interest, based on allegations in MCS's complaint and more specific figures included in its briefing on the order to show cause. Decision at 22-23. However, in view of the prevailing law in a context like the current one, we remand for the submission of evidence sufficient to support the reparations award.

In deciding to award the above reparations, the ALJ found that it was appropriate, based on the allegations in the complaint, to do so because they were "specified liquidated amounts requiring little or no calculations." Decision at 22 (quoting *Go/Dan Industries*, 1998 WL 940249, at *3). The ALJ also used additional information MCS submitted in its order to show cause brief, as permitted by 46 C.F.R. § 502.65(c). *Id.* The complaint alleged that, because of a shortfall in availability under MCS's 2021 and 2022 service contracts with Mediterranean, it had been forced to pay at least

$400,000 more than it would have under each service contract, and its recent briefing provided specific amounts of $480,719 and $463,936, for a total of $944,655 in reparations. *Id*.

Mediterranean argues that the reparations award was not adequately supported. Exceptions at 48-50. It primarily claims that it was improper to award reparations "without any proof," that is, without any affidavits or documentary evidence to support the award. *Id*. at 48-49. Mediterranean asserts that because the damages here were not liquidated or otherwise sums certain, relevant FMC and federal court precedent requires an evidentiary showing even if liability is established by default. *Id*.

Mediterranean's argument on this point is correct. In support of the requested reparations award, MCS simply stated in its brief that it "has calculated" the two yearly amounts above, without any explanation of how it arrived at them or any supporting evidence. Response to Order to Show Cause, Oct. 6, 2022, at 18-19. That is not adequate here. The damages appear to depend on unspecified charges for bookings MCS says it made on certain shipping routes in a certain time frame, and thus they do not appear to be appropriately considered liquidated or otherwise certain—as MCS itself seems to concede. Response to Initial Decision at 23. And where the damages claimed are of that less certain nature, the general rule for courts applying the analogous Federal Rule 55 is that even where a default judgment is to be entered, the plaintiff must provide evidence to justify a damages award. *See Bozzuto Contractors, Inc. v. Evans*, Civ. No. 19-3292, 2020 WL 7042766, at *3 (D.D.C. 2020) (where default judgment is sought, entitlement to damages must be proven "using detailed affidavits or documentary evidence on which the court may rely," *quoting Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 36 (D.D.C. 2014)); *GAG Enters., Inc. v. Rayford*, 312 F.R.D. 230, 234 (D.D.C. 2015) (denying default judgment because plaintiff had failed to provide sufficient affidavits or documentary evidence justifying damages claimed, relying instead on a general affidavit from an attorney without personal knowledge and statements in the complaint that

simply listed dollar figures, without an explanation as to their calculation).

Authority cited by MCS and the ALJ do not sufficiently support a different result here. MCS faults Mediterranean's use of case law, Response at 22-23, but it provides no specific support for the proposition that damages can be awarded without evidence in a situation like this one. The two FMC cases the ALJ cites are also not sufficient to justify a departure from the general rule here. In *Go/Dan Industries*, 1998 WL 940249, at *3, the ALJ did award a total of a little less than $8,000 to complainants based on damages for freight and other charges "itemized" in a schedule attached to the complaint, which the ALJ considered to be "liquidated amounts requiring little or no calculations." And *Shipco Transport Inc. v. Jem Logistics, Inc.*, FMC Docket No. 12-06, 2013 WL 9808695, at *1, 4, 2013 FMC LEXIS 34, *2 (FMC Aug. 21, 2013), involved an award of reparations of a little more than $8,000 for what appears to have been reimbursement for one demurrage charge described in the complaint. But even if there is some FMC precedent for an award of reparations for the type of charges at issue here without extensive supporting evidence, it is necessary to require detailed evidence in this case, in light of the apparently greater complexity and vastly greater size of the reparations claimed, as well as the approach of federal courts applying comparable default principles.

Mediterranean also argues that it was improper to award damages for the 2020-21 shipping year because none of the outstanding discovery related to that year, Exceptions at 49, but that claim does not appear to be correct. Mediterranean cites no authority for the notion that reparations awarded following default as a discovery sanction must all relate directly to the particular discovery that led to the sanction. In any case, MCS explains that discovery relating to the year in question was in fact part of the discovery outstanding by the time of the Second Order in July 2022. Response at 23-25. It appears that reparations may be properly awarded for both shipping years sought.

Finally, Mediterranean claims that the reparations award was improper because the amounts MCS sought in response to the order to show cause were about 20% more than those in the amended complaint, Exceptions at 49-50, but that claim is unconvincing. The operative complaint here simply alleged that Mediterranean's misconduct had resulted in MCS paying "at least $400,000" more for each of the two shipping years in question, plus unspecified "other injuries." Decision at 22-23; Amended Complaint at 24. Then, in providing more detail in response to the order to show cause, MCS listed amounts of $480,719 and $463,936 for the two years, amounts that are consistent with the earlier "at least" caveat. A reparations award would not be improper because of this relatively modest change.

In light of the above, this case is remanded to the ALJ for a "determination of the amount of reparations" under 46 C.F.R. § 502.65(c) based on affidavits or documentary evidence that provides adequate detail as to the damages MCS actually suffered for the violations alleged in its operative complaint. *See also* 46 C.F.R. §§ 502.251 (Proof on award of reparation); 502.252 (Reparation statements).

### E.    **Mediterranean's request for oral argument is denied**

Mediterranean requests oral argument pursuant to 46 C.F.R. § 502.241. Exceptions at 1. The request is denied under section 502.241(b).

<u>MCS Industries, Inc. v. Mediterranean Shipping Company S.A.</u>      31

## III.  <u>CONCLUSION</u>

The Commission hereby:

(1) **DENIES** Respondent Mediterranean's February 6, 2023 Exceptions as to liability;

(2) **AFFIRMS** the ALJ's January 13, 2023 Initial Decision on Default as to liability;

(3) **REMANDS** for consideration of whether the delay sanction described at 46 U.S.C. § 41302(d) may support the imposition of default here; and

(4) **REMANDS** for the submission of evidence sufficient to support the reparations Complainant MCS seeks.

By the Commission.


David Eng
Secretary