[ORAL ARGUMENT NOT YET SCHEDULED]
**No. 24-1007**
(consolidated with No. 24-1262)

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

MSC MEDITERRANEAN SHIPPING COMPANY S.A.,

*Petitioner*

v.

FEDERAL MARITIME COMMISSION,

*Respondent*

MCS INDUSTRIES, INC.

*Respondent-Intervenor*

---

On petition for review of orders of the Federal Maritime Commission

---

**CORRECTED BRIEF OF PETITIONER
MSC MEDITERRANEAN SHIPPING COMPANY S.A.**

---

Michael F. Scanlon
John Longstreth
Christiana K. Goff
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com
christi.goff@klgates.com

*Counsel for MSC Mediterranean
Shipping Company S.A.*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), Petitioner submits the following:

### A. Parties, Intervenors, and Amici

The parties to this proceeding are:

1. Petitioner

   MSC Mediterranean Shipping Company, S.A.

2. Respondent

   Federal Maritime Commission

3. Intervenor for Respondent

   MCS Industries, Inc.

### B. Rulings Under Review

*Order Affirming Initial Decision on Remand*, FMC Dkt. No. 21-05 (Federal Maritime Commission, served July 16, 2024)

*Order Partially Affirming Initial Decision on Default and Remanding for Further Proceedings*, Dkt. No. 21-05 (Federal Maritime Commission, served Jan. 3, 2024)

## C. Related Cases

Petitioners are unaware of any cases related to the current consolidated case.

*/s/ Michael F. Scanlon*

Michael F. Scanlon
John Longstreth
Christiana K. Goff
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com
christi.goff@klgates.com

*Counsel for MSC Mediterranean Shipping Company S.A.*

December 18, 2024

## PETITIONER'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, and District of Columbia Circuit Rule 26.1, Petitioner MSC Mediterranean Shipping Company S.A. ("Mediterranean Shipping") states that it is a fully owned subsidiary of MSC Mediterranean Shipping Company Holding S.A., which is not publicly held.

Pursuant to the requirement of Circuit Rule 26.1(b) that it provide a statement of general nature and purpose relevant to the litigation, MSC states that it is a Vessel Operating Common Carrier organized under the laws of Switzerland and with its principal place of business in Geneva, Switzerland, that provides ocean shipping services worldwide, including to and from the United States.

*/s/ Michael F. Scanlon*

Michael F. Scanlon
John Longstreth
Christiana K. Goff
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com
christi.goff@klgates.com

*Counsel for MSC Mediterranean Shipping Company S.A.*

December 18, 2024

**TABLE OF CONTENTS**

**Page**

**STATEMENT OF JURISDICTION** .......................................................1

**STATEMENT OF ADDENDUM** .........................................................1

**STATEMENT OF ISSUES** .................................................................1

**INTRODUCTION** ................................................................................2

**STATEMENT OF THE CASE** ...........................................................6

    A.    The Claims in the Underlying Agency Proceeding ............................6

        1.    The Original Complaint ...........................................6

        2.    The Motion to Compel and Amended Complaint ...................8

    B.    Mediterranean Shipping's Motion to Dismiss the Amended Complaint and Initiation of Arbitration .................................9

    C.    The Discovery Order Triggers the Swiss Blocking Statute ..............10

    D.    The ALJ Orders Use of the Hague Procedures to Address the Swiss Blocking Statute .......................................................11

    E.    MCS Industries' Submission of the Letter of Request and the Resulting Court Decision ..................................................12

    F.    The Order Requiring Production of Discovery Notwithstanding the Absence of Consultations or Required Procedures .....................14

    G.    Mediterranean Shipping's Continuing Efforts to Eliminate Its Criminal Exposure, Resulting in Advice From the Swiss Justice Office that the Hague Procedures Were Likely Available ................14

i

**TABLE OF CONTENTS**
(continued)

Page

H.      Mediterranean Shipping's Request for a Waiver of Article 271 to Allow Compliance and the Formal Decision of the Swiss Minister of Justice that the Hague Procedures Were Available and Must Be Used .................................................................................... 16

I.      The ALJ Ignores the Ruling of the Swiss Government and Issues a Default Judgment ................................................................ 17

J.      The Commission's Decision Affirming the Default ......................... 20

**SUMMARY OF ARGUMENT** ...................................................... **22**

**ARGUMENT** ...................................................................... **23**

**I.      STANDARD OF REVIEW** ............................................... **23**

**II.     THE COMMISSION LACKED JURISDICTION OVER THIS ACTION** ................................................................... **24**

A.      MCS Industries' Claims Are Inherently Contractual in Nature and Jurisdiction Over Them is Accordingly Barred by 46 U.S.C. § 40502(f). .......................................................... 24

B.      MCS Industries' Claims Are Separately Barred by the Federal Arbitration Act as the Parties Agreed to Arbitration as the Exclusive Forum for "[A]ny Disputes Arising Out of or in Connection With" Each of their Service Contracts .......................... 31

**III.    THE COMMISSION ERRED IN HOLDING THAT THE AMENDED COMPLAINT STATED VALID SHIPPING ACT CLAIMS** ....................................................................... **34**

A.      The Commission Erred in Holding That the Act Allows a Claim of Discrimination Against a Shipper for Carriage Under a Service Contract ............................................................... 35

B.      The Commission Erred in Holding That the Complaint Stated a Refusal to Deal Claim ...................................................... 39

**TABLE OF CONTENTS**
(continued)

Page

IV.  CONSULTATION UNDER 41108(C)(2), NOT DEFAULT, IS THE
     PROPER COURSE FOR RESOLVING THE DISCOVERY ISSUE
     THAT UNDERLAY THE INITIAL DECISION ....................................40

V.   THE COMMISSION'S AWARD OF A JUDGMENT BY
     DEFAULT MISAPPLIED THE LAW AND WAS AN ABUSE OF
     DISCRETION ............................................................................44

     A.   No Commission or Judicial Precedent Supports Award of a
          Default Judgment on the Facts Presented Here.................................44

     B.   The Commission Misapplied the Precedent on Which it Purported
          to Rely ................................................................................46

          1.   The Commission's Findings as to Prejudice to MCS
               Industries Were Erroneous and Inadequate ............................47

          2.   The Commission's Findings as to Prejudice to the Tribunal
               Were Erroneous and Inadequate .............................................51

          3.   The Commission's Findings as to Alleged Bad Faith Were
               Erroneous and Inadequate.......................................................52

     C.   The Commission Erred in Finding That the Delay Sanction in 46
          U.S.C. § 41302(d) is an Additional Basis for a Default Judgment....53

VI.  CONCLUSION .........................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anchor Shipping Co. v. Aliana Navegão E Logística Ltda.*,
2006 WL 2007808 (FMC May 10, 2006)....................................................20, 33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................34

*AT&T Technologies, Inc. v. CWA*,
475 U.S. 643 (1986).....................................................................................33

*Bradshaw v. Vilsack*,
286 F.R.D. 133 (D.D.C. 2012) .....................................................................49

*Cargo One, Inc. v. Cosco Container Lines Co. Ltd*,
2000 WL 1648961 (FMC Oct. 31, 2000) ..............................20-21, 24-26, 28-30

**Chilean Nitrate Sales Corp. v. San Diego Unified Port District*,
24 S.R.R. 1314 (1988) ...............................................................................39

*Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979) ......................................................................46

*DIRECTV, Inc. v. Hoa Huynh*,
503 F.3d 847 (9th Cir. 2007) .......................................................................37

*DNB Exports LLC, and AFI Elektromekanik Ve Elektronik San. TIC.
Ltd. STI v. Barsan Global Lojistiks Ve Gumruk Musavirligi A.S.,
Barsan Int'l, Inc., and Impexia, Inc.*,
2011 WL 7144017 (ALJ July 7, 2011)..........................................................30

*Dubicz v. Commonwealth Edison Co.*,
377 F.3d 787 (7th Cir. 2004) .......................................................................49

*Duke Power Co. v. FERC*
864 F.2d 831 (D.C. Cir. 1989)................................................................. 33-34

iv

*Federal Maritime Commission v. South Carolina State Ports Authority*,
    535 U.S. 743 (2002)..................................................................42

*Flaks v. Koegel*,
    504 F.2d 702 (2d Cir. 1974) ...............................................46

*Genesco, Inc. v. T. Kakiuchi Co.*,
    815 F.2d 840 (2d Cir. 1987) ...............................................32

*\*Global Link Logistics, Inc. v. Hapag-Lloyd AG*,
    2014 WL 5316345 (ALJ April 17, 2014)............................28, 30, 36

*Greatway Logistics Group, LLC v. Ocean Network Express PTE, Ltd.*,
    2021 WL 3090768 (ALJ July 16, 2021).....................................30, 31

*Hartford Acc. and Indem. v. Swiss Reinsurance*,
    246 F.3d 219 (2d Cir. 2001) ...............................................33

*\*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ...........................................21, 32-33

*Koon v. United States*,
    518 U.S. 81 (1996)...........................................................24

*\*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024).....................................................23, 42

*Maher Terminals, LLC v. Port Authority of New York and New Jersey*,
    2015 WL 435475 (FMC Jan. 30, 2015)................................39

*MAVL Capital Inc. v. Marine Transport Logistics, Inc.*,
    2020 WL 13512925 (FMC Oct. 29, 2020) ...........................39, 53

*Mehler v. Terminix Int'l Co.*,
    205 F.3d 44 (2d Cir. 2000) ...............................................32

*\*\*New Orleans Stevedoring Company v. Port of New Orleans*,
    29 S.R.R. 345 (I.D. 2001), *adopted* 29 S.R.R. 1066, 1071 (FMC
    2002), *aff'd mem.*, 80 Fed. App'x 681 (D.C. Cir. 2003) ...................39

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info.*
   *Techs., Inc.,*
   369 F.3d 645 (2d Cir. 2004) .............................................................31

*Petra Pet, Inc. (a/k/a Petrapport) v. Panda Logistics Limited; Panda*
   *Logistics Co., Ltd. (f/k/a Panda Int'l Transportation Co., Ltd.); and*
   *Rdm Solutions, Inc.,*
   2012 WL 11914702 (ALJ April 20, 2012) ........................................45

*Rana v. Franklin, d/b/a/ "The Right Move," Inc.,*
   2022 WL 1744905 (FMC May 25, 2022).........................................44

*Rdm Solutions, Inc.,*
   2012 WL 11914702 (ALJ April 20, 2012) ........................................45

*Shea v. Donohoe Construction Co.,*
   795 F.2d 1071 (D.C. Cir. 1986)..................................................44, 47

*Shepherd v. American Broadcasting Companies,*
   62 F.3d 1469 (D.C. Cir. 1995)....................................................44, 50

*\*Société Internationale Pour Participations Industrielles Et*
   *Commerciales v. Rogers,*
   357 U.S. 197 (1958)...................................................................5, 46

*Société Nationale Industrielle Aérospatiale v. U.S. District Court,*
   482 U.S. 522 (1987)........................................................................53

*\*\*Tak Consulting Eng'rs v. Bustani,*
   Docket No. 98-13, 28 S.R.R. 581 (ALJ 1998) ..................................44

*Tractors and Farm Equipment Limited v. Cosmos Shipping Co., Inc.,*
   1992 FMC LEXIS 86 (ALJ Nov. 23, 1992)................................. 30-31

*United States v. McGoff,*
   831 F.2d 1071 (D.C. Cir. 1987)......................................................26

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,*
   363 U.S. 574 (1960).......................................................................33

*\*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv.,*
   *LLC,*
   776 F.3d 1 (D.C. Cir. 2015)......................................................45. 50

*Webb v. District of Columbia*,
146 F.3d 964 (D.C. Cir. 1999)...........................................................24, 44, 47-48

**Western Overseas Trade and Dev. Corp. v. ANERA*,
26 S.R.R. 874 (FMC 1994)..................................................................24, 25, 31

**Statutes and Regulations**

5 U.S.C. § 706(2)(A)....................................................................................23

46 U.S.C. §§ 40101-41310 ...............................................................................1

46 U.S.C. § 40102(18) .....................................................................................6

46 U.S.C. § 40102(21) .....................................................................................6

46 U.S.C. § 40502(f)........................................................................2, 24, 29

46 U.S.C. §§ 41104(a)(4) and (8) .....................................................................35

46 U.S.C. § 41104(a)(5).....................................................................................35

46 U.S.C. §§ 41104(a)(5) and (9) ...............................................................36, 38

46 U.S.C. § 41104(a)(9).....................................................................................35

*46 U.S.C. § 41108(c)(2)...................................................4-5, 11, 13, 21, 40-43, 54

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*..................................................3

Hobbs Administrative Orders Review Act, 28 U.S.C. §§ 2342(3)(B),
2344..........................................................................................................1

Ocean Shipping Reform Act of 1998, Pub. L. 105-258 ........................................36

46 C.F.R. § 502.12 .........................................................................................44

46 C.F.R. § 502.150(d) ....................................................................................8

**Other Authorities**

144 Cong. Rec. 6109 (April 21, 1998) .................................................................37

*Convention of 18 March 1970 on the Taking of Evidence Abroad in
Civil or Commercial Matters ........................................................................4

Restatement (Second) of Contracts § 347................................................................29

Restatement (Second) of Contracts § 344(a) .........................................................29

S. Rep. No. 61, 105th Cong., 1st Sess. (1998)........................................................37

*\* Authorities upon which we chiefly rely are marked with one asterisk.*

*\*\* Authorities published in the Pike & Fischer Shipping Regulations Reports (S.R.R.), which are not readily available on an electronic database such as Westlaw or Lexis, are marked with two asterisks. These cases have been attached in an addendum to this brief.*

# **GLOSSARY**

| | |
|---|---|
| Act or Shipping Act | Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101-41310 |
| ALJ | Chief Administrative Law Judge of the Federal Maritime Commission Erin Wirth |
| Commission or FMC | Federal Maritime Commission |
| Geneva Court | Court of First Instance in Geneva, Switzerland |
| Hague Convention | Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters |
| Hague Procedures | Government-to-government procedures under the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters |
| Swiss Authority | Federal Department of Justice and Police of Switzerland |
| Swiss Justice Office | Federal Office of Justice of Switzerland |
| 1998 Act | Ocean Shipping Reform Act of 1998, Pub. L. 105-258 |

## STATEMENT OF JURISDICTION

Petitioner MSC Mediterranean Shipping Company S.A. ("Mediterranean Shipping") seeks review of final orders of Respondent Federal Maritime Commission ("Commission" or "FMC"), reviewable in this Court under the Hobbs Administrative Orders Review Act, 28 U.S.C. §§ 2342(3)(B), 2344. The orders awarded money damages against Mediterranean Shipping, making its standing self-evident.

## STATEMENT OF ADDENDUM

Pertinent statutes and regulations and copies of agency cases not available online are set forth in an addendum to this brief.

## STATEMENT OF ISSUES

1.     Did the Commission err in holding that it had jurisdiction over this action premised on Mediterranean Shipping's alleged failure to meet its contract commitments, when (a) the Shipping Act of 1984 as amended ("Shipping Act" or "Act"), 46 U.S.C. §§ 40101-41310, precludes Commission jurisdiction over breach of contract claims, and (b) the parties agreed to resolve by binding arbitration any disputes arising out of or in connection with the contracts at issue?

2.     Did the Commission err in affirming a finding of default based on Mediterranean Shipping's inability to comply with discovery due to Swiss blocking statutes without engaging in government-to-government consultations as required

by the Act or giving any weight to the stated position of the Swiss government providing a means to resolve the conflict?

3.     Did the Commission err in finding that the Amended Complaint stated valid claims under the Shipping Act?

4.     Did the Commission err under its precedent, judicial precedent, and a delay provision of the Shipping Act it raised sua sponte in (a) affirming a finding of default where Mediterranean Shipping made diligent efforts to resolve the discovery conflict, (b) failing to make any meaningful assessment of the importance of the disputed discovery to the issues in the case in light of the extensive discovery already provided, and (c) failing to meaningfully consider whether sanctions short of default would be adequate to resolve the case on the merits?

## INTRODUCTION

The Commission ignored a number of clear and explicit statutory limitations on its jurisdiction and authority in adjudicating a private damages claim (known in Commission parlance as a "reparations" action) against Mediterranean Shipping premised on allegations that it breached contracts to carry cargoes for Intervenor MCS Industries, Inc. ("MCS Industries").

*First*, the Shipping Act plainly and expressly bars the Commission from adjudicating claims for breach of contract by providing that "the exclusive remedy for a breach of a service contract is an action in an appropriate court." *See* 46 U.S.C.

2

§ 40502(f).  The Commission disregarded this limitation, holding it could decide the claims if they are characterized as violations of the Shipping Act.  The Commission's own precedent recognizes that this approach renders the statutory prohibition meaningless, and the Commission failed entirely to perform the analysis its precedent requires as to whether the claims were nonetheless inherently contractual in nature.  MCS Industries' claims were expressly premised on alleged contractual breaches, and a veneer of Shipping Act verbiage does not give the Commission jurisdiction over them.

*Second*, the Commission's exercise of jurisdiction violated the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*., because it failed to give effect, or even any weight, to the express agreement of the parties that all claims arising out of their contracts were to be arbitrated.   Again, the Commission started and stopped its analysis by announcing a supposed duty to decide any allegation of a Shipping Act violation, ignoring abundant precedent that arbitration clauses encompass federal claims and cannot be ignored by federal agencies.

*Third*, faced with Mediterranean Shipping's assertion, supported by the advice of Swiss counsel and the analysis of Swiss legal scholars, that it was prevented under the criminal law of Switzerland from complying with a discovery order without the authorization of the Swiss government, the Commission ignored the express requirement of the Shipping Act that in such a case "the Commission *shall*

3

immediately notify the Secretary of State," who "*shall* promptly consult" with that country "for the purpose of assisting the Commission in obtaining the information or documents." 46 U.S.C. § 41108(c)(2).  The Administrative Law Judge overseeing the case ("ALJ") initially agreed to government-to-government procedures under the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Procedures") to implement the statutory mandate and resolve the conflict.   JA ____ [ROA 44 at 1].   And after a Swiss court, based on incomplete information provided by MCS Industries, ruled erroneously that the Hague Procedures did not apply, JA ___ [ROA 47 at 1, 7-8], leaving Mediterranean Shipping in criminal jeopardy under Swiss law if it were to produce the documents without proper authorization from the Swiss government, *see* JA ____ [ROA 63 at 3-4], *both* parties agreed that the statute required further governmental consultations to resolve the conflict.   JA ____ [ROA 48 at 8].

The Commission, however, affirmed the ALJ's decision rejecting the positions of the parties and the Swiss government and ordering immediate production without any consultative procedures.   It did so even though Mediterranean Shipping had obtained conformation at the highest levels of the Swiss government that the Hague Procedures could and should be used.  JA ___ [ROA 59 at 6].  The Commission did not follow the mandatory language of the statute on the basis it was "reasonable" to read into it a precondition that Congress did not enact.

4

*Fourth*, disregarding the plain language of the Shipping Act requiring some form of mandatory consultations, the Commission affirmed a finding that Mediterranean Shipping was in default for not providing the discovery. It did so even though the United States Supreme Court has expressly held that a party's failure to provide discovery due to a foreign blocking statute is not a legitimate basis for defaulting a party that has no choice but to comply with the foreign laws to which it is subject. *Société Internationale Pour Participations Industrielles Et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958). The Commission did not acknowledge the substantial production not subject to the Swiss blocking statute that Mediterranean Shipping had made before the order issued or make any assessment of the value of the outstanding discovery to assess if a lesser sanction than default was warranted. The default judgment was contrary to law and an abuse of discretion.

This Court should grant the petition for review, vacate the default judgment, and order the Commission to dismiss the underlying proceeding for lack of jurisdiction. If the Court determines that the Commission does have jurisdiction, it should likewise vacate the default judgment and order the Commission to undertake consultations under 46 U.S.C. § 41108(c)(2) or use the Hague Procedures. The Court should also rule that the Shipping Act does not provide a cause of action for discrimination between shippers as to service contracts.

# STATEMENT OF THE CASE

## A.     The Claims in the Underlying Agency Proceeding

### 1.     The Original Complaint

Mediterranean Shipping, a vessel operating "ocean common carrier" under the Shipping Act, 46 U.S.C. § 40102(18), transports goods by sea in container vessels it owns, charters, and operates.  MCS Industries and Mediterranean Shipping entered into a "service contract" as defined by the Act, 46 U.S.C. § 40102(21), that was effective as of May 1, 2021 (the "2021 Contract").  JA ____ [ROA 1 at ¶ 40]. Under the 2021 Contract, MCS Industries committed to offer a certain minimum quantity of cargo for shipment by Mediterranean Shipping from China to the United States at the contract rate.  JA ___ [*Id.* at ¶ 41]. The 2021 Contract provides that "[a]ny disputes arising out of or in connection with" the contract were to be resolved by binding arbitration.  JA ___ [ROA 31 at 12-13].[1]

In late July 2021, when international ocean shipping was subject to significant disruptions due to the Covid pandemic, MCS Industries filed a private damages ("reparations") action at the Commission alleging that Mediterranean Shipping had violated the Shipping Act by improperly refusing between May and July 2021 to provide "more than approximately one-third… of the allotted space" for carriage of

---

[1] The Amended Complaint added to the case a service contract from May 2020 to April 2021 (the "2020 Contract") that contains an identical clause.  JA ____ [ROA 38 at 6].

its cargo under the 2021 Contract.    JA _____ [ROA 1 at ¶ 42].    The Complaint invoked the Shipping Act, but its central allegation was that Mediterranean Shipping breached the contract so it could sell space at higher spot market rates.    JA _____ [*Id.* at 11-12].    The Complaint alleged that Mediterranean Shipping had colluded with other carriers to force MCS Industries to ship its cargo at higher rates, claims that were later dropped entirely.    JA _____ [ROA 1 at ¶¶ 4, 7, 11, 16-17].

On investigation Mediterranean Shipping found that MCS Industries had not attempted to book the cargo it claimed Mediterranean Shipping had not carried, except for a handful of bookings made too late or under the wrong contract. Mediterranean Shipping thus decided to defend the suit vigorously.  It answered the complaint and provided all the documents it had concerning the negotiation of the 2021 Contract and the disputed shipments, with the goal of obtaining a prompt disposition of the case.  After the exchange of initial discovery, MCS Industries agreed that the alleged non-carriage underlying its claims was limited to a total of 59 containers—20 containers from the port of Tianjin in May and June 2021, and 39 containers from the port of Qingdao from May through July 2021, *see* JA ___ [ROA 23 at 5-6 & nn. 6-7] (citing Master Dep. at 46:12-20, 47:4-23, 52:4-53:11), and that it was "getting acceptable service" after July.  JA ___ [*Id.* at 5 n. 9] (citing Master Dep. at 141:7-8).

## 2. The Motion to Compel and Amended Complaint

Although Mediterranean Shipping had provided all the documents in its possession as to its dealings with MCS Industries and the very narrow carriage dispute that remained, after settlement negotiations failed MCS Industries filed a motion to compel seeking information as to a wide variety of matters *unrelated* to MCS Industries and its cargo. JA _____ [ROA 21 at 2]. These included Mediterranean Shipping's contracts and dealings with other shippers, its methods of loading and unloading vessels, and highly sensitive  financial and ownership information, that is kept strictly confidential as it is a nonpublic company. JA _____ [ROA 23 at 40-41, 46-47, 60-63, 66-67, 71-74]. Mediterranean Shipping opposed the motion, but the ALJ granted it in full in an Order dated December 8, 2021. JA _____ [ROA 23; 27]. That Order became a final order of the Commission on December 18, 2021, by operation of 46 C.F.R. § 502.150(d).

On December 23, 2021, MCS Industries sought leave to file an amended complaint. JA _____ [ROA 32]. The proposed Amended Complaint dropped the collusion allegations against Mediterranean Shipping and other carriers, focusing the dispute on the bilateral contractual relationship between the parties. JA _____ [ROA 38]. MCS Industries also changed its theory of the case to claim that Mediterranean Shipping was breaching the contracts to force MCS Industries to pay a "peak season surcharge." JA _____ [*Id.* at ¶¶ 42-44, 47, 51-71, 87-106]. The Amended Complaint

8

expanded these allegations to cover the 2020 Contract, which was materially identical to the 2021 Contract except that it provided for a higher volume commitment and covered one additional port.  JA ___ [*Id.* at ¶¶ 22(a), 23-31].[2]

### B.    Mediterranean Shipping's Motion to Dismiss the Amended Complaint and Initiation of Arbitration

Mediterranean Shipping had moved to dismiss the Complaint and filed a reply that addressed new allegations in the Amended Complaint as well.  JA ____ [ROA 36].    Mediterranean Shipping noted that by expressly abandoning the earlier conspiracy and collusion allegations the Amended Complaint now inarguably raised only breach of contract claims, over which the Commission lacks jurisdiction.  JA ____ [ROA 36 at 1-2].  The ALJ denied the motion, holding that the Amended Complaint stated claims under the Shipping Act, but not addressing whether those claims were nonetheless inherently contractual and outside the Commission's jurisdiction.  JA ____ [ROA 37 at 5-6].

Pursuant to the arbitration clauses in each contract, Mediterranean Shipping thereupon commenced arbitration against MCS Industries for breach of the

---

[2] The original Complaint included a claim that Mediterranean Shipping had engaged in a "refusal to deal" claim by providing a smaller minimum quantity guarantee under the 2021 Contract than the 2020 Contract.  JA____ [ROA 1 at ¶ 30]. Discovery revealed that Mediterranean Shipping had offered nearly twice the volume MCS Industries accepted, and the Amended Complaint recasts the refusal to deal claim as a contract administration claim.  JA ____ [ROA 38 at ¶¶ 88, 97, 100-101, 104-105, 110, 112, 116-117].

minimum quantity commitments. JA ____ [ROA 39 at 3]. In defense, MCS Industries rehashed its Shipping Act claims largely verbatim.[3] The Arbitration was ripe given that the Commission's assertion of jurisdiction over inherently contractual claims was now clear, and because the contract year had been completed, confirming that the annual minimum quantity commitment had not been met.

### C.    The Discovery Order Triggers the Swiss Blocking Statute

Prior to the motion to compel, Mediterranean Shipping had provided full discovery as to the cargo and related bookings MCS Industries claimed Mediterranean Shipping had not carried, including identification of the persons most directly involved in these issues. JA ____ [ROA 23 at 11]. MCS Industries conceded that this discovery covered the issues "that go to the heart of the conduct alleged," JA ____ [*Id.* at 34, 37-38, 62, 67, 73, 82], but sought to compel production as to other matters. The ALJ ordered full production in an Order dated December 8, 2021 ("Discovery Order"), JA ____ [ROA 27]. The ALJ asked the parties for a status report, and Mediterranean Shipping advised that because the Discovery Order compelled a Swiss company to produce business records from Switzerland, it triggered Article 271 of the Swiss Criminal Code, making Mediterranean Shipping's

---

[3] JA ____ [ROA 56 at 27-28]. The arbitration also covers the 2017 and 2019 contract years; there was no contract in 2018.

compliance with the order without authorization impossible without risking criminal exposure.  JA _____ [ROA 28 at 1].

Mediterranean Shipping thereafter provided the opinion of Swiss counsel confirming that a request from the Commission to the relevant Swiss authority was necessary to allow Mediterranean Shipping to simultaneously comply with the Discovery Order and with Article 271.  JA _____ [ROA 40 at 1].  Swiss counsel advised that the use of the Hague Procedures to make this request was the best means for obtaining discovery in civil cases to assure compliance with the Swiss law, and Mediterranean Shipping requested that the Commission initiate these inter-governmental processes necessary to proceed.  JA _____ [*Id.* at 2].

### D. The ALJ Orders Use of the Hague Procedures to Address the Swiss Blocking Statute

After receiving Mediterranean Shipping's submission, the ALJ requested a Joint Status Report.  JA _____ [ROA 43].  In that report, both parties specifically referenced the mandatory consultation process set forth in 46 U.S.C. § 41108(c)(2) for use when a carrier "has alleged that information or documents located in a foreign country cannot be produced because of the laws of that country."  JA _____ [*Id.* at 6-7].  The parties identified the use of the Hague Procedures as an efficient process to resolve the issue.  JA _____ [*Id.* at 8].  On May 4, 2022, the ALJ issued an Order authorizing the parties "to utilize the Hague Convention in seeking discovery in this case in order to comply with Swiss law and directing MCS Industries' counsel to

11

prepare and serve a Letter of Request to the Swiss authorities to invoke the Hague Procedures." JA _____ [ROA 44 at 1].

### E. MCS Industries' Submission of the Letter of Request and the Resulting Court Decision

Following the advice of Swiss counsel, Mediterranean Shipping advised the ALJ and MCS Industries that the Letter of Request should be directed to the Swiss Justice Office to ensure that the Swiss body that routinely handles requests under the Hague Procedures would have primary jurisdiction. JA _____ [ROA 43 at 13]. However, MCS Industries prepared and served the Letter of Request on the Court of First Instance in Geneva ("Geneva Court") nearly four weeks later, on May 31, 2022, and on the Swiss Justice Office the next day. JA _____ [ROA 45 at 1].

The request did not provide any detail regarding the nature of Commission proceedings and failed to cite directly applicable U.S. law equating them with civil judicial proceedings of the type to which the Hague Procedures apply. Because MCS Industries sent the request to the Geneva Court first, the Swiss Justice Office could not intervene and guide the Geneva Court.

On June 29, 2022, the Geneva Court denied the Letter of Request because it was sought for an administrative proceeding and thus "does not relate to a civil or commercial case and thus does not fall within the scope of application of [the Hague Convention]." JA _____ [ROA 48 at 3]. The Geneva Court decision did not rule that Mediterranean Shipping could provide any of the ordered documents without facing

12

criminal exposure under the Swiss blocking statute. It ruled only, based on the incomplete information on the nature of Commission proceedings provided to it, that it could not assist through the use of the Hague Procedures because it understood the Commission proceeding not to be a "civil or commercial case." JA _____ [*Id.* at 8]. The ruling thus did not address or resolve the impossible position in which Mediterranean Shipping found itself—that compliance with the order to provide documents would place it in criminal jeopardy. It merely held, erroneously, that it could not assist in resolving that jeopardy through the Hague Procedures.

On July 15, 2022, the parties filed a Joint Status Report addressing the Geneva Court Decision. JA_____ [ROA 48]. The parties agreed that further inter-governmental processes were required to resolve the criminal jeopardy Mediterranean Shipping would face if it complied with the order compelling production. The parties requested the ALJ invoke the 46 U.S.C. § 41108(c)(2) consultation procedures or direct the parties to re-submit to the Swiss Justice Office a properly supported request under the Hague Procedures. JA _____ [*Id.* at 2-8]. Mediterranean Shipping also detailed directly applicable and binding precedent of the U.S. Supreme Court demonstrating that the Geneva Court erred in considering a private Commission reparations proceeding not to be a "civil or commercial case" to which the Hague Procedures for judicial assistance apply. JA _____ [*Id.* at 3-8].

13

**F.    The Order Requiring Production of Discovery Notwithstanding the Absence of Consultations or Required Procedures**

On July 29, 2022, the ALJ, contrary to the requests of both parties, issued an Order requiring production of the discovery.  JA ____ [ROA 50].  Despite the unchallenged advice of Swiss Counsel that the Swiss Blocking Statute applied to the ordered discovery, the ALJ suggested that Mediterranean did not face legal jeopardy in Switzerland because the *Commission* proceeding could not impose criminal sanctions and because the Geneva Court had ruled the Hague Procedures were inapplicable.  JA ____ [*Id.* at 3].  The July 29 Order did not address or acknowledge that the criminal exposure Mediterranean Shipping faced was under *Swiss* criminal law, and that the inapplicability of the Hague Procedures did not ameliorate Mediterranean Shipping's exposure under that law.   Nor did it address Mediterranean Shipping's showing that the Geneva Court decision was directly contrary to binding U.S. law holding that Commission reparations proceedings are equivalent to civil judicial proceedings for the relevant purposes.

**G.    Mediterranean Shipping's Continuing Efforts to Eliminate Its Criminal Exposure, Resulting in Advice From the Swiss Justice Office that the Hague Procedures Were Likely Available**

On August 15, 2022, the parties filed a Joint Status Report pursuant to the ALJ 's July 29 Order.  JA ____ [ROA 51].  In this report, Mediterranean Shipping, supported again by the advice of Swiss counsel, confirmed that the Geneva Court's decision did not resolve its legal jeopardy under Swiss law.  Swiss counsel explained

the risk comes from the production itself and that the ALJ was thus incorrect to suggest it did not exist if the underlying proceeding is not criminal or cannot impose criminal sanctions.  JA ____ [*Id.* at 4-5].  Indeed, the Hague Procedures required to avoid this risk apply only to "civil or commercial" proceedings.

Mediterranean Shipping advised the ALJ and MCS Industries that Swiss counsel had contacted the Swiss Justice Office to obtain authoritative confirmation that the Hague Procedures were in fact available.  JA ___ [*Id.* at 5].  Mediterranean Shipping committed to revert immediately upon receiving advice from that Office and to consult with MCS Industries as to how best to move forward in accordance with that advice.  JA ___ [*Id.*].

On August 25, 2022, Mediterranean Shipping sought an extension of time to comply with the discovery order while it continued its attempts to obtain prompt advice from the Swiss authorities, which included contacting the International Mutual Legal Assistance Division of the Swiss Justice Office to stress the urgency of the matter, and so that it could comply with the procedures necessary for production.  JA ____ [ROA 52 at 2].  Less than two weeks later, Mediterranean Shipping filed a notice advising the ALJ and MCS Industries that the Swiss Justice Office had issued the advice it had requested, attaching the advice along with a translation.  JA ____ [ROA 54].

15

The advice directly supported Mediterranean Shipping's proposal that the request for judicial assistance should be resubmitted to the Swiss Justice Office to obtain a correct assessment that the Hague Procedures were available, and stated that a formal ruling would be forthcoming.  JA ____ [*Id.* at 1-2].  Two days later the ALJ denied the extension request, stating no weight would be given to the Swiss authorities' position because it was inconclusive, and ordered Mediterranean Shipping to show cause why a default decision should not be issued for failure to produce discovery.  JA____ [ROA 55].

### H. Mediterranean Shipping's Request for a Waiver of Article 271 to Allow Compliance and the Formal Decision of the Swiss Minister of Justice that the Hague Procedures Were Available and Must Be Used

Faced with the ALJ's refusal to accept the initial advice of the Swiss Justice Office and allow use of the Hague Procedures, Mediterranean Shipping tried another means of compliance, requesting a waiver to allow it to comply with the Commission's order compelling discovery without use of the Hague Procedures.  Such waiver requests must be filed with the Swiss Federal Department of Justice and Police ("Swiss Authority").  Mediterranean Shipping provided notice to the ALJ and to MCS Industries that it had submitted a waiver application.  JA ____ [ROA 56 at 4-7].

On October 18, 2022, Mediterranean Shipping notified the ALJ that the Swiss Authority had denied the waiver request because the "mutual legal assistance route

16

is open," and that providing discovery pursuant to the order "must therefore be made in accordance with the rules of the 1970 Hague Convention." JA ____ [ROA 59 at 6].

On November 7, 2022, the Swiss Authority issued its decision signed by the Swiss Minister of Justice, a cabinet member and one of the highest officials in the Swiss federal government. It stated unambiguously that "mutual legal assistance under the Hague Convention on the Taking of Evidence Abroad . . . is open. Contrary to the decision of 29th June 2022 of the Geneva Court of First Instance, the case is in fact a civil and commercial matter… the rejection of the request for mutual legal assistance by the Court of First Instance has no material effect (*res judicata*). A request for mutual legal assistance may be refiled in an improved form." JA ____ [ROA 63 at 3-4]. Mediterranean Shipping notified the ALJ of the decision the next day. JA ____ [ROA 61-63]. Mediterranean Shipping noted that the decision presented a path forward, and that a default judgment against it remained inappropriate for this reason and other reasons detailed in its prior response and reply with respect to the Order to Show Cause. JA ____ [*Id.*].

I.   **The ALJ Ignores the Ruling of the Swiss Government and Issues a Default Judgment**

On January 13, 2023, the ALJ issued an Initial Decision defaulting Mediterranean Shipping for failure to produce the subject discovery. JA ____ [ROA 64]. The Initial Decision gave no weight to the decision signed by the Swiss Minister

17

of Justice that the Hague Procedures were available and were required to be followed to assure compliance with Article 271 of the Swiss Criminal Code.  JA ____ [*Id.* at 17].  It incorrectly stated that Mediterranean Shipping has made "statements that it will not produce the required discovery," JA ____ [*Id.* at 13], when in fact Mediterranean Shipping had consistently stated it was required to obtain authorization before doing so.  It also stated that Mediterranean Shipping failed to respond to discovery orders, JA ____ [*Id.* at 20-21], despite Mediterranean Shipping having diligently responded to each with efforts to identify a solution that would allow it to simultaneously comply with the Discovery Order and with Article 271 and thus avoid legal jeopardy in either forum.

The Initial Decision did not address the problem of Mediterranean Shipping's exposure to criminal sanctions under the Swiss Blocking Statute, and cited to the Geneva Court's ruling even though it had been rejected by an official ruling issued at the highest levels of the Swiss government.  Rather than taking issue with the reasoning or conclusions of the written decision of the Swiss Minister of Justice, the ALJ suggested for the first time that it was the result of improper ex parte contacts, and that it was improper for Mediterranean Shipping to have sought advice from the Swiss Executive Branch.  JA____ [*Id.* at 17].  Mediterranean Shipping had repeatedly disclosed without objection its efforts to obtain the necessary clarification

from the relevant Swiss authorities and had followed the advice of Swiss counsel as to how to proceed.  *See* pp. 14-17, *supra*.

The Initial Decision did not discuss or address the statutory consultation process required under the Shipping Act, or acknowledge that MCS Industries itself had asked it be used even after the Geneva Court's ruling.  JA ____ [ROA 64 at 17]. It also incorrectly stated that the ALJ had been asked "to resolve a conflict between the judicial and executive branches in Switzerland," JA ____ [*Id.*], but the ruling of the Geneva Court in no way precluded complying with the ruling of the Swiss Minister of Justice.

The Initial Decision did not discuss any alternative sanctions short of default or analyze in any meaningful way the importance of the discovery at issue to the issues in the case.  It incorrectly stated that Mediterranean Shipping "failed to respond at all" to twelve categories of evidence or provide answers to certain interrogatories when in fact much of that evidence had been provided, that Mediterranean Shipping sought to "relitigate the relevance of the discovery ordered," when it instead sought to show under the legal standard applicable to default judgments that default was not warranted given the substantial discovery it had provided.

The Initial Decision assumed that MCS Industries was prejudiced by delay, but there was no evidence of prejudice in the record.  Mediterranean Shipping had

19

obtained a correction of the Geneva Court's ruling as promptly as possible. Had the Letters of Request been properly submitted to begin with in May 2022, or resubmitted in July 2022 as Mediterranean Shipping proposed, the following months could have been spent obtaining authorization and providing the discovery rather than litigating a default.

Finally, the Initial Decision did not require MCS Industries to provide any proof as to its claimed damages, instead awarding them based solely on the allegations in the Amended Complaint. JA _____ [*Id.* at 22-23].

### J.    The Commission's Decision Affirming the Default

The Commission adopted the ALJ's findings and conclusions as to the default in all material respects, adding very little reasoning of its own except to reject contentions that Mediterranean Shipping had waived various arguments including as to jurisdiction. JA _____ [ROA 68 at 11]. On the jurisdictional issue, without further analyzing the nature of the claims at issue the Commission stated that it has "an obligation to address Shipping Act claims, even if the relevant facts may also give rise to other claims between the parties" or there is an arbitration clause, or a related proceeding is underway. JA _____ [*Id.* at 11-13] (citing *Cargo One, Inc. v. Cosco Container Lines Co. Ltd*, 2000 WL 1648961, at *14-15 (FMC Oct. 31, 2000) and *Anchor Shipping Co. v. Aliana Navegãao E Logística Ltda.*, 2006 WL 2007808, at *10-11 (FMC May 10, 2006)). It did not assess whether the Shipping Act claims

were nonetheless "inherently contractual" under its own *Cargo One* decision, or address any of the precedent cited by Mediterranean Shipping as to arbitrability. *See, e.g., JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) (requiring arbitration of federal antitrust claims arising out of a contract). It adopted the ALJ's conclusions as to whether the Amended Complaint stated a claim without any further analysis. JA _____ [ROA 68 at 13-14].

The Commission likewise adopted the ALJ's analysis as to the default, even while noting at various points that Mediterranean Shipping's objections had force and that it was unclear how the ALJ had addressed various parts of the three-part test for default the Initial Decision purported to apply. JA _____ [*Id.* at 16-23]. The Commission did not address Mediterranean Shipping's showing that it remained in jeopardy under Swiss criminal law after the Geneva Court's decision, or the ruling of the Swiss Minister of Justice that the Hague Procedures were available and should be used. JA _____ [*Id.* at 21]. The Commission declined to address the text of the statute and gave no weight to the fact that both parties had consistently maintained that further intergovernmental consultations were required by section 41108(c)(2) via the Hague Procedures or otherwise. JA _____ [*Id.* at 24]. The Commission sidestepped the issue by stating "it is reasonable to interpret the statute to require a more specific and developed showing that the documents sought actually are located in a foreign country," despite the fact that no party contested that Mediterranean

Shipping, a Swiss company based in Geneva, Switzerland, maintained its business records in Switzerland, and that the statute requires only an "allegation" not a "detailed and developed showing." JA ____ [*Id.*].

The Commission found that the ALJ had not properly assessed damages and remanded on that issue and as to whether the default could be upheld on an alternative statutory ground. JA ____ [*Id.*]. Following remand, the Commission held that the alternative ground supported the default, based on the same facts that supported its prior determination, and affirmed the damages award.

## SUMMARY OF ARGUMENT

The Commission lacked jurisdiction over the underlying proceeding because MCS Industries' claims, though styled in Shipping Act language, are fundamentally breach of contract claims, and the Shipping Act expressly states that the Commission has no jurisdiction over such claims. The Commission did not apply its own precedent requiring that it analyze whether claims alleging Shipping Act violations are nonetheless "premised on the obligation to meet one's contract commitments" and thus outside its jurisdiction. The Commission also improperly failed to give effect to the parties' agreement that claims arising out of their contract should be arbitrated, and misread the Shipping Act to hold that the Complaint stated claims for discrimination and refusal to deal.

Even assuming that it had jurisdiction, the Commission erred in entering a default on the basis of Mediterranean Shipping's inability to produce documents due to a foreign blocking statute. The Shipping Act expressly requires intergovernmental consultations to resolve the conflict in these circumstances and does not provide an exception to the mandatory statutory requirement based on asserted uncertainty as to the location of the documents. In addition to this statutory error, the Commission abused its discretion by ignoring the uncontested evidence in the record, in the form of authoritative statements of the Swiss government, that the Hague Procedures were available to resolve the impasse, and by imposing the severe sanction of default without the specific, reasoned findings this Court's precedent requires.

## ARGUMENT

## I.     STANDARD OF REVIEW

Courts must hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A). The court reviews "all relevant questions of law" de novo without deference to the agency, and must apply the "best reading" of a statute and not merely a "permissible" one "[i]n an agency case as in any other." *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244, 2261, 2266 (2024). The Commission's interpretations of the Shipping Act are thus reviewed de novo.

23

An order of default is reviewed for an abuse of discretion and the review must be "a thorough, not a cursory, one." *Webb v. District of Columbia*, 146 F.3d 964, 971-72 (D.C. Cir. 1999). There must be "a specific, reasoned explanation for rejecting lesser sanctions." *Id.* An error of law is "by definition" an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996).

## II.   THE COMMISSION LACKED JURISDICTION OVER THIS ACTION

### A.   MCS Industries' Claims Are Inherently Contractual in Nature and Jurisdiction Over Them is Accordingly Barred by 46 U.S.C. § 40502(f).

46 U.S.C. § 40502(f), formerly Section 8(c) of the Act, provides that "[u]nless the parties agree otherwise, the exclusive remedy for a breach of a service contract is an action in an appropriate court." The parties here have not agreed otherwise; to the contrary, they have expressly agreed to arbitration of "[a]ny disputes arising out of or in connection with" their service contracts. Commission precedent required it, when applying this jurisdictional limitation, to examine "whether a complainant's allegations are inherently a breach of contract, or whether they also involve elements peculiar to the Shipping Act and thus rebut the presumption that the claim is no more than a simple contract breach claim." *Cargo One*, 2000 WL 1648961, at *14; *see also Western Overseas Trade and Dev. Corp. v. ANERA*, 26 S.R.R. 874, 884 (FMC 1994) (barring claims "couched in terms of alleged violations of the 1984 Act" that are "really breach of contract claims"). In *Cargo One*, the Commission held that

24

"for [46 U.S.C. § 40502(f)] to have meaning, it must have been intended to preclude the filing of some complaints of Shipping Act violations, and not just breach of contract claims, as such claims would not be actionable before the Commission in any event." 2000 WL 1648961, at *14. The Commission has thus held that claims "premised on the obligation to meet one's contract commitments" are "outside its jurisdiction." JA ____ [*Id.*].

The Commission's decision in this case directly violates the statutory command and fails to follow its own *Cargo One* precedent. It does not analyze whether the claims are inherently contractual, but simply recites the truism that conduct that might be a breach of a service contract can also be a violation of the Shipping Act. *See* JA ___ [ROA 68 at 13-14] (stating that "this FMC matter is not a breach of contract action," and referring to the Commission's "obligation to address Shipping Act claims, even if the relevant facts may also give rise to other claims"). The Initial Decision likewise simply referred to allegations of "practices that violate the Shipping Act." JA ____ [ROA 64 at 15-16]. But this is the beginning of the inquiry, not the end of it: Under *Cargo One*, even if allegations state a Shipping Act claim, they are outside the Commission's jurisdiction if they are nonetheless inherently contractual, and a complainant cannot avoid the jurisdictional bar by dressing up contractual claims in "Shipping Act verbiage." 2000 WL 1648961, at *14; *Western Overseas Trade and Dev. Corp.*, 26 S.R.R. at 1248. If all

25

that were needed was to plead a Shipping Act claim, the statutory bar would have no independent meaning, as the Commission itself noted in *Cargo One*. 2000 WL 1648961, at *14. This result is contrary to law. *See, e.g., United States v. McGoff*, 831 F.2d 1071, 1080 (D.C. Cir. 1987) (courts must "assume that Congress intended that language which it chose to employ actually was to have meaning.").

Had the Commission undertaken the required analysis to determine whether MCS Industries' claims were "premised on" contractual obligations, it should readily have concluded that those claims fall squarely within the jurisdictional prohibition. Each is expressly based on alleged breaches of contract. The unreasonable practices claim of Count I alleges that Mediterranean Shipping breached its contracts to carry MCS Industries' cargo as a "condition" of an improper purpose, stated in the original complaint as forcing MCS Industries to pay spot market prices and in the amended complaint as coercing the payment of peak season surcharges.[4] Mediterranean Shipping's alleged failure to perform its contractual duties to achieve these results was both central and necessary to these claims, as

---

[4] *See* JA ___ [ROA 32 at ¶ 9 (describing the peak season surcharges as an effort by Mediterranean Shipping to allegedly "condition its compliance with its contractual service commitments on extracting additional payments from Complainant."); ¶ 42 (alleging a supposed "practice of demanding a premium as a precondition to performing its contractual obligations."); ¶ 55 ("scheme to condition Mediterranean Shipping's performance under the Service Contracts upon Complainant's agreement to pay PSS"); ¶ 104 (same)].

shown by the repeated allegations that the contractual breaches were a "condition" or "precondition" of the violations.[5]  Count II claims that Mediterranean Shipping failed to provide service pursuant to filed agreements, i.e. the service contracts, because it allegedly breached them.[6]  The claim thus on its face alleges nothing other than breach of the filed agreements.  Counts III and IV allege that Mediterranean Shipping discriminated against MCS Industries in the performance of the contract as those breaches did not exist for other shippers, and Count V alleges that Mediterranean Shipping unlawfully refused to deal with MCS Industries by refusing to carry cargo it was contractually obligated to carry and by certain acts of contract administration.[7]  The Commission cannot exercise jurisdiction over claims so inherently based on alleged breach of contract whether or not they also state Shipping Act claims.

The original complaint could have been construed as going beyond a simple breach of contract in making repeated allegations of concerted, collusive, and parallel activity among carriers.  JA ___ [ROA 1 at ¶¶ 4-7, 11, 15-17].  However, the Amended Complaint drops all such allegations, and thus makes clear that it is based solely on the parties' contractual relationship.  MCS Industries has described

---

[5] *Id.*

[6] *See* JA ___ [ROA 32 at ¶¶ 109-110].

[7] *See* JA ___ [*Id.* at ¶¶ 115-116].

Mediterranean Shipping as engaging in "a course of unjust and unreasonable conduct in which it failed to provide the agreed space for [MCS Industries'] cargo on its ships and unreasonably refused to deal or negotiate with MCS Industries in that connection, in violation of the Shipping Act." JA ___ [ROA 23 at 14]. All of these claims depend fundamentally on allegations of breach of contract and are thus outside the Commission's jurisdiction.

A closely analogous case, *Global Link Logistics, Inc. v. Hapag-Lloyd AG*, 2014 WL 5316345, at *20 (ALJ April 17, 2014), held that claims alleging a "failure to address the [minimum quantity commitment] shortfall under the service contract" and other contract administration issues, were "inherently contract claims reserved for the arbitrator and are not within the Commission's jurisdiction to decide." MCS Industries' claims are likewise directly based on Mediterranean Shipping's alleged failure to carry cargo it was contractually committed to carry. Mediterranean Shipping cited *Global Link* to both the ALJ and the Commission, and each failed to mention, much less distinguish, the case.

The service contracts are not merely background or incidental to MCS Industries' allegations; they are fundamental to the claim that Mediterranean Shipping was "coercing surcharges" by otherwise refusing to perform its contractual obligation and "preferring higher priced cargo" by allegedly not carrying cargo at lower contract rates. These are claims directly "premised on the obligation to meet

28

one's contract commitments" and expressly barred by *Cargo One*.  *See Cargo One*,

2000 WL 1648961, at \*14-15 (dismissing claims on that ground).

Nor is this a case in which the service contracts between MCS Industries and

Mediterranean Shipping are merely referenced in the Amended Complaint, or where

Mediterranean Shipping argued that merely having a contractual relationship with

MCS Industries precluded any Shipping Act claim arising out of that relationship.

*See id.* at \*5 (noting the argument that the claims "only incidentally are couched in

the context of a service contract").  Here the Shipping Act claims cannot be

maintained absent the allegation that Mediterranean Shipping did not fulfill its

contractual commitments.  Allowing the claims to go forward in this posture would

read 46 U.S.C. § 40502(f) entirely out of the Act.

The inherently contractual nature of MCS Industries' claims is further

supported by the fact that its reparations claim is calculated as the difference between

(a) the rates it alleges it would have paid had contractually allocated space been

provided and (b) the higher rates it allegedly had to pay in the spot market when that

space was not provided.  This is the classic measure of damages for breach of

contract.  *See* Restatement (Second) of Contracts § 347 (stating that "[c]ontract

damages are ordinarily based on the injured party's expectation interest"); *and id.* at

§ 344(a) (defining "expectation interest" as the "interest in having the benefit of his

29

bargain by being put in as good a position as he would have been in had the contract been performed").

Finally, this case is unlike those in which the Commission has held that a claimant successfully rebutted "the presumption that the claim is no more than a simple contract breach claim." *See Cargo One*, 2000 WL 1648961, at *14. Those cases either held that conduct beyond a simple allegation of breach could also independently serve as the basis for a Shipping Act violation or sought to invalidate the exercise of a contract provision as unreasonable. *See, e.g., Tractors and Farm Equipment Limited v. Cosmos Shipping Co., Inc.*, 1992 FMC LEXIS 86, at *36-37, 42 (ALJ Nov. 23, 1992) (complaint included allegations of improperly preparing shipping documents and altering bills of lading with false information); *Greatway Logistics Group, LLC v. Ocean Network Express PTE, Ltd.*, 2021 WL 3090768 at *1 (ALJ July 16, 2021) (independent claims related to "actions undertaken . . . to collect certain freight, demurrage, and storage charges from a non-party" to the contract). Here, as in *Global Link Logistics*, the claims are predicated on contract violations and not on the asserted invalidity of the contract provisions themselves. *See also DNB Exports LLC, and AFI Elektromekanik Ve Elektronik San. TIC. Ltd. STI v. Barsan Global Lojistiks Ve Gumruk Musavirligi A.S., Barsan Int'l, Inc., and Impexia, Inc.*, 2011 WL 7144017 at *1, 4-5 (ALJ July 7, 2011) (same). MCS Industries does not allege improper preparation and falsification of shipping

documents as in *Tractors and Farm Equipment* or require interpretation of demurrage and detention practices for adherence to Shipping Act requirements as in *Greatway* or similar cases. The claims are simply breach of contract claims "couched in terms of alleged violations of the 1984 Act," which, as held in *Western Overseas Trade and Dev. Corp.*, are outside the Commission's jurisdiction.

**B.    MCS Industries' Claims Are Separately Barred by the Federal Arbitration Act as the Parties Agreed to Arbitration as the Exclusive Forum for "[A]ny Disputes Arising Out of or in Connection With" Each of their Service Contracts**

There is no dispute that each of the service contracts that underlie this action contains a valid arbitration clause that requires "[a]ny disputes arising out of or in connection with" the contracts at issue to be resolved by binding arbitration. Indeed, MCS Industries and Mediterranean Shipping are currently arbitrating the contractual issues on which the Shipping Act claims the Commission has improperly exercised jurisdiction over depend. Federal appellate precedent establishes that noncontractual claims, including claims for violation of a federal statute, fall within such a broad arbitration clause if they arise out of or are in connection with a contract. The Commission thus wholly ignored the limitations placed on its jurisdiction by the "federal policy favoring the liberal enforcement of arbitration clauses," which "applies with particular force in international disputes." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004).

In *JLM Indus. v. Stolt-Nielsen*, the Second Circuit held that antitrust claims that depended on a showing of breach of contract were required to be arbitrated pursuant to a clause that, like the clause in the contracts at issue in this proceeding, required arbitration of "any dispute, controversy or claim arising under or in connection with" the agreement. 387 F.3d at 172. Arbitration was ordered in that case despite the strong federal policies expressed in the antitrust laws; indeed, the claims in that case arose out of a price fixing conspiracy that the Justice Department prosecuted criminally.

Recognizing and giving force to an arbitration clause as required under the Federal Arbitration Act thus in no way suggests that Shipping Act claims that may overlap with contractual claims are unimportant; it merely requires that these claims be considered in the proper forum. *See also Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 50 (2d Cir. 2000) ("[I]t is clear that we have not limited arbitration claims to those that constitute a breach of the terms of the contract at issue."); *Genesco, Inc. v. T. Kakiuchi Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("If the allegations underlying the claims 'touch matters' covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them.") (citation omitted).

*Stolt-Nielson* required arbitration of antitrust claims arising out of the parties' contractual relationship even though the plaintiff in that case contended that it was damaged by a "conspiracy which was formed *independently* of the specific

contractual relations between the parties." *Stolt-Nielsen*, 387 F.3d at 175. The plaintiff "could not have suffered these damages if it had not entered into the . . . contracts," and therefore the claims were arbitrable. That is exactly the case here, where MCS Industries' allegations all depend on allegations of breach of contract.

Finally, where claims are asserted to be subject to arbitration, any ambiguity must be resolved in favor of arbitration. *Hartford Acc. and Indem. v. Swiss Reinsurance*, 246 F.3d 219, 227 (2d Cir. 2001); *see also AT&T Technologies, Inc. v. CWA*, 475 U.S. 643, 650 (1986) (arbitration "should not be denied "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"") (emphasis added) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-583 (1960)).

The Commission did not address any of this precedent, and simply referred to its "obligation to address Shipping Act claims." JA ___ [ROA 68 at 12] (citing *Anchor Shipping*, 2006 WL 2007808, at *10-11). But just as a federal court's jurisdiction over federal antitrust claims yields to the Federal Arbitration Act when those claims arise out of or are in connection with a valid arbitration agreement, so too may parties agree to arbitrate contractual claims that may also implicate Shipping Act claims. In *Duke Power Co. v. FERC*, an agency was permitted to address a claim that contract terms themselves violated the agency's rules, but this Court cautioned that in recognizing that exception "we do not give the Commission a

license to disregard mandatory arbitration clauses in routine contract disputes." 864 F.2d 823, 831 (D.C. Cir. 1989). Here, the Commission did just that in assuming jurisdiction over claims arising out of the allegation that contract terms of unquestioned validity were breached.

## III.    THE COMMISSION ERRED IN HOLDING THAT THE AMENDED COMPLAINT STATED VALID SHIPPING ACT CLAIMS

In addition to the jurisdictional bar, a default judgment is not proper if no claim has been properly stated. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," and determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The implausibility of MCS Industries' claims is confirmed by the fundamental incompatibility of its two basic theories. It has alleged that Mediterranean Shipping breached its contracts in order to force MCS Industries into the spot market or, alternatively, to coerce MCS Industries to pay peak season surcharges. Under the terms of the service agreements, however, Mediterranean Shipping cannot impose a peak season surcharge unless both parties agree to it, and the contract may be terminated on 30 days' notice if a surcharge is proposed and not agreed to. *See* JA _____ [ROA 1 at Exh. 2].

If Mediterranean Shipping wanted to force MCS Industries out of the contract it could have simply terminated the agreement after the surcharge was not agreed to.

34

MCS Industries would then have had to pay spot market prices for that volume, to Mediterranean Shipping or another carrier, or enter into a new contract with Mediterranean Shipping or another carrier.   There would have been no need for the elaborate "scheme" MCS Industries hypothesizes.   And given the differential between spot and contract prices at the time referenced in the Amended Complaint, that strategy would have been far more remunerative than "coercing" a surcharge.

The Amended Complaint fails to state a claim on specific statutory grounds as well.

### A.    The Commission Erred in Holding That the Act Allows a Claim of Discrimination Against a Shipper for Carriage Under a Service Contract

The plain language of the Shipping Act establishes that, as to contract carriage as opposed to carriage under a tariff, the Shipping Act does not permit claims of discrimination among shippers.  As to service contracts it only recognizes claims of discrimination directed against ports.  For service pursuant to a service contract, 46 U.S.C. § 41104(a)(5) prohibits discriminatory practices *only* "in the matter of rates or charges with respect to any port," and the plain language of § 41104(a)(9) prohibits "any undue or unreasonable preference or advantage" or "any undue or unreasonable prejudice or disadvantage" *only* "with respect to any port."  Claims of discrimination among shippers can be pursued only for carriage under a tariff, not a service contract.  *Compare* 46 U.S.C. §§ 41104(a)(4) and (8) (for tariffs, prohibiting

35

"any" discrimination and "any" unreasonable preference or disadvantage) *with* 46 U.S.C. §§ 41104(a)(5) and (9) (for service contracts, prohibiting discrimination and unreasonable preference or disadvantage only "with respect to any port").

Limiting discrimination claims under service contracts to ports only, and not to shippers, was a key part of the deregulatory reforms enacted by the Ocean Shipping Reform Act of 1998, Pub. L. 105-258 ("1998 Act"), which amended the Shipping Act to allow shippers to enter into confidential individual contracts with differing, and thus inherently discriminatory, terms. The legislative history confirms this deregulatory limitation to protect only ports, and not shippers, from unjust discrimination and undue or unreasonable preference, advantage, prejudice, or disadvantage as a result of common carrier service contracts. *See Global Link Logistics*, 2014 WL 5316345, at *2 (ALJ April 17, 2014) ("The Act permits a common carrier to charge different rates to similarly situated shippers in service contracts"); *id.*, at *59-63 (discussing the legislative and regulatory history). As explained in the Senate report accompanying the final bill:

> [t]he Committee intends the application of these prohibitions to a locality to be limited to circumstances in which the prohibited actions are **clearly targeted at a locality, not to circumstances where the actions are targeted at a particular shipper or ocean transportation intermediary which happens to be associated with that locality."**

S. Rep. No. 61, 105th Cong., 1st Sess., at 28 (1998) (emphasis added). The lead

sponsor of the bill in the Senate confirmed the point during the Senate floor

consideration:

> The most significant benefit of S. 414 is that it will provide shippers and common carriers with greater choice and flexibility in entering into contractual relationships for ocean transportation and intermodal services. It accomplishes this through seven specific changes to the Shipping Act of 1984. . . It eliminates the requirement that similarly situated shippers be given the same service contract rates and service conditions. **It eliminates the current restrictions on individual common carriers engaging in discriminatory, preferential, or advantageous treatment of shippers…**

144 Cong. Rec. 6109, 6124 (April 21, 1998) (statement of Sen. Hutchinson)

(emphasis added).

The Amended Complaint asserts an unfair disadvantage "with respect to the

ports for which MCS [Industries] contracted with [Mediterranean Shipping]," JA

___ [ROA 38 at ¶¶ 19-20], but these allegations merely parrot the language of the

statute, which is not enough. *See DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854

(9th Cir. 2007) (allegations "parrot[ing] the language" of the relevant statute were

"not well-pleaded facts" but simply "legal conclusions"). MCS Industries does not

allege or provide any facts in support of any allegation of discrimination directed at

ports, but merely alleges that it was disadvantaged as a shipper at certain (non-U.S.)

ports. *See* JA ____ [ROA 34 at 14] ("Respondent undertook a practice of failing to

provide contracted space allocations **to MCS [Industries**], and, upon information and belief, **to other shippers**, at certain of the ports identified in its service contracts in order to be able to sell that space from those ports on a spot-market basis at higher prices.")(emphasis added). *See* also JA ___ [ROA 38 at ¶ 90] (alleging Mediterranean Shipping engaged in unlawful discrimination "in connection with" multiple ports, not directed at multiple ports).

The Commission nonetheless allowed the discrimination claims to go forward in this case on the basis that the alleged discrimination involved voyages over particular ports, without requiring that the discrimination be directed against a port. Allowing discrimination claims involving service contracts to proceed simply because a port is involved would negate the limitations imposed by 46 U.S.C. §§ 41104(a)(5) and (9), a key reform in the 1998 Act, because a U.S. port is necessarily involved in every matter under the Commission's jurisdiction.

The Commission's error on this point is significant to the default finding because much of the discovery that is subject to the blocking statute dispute seeks information as to supposedly more favorable treatment given to other shippers. Under a proper reading of the statutory prohibitions, that discovery is not relevant and could not properly be considered in assessing sanctions.

**B.    The Commission Erred in Holding That the Complaint Stated a Refusal to Deal Claim**

The Amended Complaint alleges that Mediterranean Shipping refused to deal by refusing to carry MCS Industries' cargo and as to various matters of contract administration.  Again, these allegations simply state breaches of contract outside the Commission's jurisdiction.   The Amended Complaint also alleges that Mediterranean Shipping did not contract for the minimum cargo quantity MCS Industries "needed," *see* JA ____ [ROA 38 at ¶ 7], but the Shipping Act does not guarantee the right to enter into a contract to begin with, much less a contract with any specific terms. *See New Orleans Stevedoring Company v. Port of New Orleans*, 29 S.R.R. 345, 352 (I.D. 2001), *adopted* 29 S.R.R. 1066, 1071 (FMC 2002), *aff'd mem.*, 80 Fed. App'x 681 (D.C. Cir. 2003).  "A refusal to deal allegation requires more than that a request is denied." *Maher Terminals, LLC v. Port Authority of New York and New Jersey*, 2015 WL 435475, at *23 (FMC Jan. 30, 2015). *See MAVL Capital Inc. v. Marine Transport Logistics, Inc.*, 2020 WL 13512925, at *9 (FMC Oct. 29, 2020) (Commission affirmance of dismissal of unsupported refusal to deal claim).  And here of course Mediterranean Shipping did enter into two contracts with MCS Industries. *See Chilean Nitrate Sales Corp. v. San Diego Unified Port District*, 24 S.R.R. 1314, 1318 (1988) (dismissing unsupported refusal to deal claim and

holding that the Commission did not have to address whether the refusal to deal or negotiate was unreasonable if there was no refusal).[8]

## IV. CONSULTATION UNDER 41108(C)(2), NOT DEFAULT, IS THE PROPER COURSE FOR RESOLVING THE DISCOVERY ISSUE THAT UNDERLAY THE INITIAL DECISION

There is no dispute in the record that under Swiss law use of the Hague Procedures is required for compliance with Section 271 of the Swiss Criminal Code, and that without use of these procedures Mediterranean Shipping would be in criminal jeopardy under Swiss law if it complied with the discovery order. Mediterranean Shipping provided several opinions of Swiss counsel to that effect, and the conclusion has been confirmed at the highest levels of the Swiss government. When such a "blocking statute" is alleged in response to an order compelling discovery, the Shipping Act requires government-to-government consultations. *See* 46 U.S.C. § 41108(c)(2). MCS Industries itself has repeatedly submitted that these consultation procedures are the mandatory and proper avenue for addressing the discovery at issue. *See*, *e.g.*, JA ___ [ROA 43 at 7] (Mediterranean Shipping's

---

[8] In addition, MCS Industries' transportation manager admitted in deposition testimony, and MCS Industries' own documents confirm, that MCS Industries took only about half of the contractual space Mediterranean Shipping offered it for the 2021 contract year, choosing instead to contract with other carriers, so the allegation the Mediterranean Shipping unreasonably refused to deal or negotiate in good faith to give MCS Industries the volume of service contracts that it "needed," is contrary to a known and incontrovertible fact in the record before the Commission. *See* JA ____ [ROA 31 at 11-12].

"invocation of Swiss law in defense of its failure to comply with the December 8 Order necessarily implicates Section 41108(c)(2), which *requires* the Commission to 'immediately notify the Secretary of State of the failure to comply and of the allegation relating to foreign laws' so that 'the Secretary of State shall promptly consult with the government of the nation within which the information or documents are alleged to be located for the purpose of assisting the Commission in obtaining the information or documents.") (emphasis in original).

The Initial Decision did not address § 41108(c)(2), incorrectly considered use of the Hague Procedures to have been precluded by the Geneva Court decision, and incorrectly disregarded the ruling of the Swiss Minister of Justice on the basis that it was a decision of the Swiss Executive Branch, not the judicial branch, even though the Shipping Act expressly requires government-to-government consultations when a foreign blocking statute is at issue. In adopting these conclusions, the Commission found it "reasonable" not to engage in consultations because Mediterranean Shipping had supposedly not made a sufficient showing that the documents were in Switzerland or made its position clear. JA ____ [ROA 68 at 24]. The Commission also suggested obliquely that Mediterranean Shipping had waived the issues by not appealing the scope of the discovery order. JA ____ [*Id.* at 23].

The Commission's conclusion was not based on the language of the statute, which it barely referenced. The statute states plainly and expressly that the

Commission "**shall** immediately notify the Secretary of State" whenever a carrier "alleges" that information or documents located in a foreign country cannot be produced because of the laws of that country" and that "the Secretary of State **shall** promptly consult with the government" of that country.  46 U.S.C. § 41108(c)(2) (emphasis added).  The word "shall" is mandatory, and it is not "reasonable" to construe it otherwise, even assuming agencies still had the authority to adopt "reasonable" or "permissible" constructions of statues rather than the best ones, and that courts were still required to defer to them.  *See Loper Bright*, 144 S. Ct. at 2266.

Nor is there any requirement in the statute that the carrier do more than "allege" the conflict, or any basis in the statute for the Commission's suggestion that Mediterranean Shipping was somehow required to do more.  In any event it did do much more.  It sought a waiver from the Swiss government that was denied. It supported the allegation of a conflict with multiple opinions of Swiss counsel and respected legal academics.  Faced with an erroneous decision that a Commission reparations action was not a civil proceeding under the Act, it provided an analysis based on the Supreme Court's decision in *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743, 759 (2002) ("the similarities between FMC proceedings and civil litigation are overwhelming") that convinced the Swiss government that the Hague Procedures were available, and required to be used.

42

The Commission also referred to the "burdens that implementation of the [consultation] provision would impose on both the U.S. and foreign governments," but did not explain these in any way. Any "burdens" are compelled by the statute requiring consultation. There was no suggestion that the Swiss government was improperly burdened. To the contrary it advised that the Hague Procedures should be used, and having gone to the trouble to issue that ruling would surely have been ready to handle a resubmitted Letter of Request had the Commission authorized one.

Nor did MCS Industries argue or demonstrate that any delay resulting from the consultation procedures would be burdensome or prejudicial. To the contrary, it too urged they be used even after the Geneva Court decision, and no party requested the order requiring immediate production that the ALJ issued. The Commission simply termed as burdensome any further attempt to comply with the procedures the Swiss were requiring. Only the ALJ, and then the Commission, sought to rush things along without the proper consultation.

Were there any doubt that re-submission of a Letter of Request, as the Swiss advised, would have resolved the matter, the consultation procedure required under § 41108(c)(2) would have been the proper way to remove it. Those consultations could have readily confirmed what was apparent after the ruling of the Swiss Justice Minister, that the Swiss considered the Hague Procedures to be the proper way forward. And were they not, the consultations could have led to another solution.

43

What the statute does not permit is what the Commission did instead—impose a default judgment without following the path the Swiss advised, or consulting as to some other method of accommodating the interests of a sovereign foreign country as the Shipping Act requires.

## V.    THE COMMISSION'S AWARD OF A JUDGMENT BY DEFAULT MISAPPLIED THE LAW AND WAS AN ABUSE OF DISCRETION

### A.    No Commission or Judicial Precedent Supports Award of a Default Judgment on the Facts Presented Here

"[B]ecause disposition of cases on the merits is generally favored . . . a default judgment must be a 'sanction of last resort . . .'" *Webb v. District of Columbia*, 146 F.3d at 971 (*quoting Shea v. Donohoe Construction Co.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986)).[9]  A district court may enter a default judgment only if it finds, first, by clear and convincing evidence—a preponderance is not sufficient—that the abusive behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits." *Shepherd v. American Broadcasting Companies*, 62 F.3d 1469, 1471–1472 (D.C. Cir. 1995); *see also Tak Consulting Eng'rs v. Bustani*, Docket No. 98-13, 28 S.R.R. 581, 583 (ALJ 1998) ("The reluctance to decide by default judgments is consistent

---

[9] In considering discovery sanctions the Commission looks to the Federal Rules of Civil Procedure to supplement its own rules. *See* 46 C.F.R. § 502.12.  "Federal Rule of Civil Procedure 37(b) is the corollary to the Commission's rule on discovery sanctions (46 C.F.R. § 502.150)." *Rana v. Franklin, d/b/a "The Right Move," Inc.*, 2022 WL 1744905 at *4 (FMC May 25, 2022).

with the underlying philosophy regarding proceedings before administrative agencies like the Commission… to decide cases based on evidence rather than on defaults and technicalities").

Default judgments are reserved for the most extreme cases "on the spectrum of discovery misconduct," involving a complete failure to participate or a willful disobedience evidenced by the lack of any "plausible excuse for [the] failure to participate in discovery," and a "history of self-directed discovery misconduct." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 6 (D.C. Cir. 2015); *Petra Pet, Inc. (a/k/a Petrapport) v. Panda Logistics Limited*; *Panda Logistics Co., Ltd. (f/k/a Panda Int'l Transportation Co., Ltd.); and Rdm Solutions, Inc.*, 2012 WL 11914702, at *2 (ALJ April 20, 2012) (default where Respondent entirely failed to participate in the proceedings). Here, by contrast, Mediterranean Shipping appeared and defended the case and participated in all proceedings, made a good faith and amply supported showing that it was unable to provide certain discovery without risking criminal jeopardy under Swiss law unless the Hague Procedures or some other authorization or waiver was obtained, and diligently attempted to invoke those procedures, culminating in a ruling by the Swiss Minister of Justice that the procedures were available and should be used. Rather than allowing them to be used however, the ALJ and the Commission peremptorily ordered Mediterranean Shipping to do what it could not do and then defaulted it.

The Commission cited no precedent issuing a default under circumstances even remotely applicable to these. To the contrary, it ignored directly applicable precedent cited to it holding that it is inappropriate to base a default on a party's inability to comply with a discovery order due to a foreign blocking statute. *See Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066-68 (2d Cir. 1979) (distinguishing circumstances where a party "makes good faith efforts to comply, and is thwarted by circumstances beyond his control for example, a foreign criminal statute prohibiting disclosure of the documents at issue" and concluding that "an order dismissing the complaint would deprive the party of a property interest without due process of law."); *Societe Internationale* 357 U.S. at 212 ("[i]t is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign."). This failure alone warrants vacatur of the default judgment. *See also Flaks v. Koegel*, 504 F.2d 702, 709 (2d Cir. 1974) (dismissal for failure to comply with discovery overturned as an abuse of discretion where "due to inability, and not to willfulness, bad faith, or any fault").

**B.    The Commission Misapplied the Precedent on Which it Purported to Rely**

Rather than look to any remotely analogous circumstances, the ALJ and the Commission addressed out of context the "three basic justifications [to] support the

46

use of dismissal or default judgment as a sanction for misconduct" set out in *Webb*:

(1) whether the conduct "has severely hampered the other party's ability to present

its case," (2) whether the conduct has placed "an intolerable burden" on the tribunal

in the form of delay or other accommodation; and (3) the bad faith or contumacious

nature of the conduct, making the severe sanction of dismissal or default necessary

to deter such conduct in the future.  146 F.3d at 971 (citing *Shea*, 795 F.2d at 1074-

75, 1077).  The Commission and the ALJ borrowed these terms to characterize

Mediterranean Shipping's actions, but they do not fit the facts.

### 1.    The Commission's Findings as to Prejudice to MCS Industries Were Erroneous and Inadequate

The Commission largely adopted the ALJ's conclusions on this factor, and

did not undertake any meaningful analysis of the importance of the outstanding

discovery to the resolution of the issues in the case, as would be necessary to support

a finding of "actual prejudice" to MCS Industries.  *See Shea*, 795 F.2d at 1075.  The

Commission conceded that the ALJ's discussion "about the prejudice to MCS does

not itself discuss specific types of information," JA ____ [ROA 68 at 18], but did

not undertake that analysis either.   It noted the ALJ's "exhaustive review earlier in

the Decision of more than a dozen specific categories of outstanding discovery that

she had ordered produced but Mediterranean never provided," *id.*, but that review

simply listed, incorrectly in many cases, the evidence that had not been produced

without making any effort to tie it to the specific issues in the case, discuss whether

sanctions short of default would suffice to cure any prejudice, or assess the effect of the substantial discovery Mediterranean Shipping had provided as to the issues MCS Industries characterized as the "heart" of its case.

For many of the "categories" referenced, Mediterranean Shipping demonstrated that it had already produced what it believed to be all responsive, non-privileged documents, other categories were mooted by the amended complaint that was filed after the discovery order, and many of the categories related to information on administrative matters of such tangential relevance such as document retention and insurance coverage policies.  *See* JA ____ [ROA 56 at 13-24; ROA 58 at 10-13].  The Commission, like the ALJ, failed to deal with any of this, and thus failed to support its conclusion that the discovery at issue so "severely hampers" MCS Industries that "it would be unfair to require [it] to proceed further with its case." *See Webb*, 146 F.3d at 971.

Even more fundamentally, far from refusing to provide the discovery, Mediterranean Shipping worked diligently to provide a path forward to allow it to be provided consistent with Swiss law.  The Commission complained about "delay," but Mediterranean Shipping was able to get confirmation at the highest level of the Swiss government only three months after the Geneva Court's erroneous decision that the Hague Procedures were available.  The delay past that point was the result of the ALJ and the Commission's refusal to use those procedures.

48

Any claim that delay in using the procedures prejudiced MCS Industries was further undermined by MCS Industries' consistent insistence that the mandatory consultation procedures be used after the Geneva Court's ruling. The Commission brushed this off on the basis that it was not bound by MCS Industries' position and was free to disagree. JA _____ [ROA 68 at 18-19]. That may be so, but the Commission had the obligation to explain why it disagreed. Instead, it simply asserted without any support that MCS Industries was prejudiced by a delay that it itself sought. JA _____ [*Id.*]. The assertion is illogical on its face.

The ALJ and the Commission erred in relying on Mediterranean Shipping's failure to comply with the discovery order as evidence in and of itself of prejudice; that is the predicate for any discovery sanction. Again, there must be a "clear and convincing" demonstration that the outstanding discovery is essential to the claims at issue. *See Bradshaw v. Vilsack*, 286 F.R.D. 133, 141 (D.D.C. 2012) (denial of default judgment in the absence of specific, factually supported allegations of prejudice); *cf. Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792-93 (7th Cir. 2004) (declining to find prejudice where "case for prejudice is stated…only in the most conclusory terms" and no "particular witnesses or documents are identified").

The only category of information for which Mediterranean Shipping has not produced substantial discovery is with respect to information on cargo capacity, costs and carriage or non-carriage of cargo *unrelated* to MCS Industries. The

Commission made no effort to show that this information was essential to Shipping Act claims premised on Mediterranean Shipping's alleged failure to provide carriage to MCS Industries at its contracted rates. The Commission's failure to thoroughly assess the discovery already produced by the parties or the importance of the outstanding discovery also meant there was no basis for a finding that no lesser sanction could have served as an effective remedy under the "clear and convincing evidence" standard required. *Shepherd*, 62 F.3d at 1471-1472.

Finally, the delay could not, as a matter of law, have caused prejudice because "delay that merely prolongs litigation is not a sufficient basis for establishing prejudice." *See Reliable Limousine,* 776 F.3d 1 at 6-7. The Commission found this argument to "have some force," but accepted the ALJ's finding that there could be prejudice because the violations were alleged to be "continuous and ongoing." JA ____ [ROA 68 at 18-19]. However, on remand the ALJ rejected outright MCS Industries' claim for reparations beyond August 2021 on the basis they had never been sought or pled in the case, so that there was no notice of any claims after the first three months of the 2021 service contract period. JA ____ [ROA 75 at 15]. There were thus inarguably no ongoing violations in the case to be prejudiced by any delay.

## 2. The Commission's Findings as to Prejudice to the Tribunal Were Erroneous and Inadequate

The Commission found that Mediterranean Shipping caused a "burden to the system," "diverted FMC resources," and "harm[ed] the FMC's adjudicatory system" by pursuing its position that the Hague Procedures or some other means of consultation were necessary to protect it from liability under the blocking statutes. JA ____ [ROA 68 at 19-20]. The Commission concedes that Mediterranean Shipping should not be held responsible for the six-month period until the Geneva Court's ruling in July 2022 when the ALJ and the parties were pursing the Hague Procedures. JA ____ [*Id.*]. It thus faults Mediterranean Shipping for seeking to extricate itself over the next three months from the bind that ruling put it in. Mediterranean Shipping was fully open about these efforts and diligent in pursuing them. Substantial authority holds that it is inappropriate to base a default on inability to comply with a discovery order due to a foreign blocking statute, *see* pp. 44-46, *supra*, and the Commission cited no precedent to the contrary. Commission proceedings regularly stretch on well past statutory and case management deadlines, and the Commission cites no reason this action seeking damages for a limited past period required any special expedition. This factor does not support the sanction of default.

51

### 3.     The Commission's Findings as to Alleged Bad Faith Were Erroneous and Inadequate

The Commission found that Mediterranean Shipping acted in bad faith by not providing the ordered discovery after the Geneva court "reject[ed] the Hague Convention request as inappropriate," and by going "around the court to the Swiss executive branch" rather than seeking further judicial review in Switzerland.  JA ___ [ROA 68, at 21].  As Mediterranean Shipping has repeatedly shown, supported by the opinions of Swiss counsel and independent legal scholars, the Geneva court decision in no way resolved its criminal jeopardy under Swiss law.  The Commission never explains why there was anything improper in remedying that promptly through the Swiss Justice Minister, or why Mediterranean Shipping was obliged under Swiss law or for any other reason to appeal instead.

The Commission states that Mediterranean Shipping did not adequately support its claim that the blocking statute prevented is compliance, but it did so numerous times with authoritative opinions of Swiss counsel and Swiss legal scholars that the Commission never addressed, much less contradicted.  Nor is there any basis for the Commission's suggestion that Mediterranean Shipping's failure to take interlocutory appeals is somehow evidence of its bad faith.  The issue was not the scope of the discovery order; it is that Mediterranean Shipping cannot comply with any order compelling production without the use of the proper procedures.  Again, substantial authority holds that penalizing a party that is acting in good faith

to comply with a foreign blocking statute is an inappropriate basis for a default, and the Commission cites no authority to the contrary.

It may well be that the Commission views any invocations of foreign blocking statues as "obstructive tactics." JA ____ [ROA 68 at 22] (citing *Marine Transport Logistics*, 2023 WL 7328874, in which it likewise refused to allow use of the Hague Procedures, and in which two Commissioners issued separate statements expressing hostility to the invocation of blocking statutes). The Shipping Act is to the contrary, however. It expressly recognizes such statutes and requires consultations, of which the Hague Procedures are a form, when they are invoked. And even if the Shipping Act had not already resolved the matter by requiring consultations, the Commission's approach was far from the "delicate task of adjudication" of competing comity concerns that the Supreme Court required in *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522, 546 (1987), a case the Commission did not even reference much less deal with. The Commission's impatience with the result is not evidence of Mediterranean Shipping's bad faith.

### C.    The Commission Erred in Finding That the Delay Sanction in 46 U.S.C. § 41302(d) is an Additional Basis for a Default Judgment

The Commission cited as an alternative ground for its decision a provision of the Shipping Act allowing it to sanction parties for delaying proceedings. JA ____ [ROA 78 at 19-25]. This provision, originally designed to cover delays in investigations, has never previously been cited or used by the Commission and was

raised by the Commission sua sponte on appeal from the ALJ's default finding. There is no evidence in the text or history of the provision that it is intended to provide the Commission broad authority to order default on bases other than those that have been developed in judicial precedent. In any event, the Commission's analysis under this provision tracks its other default analysis and is contrary to law and an abuse of discretion on the same grounds.

## VI.    CONCLUSION

The Court should grant the petition for review, vacate the default judgment, and order the Commission to dismiss the underlying proceeding for lack of jurisdiction.    If the Court determines that the Commission does have jurisdiction, it should vacate the default judgment and order the Commission to undertake consultations under 46 U.S.C. § 41108(c)(2) or the Hague Procedures as to the discovery at issue.  The Court should also rule that the Shipping Act does not provide a cause of action for discrimination between shippers.

<div style="margin-left:50%">

Respectfully submitted,

*/s/ John Longstreth*

Michael F. Scanlon
John Longstreth
Christiana K. Goff
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com
christi.goff@klgates.com

*Counsel for MSC Mediterranean Shipping Company S.A.*

</div>

December 18, 2024

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e)(1) because this brief contains 12,925 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

I further certify that this document complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Times New Roman 14-point font using Microsoft Word.

*/s/ John Longstreth*
John Longstreth

## CERTIFICATE OF SERVICE

I certify that on December 26, 2024, I filed the foregoing Corrected Brief for Petitioner with the Clerk of the United States Court of Appeals for the D.C. Circuit via the CM/ECF system, which will notify all participants in the case who are registered CM/ECF users.    The corrected brief is identical to the brief filed December 18, 2024 except that the statutory addendum has been removed and filed separately.


*/s/ John Longstreth*