No. 24-1007, consolidated with No. 24-1262

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

MSC MEDITERRANEAN SHIPPING COMPANY S.A.,
*Petitioner,*

v.

FEDERAL MARITIME COMMISSION AND UNITED STATES OF AMERICA,
*Respondents*,

MCS INDUSTRIES, INC.,
*Intervenor.*

_____

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL MARITIME COMMISSION

**BRIEF FOR RESPONDENT FEDERAL MARITIME COMMISSION**

PHILLIP "CHRIS" HUGHEY
*General Counsel*
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. CAPITOL ST., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
phughey@fmc.gov
hsummers@fmc.gov

January 17, 2025

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), respondent Federal Maritime Commission (FMC or Commission) submits its Certificate as to Parties, Rulings, and Related Cases.

**(A)    Parties and Amici**. The parties to the proceeding before the Federal Maritime Commission were MCS Industries, Inc., as Complainant, and MSC Mediterranean Shipping Company S.A. and COSCO Shipping Lines Co., Ltd., as Respondents.

The parties to this proceeding are MSC Mediterranean Shipping Company S.A., as Petitioner, the Federal Maritime Commission and the United States of America, as Respondents, and MCS Industries, Inc., as Intervenor. The World Shipping Council has filed an amicus curiae brief.

**(B)    Rulings Under Review**. The rulings under review are two Commission orders in *MCS Industries, Inc. v. MSC Mediterranean Shipping Co. S.A.*, *et al.*, FMC Docket No. 21-05, specifically the Order Partially Affirming Default and Remanding for Further Proceedings, 2024 WL 95383 (FMC Jan. 3, 2024) (JA ___), and the Order Affirming Initial Decision on Default, 2024 WL 3514613 (FMC July 16, 2024) (JA ___).

**(C)    Related Cases**. The Commission knows of no related cases.

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................1

COUNTERSTATEMENT OF JURISDICTION .....................................5

COUNTERSTATEMENT OF THE ISSUES...........................................5

STATUTES AND RULES .....................................................................6

COUNTERSTATEMENT OF THE CASE...............................................6

I.      The Applicable Legal Framework ................................................6

II.     Proceedings Before the Commission ............................................8

    A.      Commission Proceedings Prior to the ALJ's Initial Decision
        on Default ............................................................................8

    B.      The ALJ's Initial Decision on Default ................................12

    C.      The Commission's January Order Partially Affirming the
        Initial Decision on Default and Remanding on Two Issues...............13

    D.      The ALJ's Initial Decision on Remand...............................15

    E.      The Commission's July Order Affirming the Initial Decision
        on Remand..........................................................................17

III.    Proceedings Before This Court ...................................................18

SUMMARY OF ARGUMENT ............................................................19

ARGUMENT .....................................................................................20

I.      Standards of Review...................................................................20

II.     The Commission Had Jurisdiction to Consider the Claims MCS
    Made Under the Shipping Act Because Such Claims Are Distinct
    from and Go Beyond Ordinary Breach of Contract Claims..........................22

A. Title 46 U.S.C. § 40502(f) Does Not Foreclose Jurisdiction Over MCS's Claims Because They Go Beyond Breach of Contract Claims .................................................23

B. The Federal Arbitration Act Does Not Foreclose Jurisdiction Over MCS's Claims Because That Act Does Not Constrain a Federal Agency's Enforcement of Its Own Statute ..................................................................29

III. The Commission Correctly Determined that MCS Had Sufficiently Stated Claims Under the Shipping Act ......................................31

IV. It Was Within the Commission's Discretion to Order Default Under 46 C.F.R. § 502.150(b) for Mediterranean's Repeated Failures to Comply with the ALJ's Discovery Orders on the Basis of Unfounded Claims About Foreign Law ..........................................36

A. Mediterranean Failed to Obey Multiple Discovery Orders Based on Erroneous and Unsupported Claims That Swiss Law Prevented It from Complying ...........................................37

B. The Commission Permissibly Found that All Three *Webb* Factors Were Present in This Case ...........................................43

C. The Commission Permissibly Found That Lesser Sanctions Would Be Inadequate .........................................................47

D. The Commission Permissibly Found that 46 U.S.C. § 41108(c)(2) Did Not Preclude the Entry of Default Here ...............48

V. It Was Within the Commission's Discretion to Order Default Under 46 U.S.C. § 41302(d) for the Undue Delay Caused by Mediterranean's Repeated Failures to Comply with the ALJ's Discovery Orders ..................................................................53

CONCLUSION ..................................................................55

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfadda v. Fenn*, 149 F.R.D. 28 (S.D.N.Y. 1993) ....................................... 39-40, 41

*Anchor Shipping Co. v. Aliana Navegãao E Logística Ltda.*,
  FMC Docket No. 02-04, 2006 WL 2007808
  (FMC May 10, 2006) ............................................................23, 25, 26, 30, 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 31-32

*Belparts Grp., N.V. v. Belimo Automation AG*, Civ. No. 21-334,
  2022 WL 1223018 (D. Ct. 2022)...............................................................40, 41

*Cargo One, Inc. v. Cosco Container Lines Co. Ltd*, FMC
  Docket No. 99-24, 2000 WL 1648961 (FMC Oct. 31, 2000) .............23, 25, 28

*Casimir-Chery v. JTI (US) Holding Inc.*, Civ. No. 20-62568,
  2021 WL 2290680 (S.D. Fla. 2021) ..................................................................41

*Cornell v. FMC*, 634 Fed. Appx. 795 (D.C. Cir. 2015)................................6, 32, 38

*Duke Power Co. v. FERC*, 864 F.2d 823 (D.C. Cir. 1989) .....................................31

*EFG Bank v. AXA Equitable Life Ins. Co.*, Civ. No. 17-4767,
  2018 WL 1918627 (S.D.N.Y. 2018)...................................................................41

*Global Link Logistics, Inc. v. Hapag-Lloyd AG*, FMC Docket
  No. 13-07, 2014 WL 5316345 (ALJ Apr. 17, 2014) ...................................27, 34

*Loper Bright Enters. v. Raimondo*, ___ U.S. ___,
  144 S. Ct. 2244 (2024)..........................................................3, 21, 22, 24, 51

*Luminati Networks v. Code200*, Civ. No. 19-396, 2021 WL
  2819457 (E.D. Tex. 2021) ...................................................................................39

*MAVL Capital Inc. v. Marine Transp. Logistics, Inc.*, FMC
  Docket No. 16-16, 2020 WL 13512925 (FMC Oct. 29, 2020) .......................35

*Marine Transp. Logistics, Inc. v. CMA CGM, S.A.*, FMC
    Docket No. 22-23, 2023 WL 7328874 (FMC Oct. 30, 2023) .............46, 47, 51

*Microsoft Corp. v. Weidmann Elec. Tech. Inc.*, Civ. No. 15-153,
    2016 WL 7165949 (D. Vt. 2016).......................................................41

*Minneapolis & St. Louis R.R. Co. v. United States*, 361 U.S. 173 (1959)......... 20-21

*MSRF, Inc. v. HMM Co. Ltd.*, FMC Docket No. 22-20,
    2023 WL 8242695 (ALJ Nov. 22, 2023)..............................................28, 29, 31

*NextEra Energy Res., LLC v. FERC*, 118 F.4th 361 (D.C. Cir. 2024)....................20

*Parsi v. Daioleslam*, 778 F.3d 116 (D.C. Cir. 2015)...............................................21

*Rana v. Franklin*, FMC Docket No. 19-03, 2022 WL 1744905
    (FMC May 25, 2022) ...................................................................................21

*Randall v. Offplan Millionaire AG*, Civ. No. 17-2103, 2019 WL
    1003167 (M.D. Fla. 2019) ..............................................................41

*SEC v. China Infrastructure Inv. Corp.*, 189 F.Supp.3d 118
    (D.D.C. 2016)...................................................................................37

*Sinclair Wyoming Refining Co. LLC v. EPA*, 114 F.4th 693
    (D.C. Cir. 2024) ..............................................................................20

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).......................................................22

*Société Internationale pour Participations Industrielles et
    Commerciales v. Rogers*, 357 U.S. 197 (1958) ................................................42

*Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*,
    482 U.S. 522 (1987)..........................................................................46, 47

*Trailways, Inc. v. ICC*, 676 F.2d 1019 (5th Cir. 1981)...........................................21

*Tri-County Tel. Ass'n v. FCC*, 999 F.3d 714 (D.C. Cir. 2021) ...............................21

*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv.*,
 776 F.3d 1 (D.C. Cir. 2015) ....................................................................4, 21, 37

*Webb v. District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998) ..........................13, 36

**Statutes and Regulations**

5 U.S.C. § 706 ....................................................................................................53

5 U.S.C. § 706(2)(A) ......................................................................................3, 20

5 U.S.C. § 706(2)(C) ...........................................................................................21

28 U.S.C. § 2342(3) .............................................................................................18

28 U.S.C. § 2342(3)(B) .........................................................................................5

46 U.S.C. § 40102(21) .........................................................................................33

46 U.S.C. § 40102(22) .........................................................................................50

46 U.S.C. § 40502(f) ..............................................................................2, 22, 23, 24

46 U.S.C. § 41102(c) ................................................................. 5, 6, 8, 10, 23-24, 44

46 U.S.C. § 41104(a) ....................................................................................5, 7, 8

46 U.S.C. § 41104(a)(2) ......................................................................................10, 24

46 U.S.C. § 41104(a)(4) .......................................................................................33

46 U.S.C. § 41104(a)(5)................................................... 10, 24, 25, 32, 33, 34, 35

46 U.S.C. § 41104(a)(8) .......................................................................................33

46 U.S.C. § 41104(a)(9)................................................... 10, 24, 25, 32, 33, 34, 35

46 U.S.C. § 41104(a)(10)...............................................................................10, 35

46 U.S.C. § 41108 ..................................................................................48, 50

46 U.S.C. § 41108(b) ...................................................................................50

46 U.S.C. § 41108(c) ...................................................................................48

46 U.S.C. § 41108(c)(1) ...................................................................48, 49, 50

46 U.S.C. § 41108(c)(2) ................................. 4, 9, 14, 17, 20, 44, 48, 49, 50, 51, 52

46 U.S.C. § 41108(e) ..............................................................................50, 51

46 U.S.C. § 41301 ......................................................................................54

46 U.S.C. §§ 41301-41310 ........................................................................5, 7

46 U.S.C. § 41302 ......................................................................................54

46 U.S.C. § 41302(c) ...................................................................................15

46 U.S.C. § 41302(d) ................................. 5, 6, 14, 15, 17, 20, 49, 53, 54

46 U.S.C. § 41303(a) ...................................................................................49

46 U.S.C. § 41305 ......................................................................................49

46 U.S.C. § 41305(a) ...................................................................................17

46 U.S.C. § 41308 ......................................................................................49

46 U.S.C. § 46105(a) ....................................................................................7

Ocean Shipping Reform Act of 1998, Pub. L. 105-258,
   112 Stat. 1902 (Oct. 14, 1998) .........................................................34

Ocean Shipping Reform Act of 2022, Pub. L. 117-146,
   136 Stat. 1272 (June 16, 2022) ...........................................................7

Shipping Act of 1984, 46 U.S.C. §§ 40101-41310 ............................2, 5, 6

Shipping Act of 1984, Pub. L. 98-237, 98 Stat. 67 (Mar. 20, 1984) .......................51

46 C.F.R. § 502.12 .............................................................................................7

46 C.F.R. § 502.150(b) .................................................5, 11, 12, 19, 36, 49

46 C.F.R. § 502.150(b)(3) .............................................................3, 12

46 C.F.R. § 502.221 ..........................................................................46

46 C.F.R. § 506.4 ..............................................................................50

46 C.F.R. § 545.4 ..............................................................................44

FMC Rules of Practice and Procedure, 46 C.F.R., Part 502...........................7, 8, 49

## Miscellaneous

168 Cong. Rec. H5464–67 (daily ed. June 13, 2022)................................................7

168 Cong. Rec. S1843 (daily ed. March 30, 2022) ..................................................7

*20230930-dk-butterfly-1, Inc. F/k/a Bed Bath & Beyond Inc. v. Evergreen Line Joint Service Agreement*, FMC Docket No. 24-12................29

Federal Rule of Civil Procedure 12(b)(6) ................................................31

Federal Rule of Civil Procedure 37 ........................................................21

Federal Rule of Civil Procedure 37(b)(2) ........................................36, 47

H.R. 1878, 98th Cong., 1st Sess. (Mar. 3, 1983)......................................51

H.R. Rep. 98-53(I), 98th Cong., 1st Sess., 1983 WL 25382 (Apr. 12, 1983)......................................................51

S. Rep. No. 105-61, 105th Cong., 1st Sess. (July 31, 1997)..................................34

# GLOSSARY

| | |
|---|---|
| ALJ's Default Decision | Initial Decision on Default, *MCS v. Mediterranean*, FMC Docket No. 21-05 (ALJ Jan. 13, 2023) |
| ALJ's First Order | Order Granting Motion to Compel, *MCS v. Mediterranean*, FMC Docket No. 21-05 (ALJ Dec. 8, 2021) |
| ALJ's MTD Order | Order on Motion to Amend Complaint and Motion to Dismiss, *MCS v. Mediterranean*, FMC Docket No. 21-05 (ALJ Feb. 4, 2022) |
| ALJ's Remand Decision | Initial Decision on Remand, *MCS v. Mediterranean*, FMC Docket No. 21-05 (ALJ Jan. 16, 2024) |
| ALJ's Second Order | Order Requiring Production of Discovery, *MCS v. Mediterranean*, FMC Docket No. 21-05 (ALJ July 29, 2022) |
| ALJ's Third Order | Order Denying Motion for Extension of Time and Order to Show Cause, *MCS v. Mediterranean*, FMC Docket No. 21-05 (ALJ Sept. 8, 2022) |
| FMC | Federal Maritime Commission |
| JA | Joint Appendix |
| January Order | Order Partially Affirming Default and Remanding for Further Proceedings, *MCS v. Mediterranean*, FMC Docket No. 21-05 (FMC Jan. 3, 2024) |
| July Order | Order Affirming Initial Decision on Default, *MCS v. Mediterranean*, FMC Docket No. 21-05 (FMC July 16, 2024) |
| MCS | MCS Industries, Inc. |
| Mediterranean | MSC Mediterranean Shipping Co. S.A. |

ix

## INTRODUCTION

In this case, the Federal Maritime Commission (Commission or FMC) properly upheld the entry of default against an ocean common carrier for its unjustified failures to comply with discovery orders and the resulting obstruction of an administrative adjudication. In 2021 MCS Industries, Inc. (MCS), a shipper, filed a complaint with the FMC alleging that MSC Mediterranean Shipping Company S.A. (Mediterranean), the world's largest container shipping company, had violated the Shipping Act in part by failing to provide cargo space as agreed, forcing MCS to pay higher rates on the spot market during the Covid-19 pandemic. *See* Order Partially Affirming Initial Decision on Default and Remanding for Further Proceedings, *MCS v. Mediterranean*, FMC Docket No. 21-05, 2024 WL 95383 (FMC Jan. 3, 2024) (January Order) at 2 (JA ___); Order Affirming Initial Decision on Default, *MCS v. Mediterranean*, FMC Docket No. 21-05, 2024 WL 3514613 (FMC July 16, 2024) (July Order) at 2-3 (JA ___).

Mediterranean did not completely ignore the discovery orders, but instead, it engaged in what appeared to be a campaign of officious misdirection. Rather than proceed with ordinary administrative discovery, the Swiss company insisted on pursuing a needless, cumbersome international discovery process. It continued to do so even after a Swiss court had rejected as unnecessary a request for the documents at issue, a request the FMC's administrative law judge (ALJ) had

authorized in an effort to accommodate the company's ostensible concerns. And it continued to do so even after the ALJ ordered Mediterranean to show cause why default should not be entered. In effect, Mediterranean treated the ALJ's orders as if they were merely advisory opinions. Given the scope of the Commission's work in maritime affairs, it has deep respect for international comity. But in the end the agency could not accept these threats to the integrity of its adjudicative process, and in 2024 it affirmed the ALJ's decision to enter default and award reparations. *See* January Order at 2; July Order at 2-3.

In its petition, Mediterranean continues its efforts to avoid responsibility for its obstruction of the administrative adjudication process, but the Commission's orders were permissible and should be upheld. As an initial matter, contrary to Mediterranean's arguments, the FMC has jurisdiction over the claims MCS has brought under the Shipping Act, 46 U.S.C. §§ 40101-41310. Title 46 U.S.C. § 40502(f) provides that the remedy for a breach of contract is a court action, but Shipping Act claims like those MCS made here are distinct from and go beyond ordinary contract claims. They can still be pursued in an FMC adjudication, under both the language of the Act and FMC precedent, even though the parties agreed in the service contracts involved here to resolve disputes by arbitration.

The Commission also correctly upheld the ALJ's determination that MCS had sufficiently stated claims under the Shipping Act. Mediterranean does not

appear to seek review of the determinations that Counts I and II of MCS's complaint state claims. And Mediterranean's arguments as to the other Counts are unavailing, as the Commission permissibly found that MCS's complaint met the facial-plausibility standard, particularly in light of its detailed allegations of a pattern of unreasonable and discriminatory practices by Mediterranean.

Mediterranean also challenges the Commission's decision to impose default as a discovery sanction, but that decision was permissible under the deferential standard of review for "arbitrary and capricious" challenges under the Administrative Procedure Act (APA). See 5 U.S.C. § 706(2)(A); 46 C.F.R. § 502.150(b) (discovery sanctions); *Loper Bright Enters. v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 2261 (2024). Mediterranean failed to comply with multiple orders that it provide substantial outstanding discovery, wrongly insisting that a provision of Swiss law governing the release of information from Swiss territory on behalf of a foreign state prevented it from doing so. As the ALJ found, ample federal precedent shows that the provision on which Mediterranean relied does not bar production where there is no risk of criminal sanctions. And Mediterranean failed to identify any specific responsive information that Swiss law supposedly barred it from providing. Yet Mediterranean refused to accept the ALJ's determinations on these points, instead continuing to file further materials insisting it was correct. Ultimately, the Commission found that all three factors courts consider in

evaluating default as a discovery sanction were present, specifically prejudice to MCS, prejudice to the adjudicatory system, and the need to deter future misconduct, although only one factor was needed to support default. *See Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998).

The Commission also correctly rejected Mediterranean's claim that 46 U.S.C. § 41108(c)(2) barred the imposition of default here. That provision calls for notification of the Department of State and international consultation when an ocean carrier alleges that foreign law prevents it from complying with a discovery order. But that procedure was not required in this complaint-based reparations action. Instead, it applies only where the Commission pursues the potentially severe tariff-related penalties available under section 41108 as a whole. In any event, even if the provision did apply here, the Commission properly interpreted it to require at least a more specific showing than Mediterranean made here that information sought actually was located exclusively outside the U.S. and so could not be produced because of foreign laws, in order to deter potential abuse of the adjudicative process and waste of government resources. And even if the provision did require notification in this case, any error would be harmless. There is no reason to believe the Department of State would proceed with a complex international negotiation where the claim of need was baseless and the agency's own discovery procedures were sufficient.

Finally, it was within the Commission's discretion to find that 46 U.S.C. § 41302(d) was an alternative basis supporting default. Mediterranean's conduct here caused undue delay to the agency's administrative process under that provision.

The agency's decisions to impose default were well-supported, and the petition should be denied.

## COUNTERSTATEMENT OF JURISDICTION

The Commission adjudicates administrative complaints under the Shipping Act, 46 U.S.C. §§ 40101-41310, pursuant to the enforcement provisions at 46 U.S.C. §§ 41301-41310. The Commission had jurisdiction to adjudicate the claims brought by MCS under 46 U.S.C. § 41102(c) and 46 U.S.C. § 41104(a). The Court has jurisdiction over the petition filed on July 30, 2024, under 28 U.S.C. § 2342(3)(B).

## COUNTERSTATEMENT OF THE ISSUES

The issues presented for review are: (1) whether the Commission had statutory jurisdiction to consider the Shipping Act claims MCS brought; (2) whether MCS sufficiently stated claims under the Shipping Act; (3) whether the Commission acted within its discretion to impose default against Mediterranean under 46 C.F.R. § 502.150(b) for its failure to comply with multiple discovery

orders; and (4) whether the Commission acted within its discretion to impose default against Mediterranean for causing undue delay under 46 U.S.C. § 41302(d).

In its Statement of Issues, Mediterranean also included the issues of whether the Commission erred in awarding reparations to MCS (issue 10); and whether it erred in doing so without a jury trial under the Seventh Amendment (issue 11). *See* Mediterranean's Nonbinding Statement of Issues (Oct. 15, 2024) (Doc. No. 2079846) at 4. However, Mediterranean included no argument on those two issues in its opening brief, and so any such arguments are now waived. *See Cornell v. FMC*, 634 Fed. Appx. 795, 797 (D.C. Cir. 2015).

## STATUTES AND RULES

The applicable statutes and regulations are contained in the Addendum to Mediterranean's Corrected Brief (Dec. 26, 2024) (Doc. No. 2091556) ("Br.").

## COUNTERSTATEMENT OF THE CASE

### I.    The Applicable Legal Framework

The FMC is an independent agency of the United States government with jurisdiction over the administration, interpretation, and enforcement of the Shipping Act of 1984. *See generally* 46 U.S.C. §§ 40101-41310. In particular, the Shipping Act requires ocean common carriers to use "just and reasonable" practices in the handling of shippers' property, 46 U.S.C. § 41102(c), and carriers are also subject to more specific prohibitions, including in connection with the

6

performance of service contracts, 46 U.S.C. § 41104(a). The Commission

promulgates regulations to implement provisions of the Shipping Act, *see* 46

U.S.C. § 46105(a), and it adjudicates administrative complaints alleging violations

of the Act, *see* 46 U.S.C. §§ 41301-41310. In conducting adjudications, the FMC

applies its Rules of Practice and Procedure at 46 C.F.R., Part 502. Title 46 C.F.R. §

502.12 provides that for situations "not covered by a specific Commission rule, the

Federal Rules of Civil Procedure will be followed to the extent that they are

consistent with sound administrative practice."

In June 2022, Congress enacted the Ocean Shipping Reform Act of 2022 to

strengthen many of the Shipping Act's key provisions, in response to the severe

supply chain constraints experienced during the Covid-19 pandemic. Pub. L. 117-

146, 136 Stat. 1272 (June 16, 2022) (OSRA 2022). Members of Congress

expressed deep concern about unfair practices and apparent abuses by ocean

common carriers that became apparent at that time. *See* 168 Cong. Rec. S1843

(daily ed. March 30, 2022) (statement of Sen. Thune) (OSRA 2022 would give the

FMC "increased authority to respond to unfair ocean carrier practices"); 168 Cong.

Rec. H5464–67 (daily ed. June 13, 2022); *id*. at H5465 (statement of Rep.

Garamendi) (OSRA 2022 "will make a very real difference for American

businesses and consumers by lowering the exorbitant ocean shipping costs and

prohibiting unfair business practices by foreign-flagged ocean carriers.").

## II.    Proceedings Before the Commission

### A.    Commission Proceedings Prior to the ALJ's Initial Decision on Default

MCS, a U.S. shipper, initiated this case by filing an administrative complaint with the FMC dated July 28, 2021, alleging that Mediterranean and COSCO Shipping Lines Co., Ltd. (COSCO), which are vessel-operating common carriers, had violated 46 U.S.C. § 41102(c) and several provisions of 46 U.S.C. § 41104(a) in connection with a series of shipments from ports in China to the U.S. *See* July Order at 3 (JA ___); Amended Verified Complaint (Feb. 4, 2022) (Am. Compl.) at 6-9 (JA ___). MCS is a home décor manufacturing company based in Easton, PA. *See* Am. Compl. at 4; MCS Industries, About Us, available at https://mcsindustries.com/about-us/ (last visited Jan. 15, 2025). Mediterranean, a privately-held company based in Geneva, Switzerland, is the largest container shipping company in the world as measured by cargo capacity, fleet size, and market share. *See* MSC, Leader in Shipping and Logistics, available at https://www.msc.com (last visited Jan. 15, 2025); Alphaliner Top 100, available at https://alphaliner.axsmarine.com/PublicTop100/ (last visited Jan. 15, 2025).

At the Commission, private-party complaints like the one involved in this case are typically considered in the first instance by an administrative law judge (ALJ) under the FMC's Rules of Practice and Procedure. *See* 46 C.F.R., Part 502. On September 23, 2021, the ALJ in this matter issued an order that set the close of

discovery for January 27, 2022. *See* July Order at 3. On that same day, the ALJ

approved a proposed settlement agreement between MCS and COSCO. *Id*. at 3-4.

On December 8, 2021, the ALJ granted a motion MCS had filed to compel

Mediterranean to produce discovery. *See* ALJ's Order Granting Motion to Compel

(ALJ's First Order) (JA ___); July Order at 4. The ALJ's extensive Order required

Mediterranean to produce additional information in connection with 14 topics

related to its interactions with MCS and others, encompassing responses to

document requests and interrogatories. *Id*. The Order did not address any

arguments based on requirements of Swiss law, procedures under the Hague

Evidence Convention, or 46 U.S.C. § 41108(c)(2), since Mediterranean had not

raised any of those arguments in opposing the motion. *See id*.; Br. at 8.

Although Mediterranean did not administratively appeal the ALJ's First

Order issued in December 2021, it also did not comply with the Order. Instead,

later in December Mediterranean moved to dismiss the complaint, and MCS

moved to file an amended complaint. *See* July Order at 4. On February 4, 2022, the

ALJ denied Mediterranean's motion to dismiss and granted MCS's motion to

amend the complaint. *Id*.; Order on Motion to Amend Complaint and Motion to

Dismiss (ALJ's MTD Order) (JA ___).

The ALJ summarized MCS's amended complaint as alleging that

Mediterranean "disregarded service contracts in favor [of] higher-priced freight

9

and attempted to coerce extra-contractual surcharges." ALJ's MTD Order at 7 (citing Am. Compl. at 9-15). Specifically, MCS made five claims, alleging violations of 46 U.S.C. § 41102(c), which requires carriers to observe "just and reasonable" practices in handling shippers' cargo; 46 U.S.C. § 41104(a)(2), which bars carriers from providing services that are not in accord with the rules and practices contained in a service contract; 46 U.S.C. § 41104(a)(5), which prohibits carriers from engaging in any "unfair or unjustly discriminatory practice" against any type of shipment or regarding rates or charges pursuant to a service contract; 46 U.S.C. § 41104(a)(9), which bars carriers from imposing "any undue or unreasonable prejudice or disadvantage" pursuant to a service contract; and 46 U.S.C. § 41104(a)(10), which prohibits carriers from unreasonably refusing to deal or negotiate. *See* Am. Compl.

In late February 2022, Mediterranean filed a notice arguing that the ALJ's First Order compelled it to produce documents from Switzerland, supposedly exposing it to a risk of criminal liability under Swiss Criminal Code Article 271, which concerns the transfer of information from Swiss territory on behalf of a foreign state, absent authorization for the production from Swiss authorities. *See* July Order at 4; Br. at 10-11. In April 2022, the parties jointly requested that a letter seeking such documents be issued under Hague Evidence Convention procedures, and in May, the ALJ granted that request. July Order at 4. But on July

8, 2022, MCS filed a notice attaching the response from a Swiss court in Geneva that had rejected the request. *Id*. at 5.

On July 29, 2022, the ALJ issued an Order Requiring Production of Discovery (ALJ's Second Order) (JA ___). *See* July Order at 5. The ALJ's Second Order denied a request by Mediterranean that a new document request be submitted to the Swiss Federal Office of Justice, explaining that the Swiss court had determined that its involvement was not needed. *Id*. The ALJ noted that a party seeking to use Hague Evidence Convention procedures must show they are necessary, but Mediterranean had failed to do so. *Id*. The ALJ cited recent federal court decisions rejecting similar claims based on Article 271 because there was no threat of criminal sanction in the U.S. cases, and she noted that the same was true as to the sanctions available here under the FMC's administrative discovery rule at 46 C.F.R. § 502.150(b). *Id*. Thus, the ALJ ordered Mediterranean to produce the outstanding discovery by August 29, 2022. *See* July Order at 5.

Although Mediterranean did not administratively appeal the ALJ's Second Order issued in July 2022, it also did not comply with the Order. Instead, it requested more time to seek advice from the Swiss government, and on September 6, 2022, it submitted a Notice of Advice of the Swiss Federal Office of Justice. *See* July Order at 5. In essence, Mediterranean argued that the Swiss Federal Office had indicated that a new request for judicial assistance could be submitted despite

11

the earlier ruling of the Swiss court, and that this supported Mediterranean's insistence that Hague Evidence Convention procedures applied. *Id*.

On September 8, 2022, the ALJ issued an Order Denying Respondent's Motion for an Extension of Time and Order to Show Cause (ALJ's Third Order) (JA ___). *See* July Order at 6. The ALJ's Third Order rejected Mediterranean's continued arguments that Swiss law barred it from producing the outstanding discovery. *Id*. The ALJ directed Mediterranean to produce the discovery or show cause why default should not be entered under 46 C.F.R. § 502.150(b). *Id*.

Mediterranean did not provide discovery in response to the ALJ's Third Order. Instead, the company argued that default was not appropriate because production could subject it to criminal sanctions under Swiss law. *See* July Order at 6. While a decision on the Order to Show Cause remained pending, Mediterranean filed further notices attaching materials from the Swiss government that it insisted showed Hague Evidence Convention procedures were required. *See* July Order at 6-7.

### B.    The ALJ's Initial Decision on Default

In January 2023, after more than 17 months of proceedings, the ALJ imposed default pursuant to 46 C.F.R. § 502.150(b)(3) for Mediterranean's failure to comply with discovery orders. *See* Initial Decision on Default (ALJ's Default Decision) (JA ___); July Order at 7. First, the ALJ noted that the FMC has

12

jurisdiction over the Shipping Act claims MCS had made. *Id*. Next, the ALJ

concluded that default should be entered. *See* July Order at 7. The ALJ emphasized

Mediterranean's failures to comply with FMC discovery orders and its failure to

show Hague Evidence Convention procedures were required. *Id*. The ALJ

determined that all three factors set out in *Webb v. District of Columbia*, 146 F.3d

964, 971 (D.C. Cir. 1998), for the entry of default were present. *Id*. at 7-8. Finally,

as to remedy, the ALJ cited precedent authorizing the award of reparations after

default of "specified liquidated amounts requiring little or no calculations." *Id*. at 8.

The ALJ looked to MCS's filings and awarded $944,655 in reparations. *Id*.

### C.    The Commission's January Order Partially Affirming the Initial Decision on Default and Remanding on Two Issues

In January 2024, the Commission issued the January Order, affirming the

entry of default but remanding as to a potential alternative basis for default and for

the submission of further evidence as to reparations. *See* January Order (JA ___).

The Commission first upheld the ALJ's determinations that the FMC had

jurisdiction over MCS's claims and that those claims were adequately stated. *Id.* at

11-14. That was so because MCS's Shipping Act claims were distinct and went

beyond ordinary contract claims, the Commission explained, and they could still be

pursued in an FMC adjudication, even though the parties had agreed in their

service contracts to resolve disputes by arbitration. *Id*.

13

The Commission also affirmed the entry of default as a discovery sanction. *See* January Order at 14-24. First, the Commission noted, Mediterranean had failed to comply with multiple orders, dating back to December 2021, that it provide substantial outstanding discovery. *Id*. at 14-16. The Commission found that the ALJ had properly rejected Mediterranean's repeated claims that Swiss law barred it from providing that discovery under FMC procedures. *Id*. at 14-16, 21-22. In addition, the Commission found, the ALJ had properly determined that all three factors set out in the *Webb* decision for the evaluation of default as a discovery sanction were present:  prejudice to MCS from delay and from the lack of information required to evaluate its claims; prejudice to the adjudicatory system, since agencies must protect their integrity and the orderly conduct of business; and the need for deterrence, as the record supported a finding that Mediterranean's conduct was willful and deliberate. *Id*. at 17-22. The Commission determined that lesser sanctions would not be adequate. *Id*. at 22-23. Finally, the Commission rejected Mediterranean's claim that the potential application of the notification provision at 46 U.S.C. § 41108(c)(2) prevented the entry of default. *Id*. at 23-24.

After affirming as to liability, the Commission remanded the matter to the ALJ for further consideration of two issues. *See* January Order at 25-30. First, the Commission remanded for consideration of whether the sanctions available under 46 U.S.C. § 41302(d) for undue delay in the issuance of final FMC decisions were

14

an additional basis to impose default in this proceeding. *Id*. at 25-27. Second, as to the appropriate remedy, the Commission remanded for the submission of evidence that was sufficient to support the reparations MCS sought. *Id*. at 27-30.

### D.     The ALJ's Initial Decision on Remand

In February 2024, the ALJ issued a decision concluding that the delay sanction available under 46 U.S.C. § 41302(d) was an independent basis supporting default and awarding reparations of $861,706.50. *See* Initial Decision on Remand (ALJ's Remand Decision) (JA ___); July Order at 11. First, the ALJ noted that section 41302(d) authorizes an "adverse decision" where the Commission is "unable to issue a final decision" within the period it set to do so under section 41302(c) "because of undue delay caused by a party to the proceeding." July Order at 11. The ALJ found that section 41302(d) applies to complaint proceedings like this one, and that delays caused by Mediterranean prevented the Commission from meeting its August 2023 deadline for a final decision. *Id*. at 11-12.

Turning to reparations, the ALJ analyzed the evidence MCS had provided. July Order at 12. MCS submitted a sworn affidavit from its logistics analyst attaching copies of the relevant service contracts between MCS and Mediterranean, the 2020 contract (May 2020-April 2021) and 2021 contract (May 2021-April 2022); a table with data about replacement shipments of MCS cargo; and extensive

supporting documentation. *Id*. MCS sought as reparations the difference between the service contract rates and the amounts it actually paid for the cargo it alleged that Mediterranean refused to carry under those contracts, for total requested reparations of $1,152,677. *Id*. The ALJ accepted Mediterranean's argument that MCS could not recover reparations of $288,232 for the final months of the 2021 service contract, because it had failed to provide adequate notice. July Order at 13. The ALJ also excluded reparations related to the port of Jakarta, resulting in a reduction of $2,738.50. *Id*. at 14. MCS did not seek review of those decisions.

The ALJ rejected Mediterranean's numerous objections to the specific evidence MCS provided to support its reparations claims. July Order at 13-15. First, the ALJ did not accept Mediterranean's claim that MCS's declarant lacked the required personal knowledge. *Id*. The ALJ also rejected Mediterranean's claims that MCS had to tie each spot shipment to a prior request that Mediterranean carry the shipment and to show that each spot shipment could not have been made any other way. *Id*. at 14. The ALJ rejected Mediterranean's arguments as to the timing of the shipments for which MCS sought reparations, as well as Mediterranean's claim that it was entitled to an oral hearing. *Id*. at 13-14.

Finally, the ALJ determined that MCS was entitled to the difference between its allocation of shipments under the service contracts and the shipments Mediterranean actually carried for MCS for the time frames and port pairs at issue,

16

with the deductions noted above. July Order at 15. This totaled $861,706.50 in reparations. *Id*. The ALJ also awarded interest under 46 U.S.C. § 41305(a) accruing from July 31, 2021, the last date for which the Amended Complaint alleged violations. *Id*. Neither party challenged the interest award.

### E. The Commission's July Order Affirming the Initial Decision on Remand

The Commission affirmed the ALJ's Remand Decision. First, with respect to 46 U.S.C. § 41302(d), the Commission determined that the ALJ was correct to find that the delay sanction described in that provision applies to private-party complaint proceedings like this one, under the plain terms of the statute. July Order at 19-20. The FMC also determined that the ALJ had permissibly found Mediterranean's conduct had caused undue delay. *Id*. at 20-25. And the Commission found that the ALJ had properly rejected Mediterranean's claims that a section 41302(d) sanction could not be imposed because Swiss law bars the discovery production at issue and because such a sanction would ostensibly create tension with the notification provision of 46 U.S.C. § 41108(c)(2). *Id*. at 21-24.

The Commission also affirmed the Remand Decision as to reparations. *See* July Order at 25-37. The Commission noted that the ALJ's reparations award was based on a declaration from MCS's sole logistics analyst and extensive supporting documentation. *Id*. at 29-31. The Commission also upheld the ALJ's determination that MCS had provided sufficient evidence to support the reparations the ALJ

17

ordered, under the relevant legal standards. *Id*. at 31-36. The Commission rejected

Mediterranean's claims that MCS had failed to provide evidence sufficiently

linking the violations to its replacement shipments. *Id*. Finally, the Commission

found that the ALJ had permissibly rejected Mediterranean's claim that it was

entitled to an oral hearing. *Id*. at 36-37.

## III.    Proceedings Before This Court

Mediterranean initially filed a petition seeking judicial review of the January

Order. Petition (Jan. 12, 2024) (Doc. No. 2037017). The Court deferred the FMC's

motion to dismiss the January petition for lack of jurisdiction under 28 U.S.C. §

2342(3) and held the case in abeyance. Order (Mar. 22, 2024) (Doc. No. 2046262).

In July 2024, Mediterranean filed another petition, challenging both the January

Order and the July Order. Petition (July 30, 2024) (Doc. No. 2067743). The Court

consolidated that new case, No. 24-1262, with the pending matter, No. 24-1007.

Order (Aug. 1, 2024) (Doc. No. 2067835). After the Commission filed an updated

certified index, the Court set a briefing schedule. *See* Order (Nov. 8, 2024) (Doc.

No. 2084269); FMC's Updated Certified Index to the Record in FMC 21-05 (Oct.

30, 2024) (Doc. No. 2082838).

## SUMMARY OF ARGUMENT

The Commission properly imposed default against Mediterranean for its unjustified failures to comply with the ALJ's discovery orders, and the agency's decision should be upheld under the deferential standard of review.

The FMC has jurisdiction over the claims MCS brought under the Shipping Act, because statutory claims like those MCS made are distinct from and go beyond breach of contract claims, and so they can still be pursued in an FMC adjudication, even if contract claims may be available in other forums, such as in accord with arbitration clauses in the service contracts involved.

The Commission also correctly upheld the ALJ's determination that MCS had sufficiently stated claims under the Shipping Act. Mediterranean does not appear to challenge MCS's first two claims, and MCS's other claims meet the required standard of facial plausibility, particularly in light of the complaint's detailed allegations of unreasonable and discriminatory practices.

It was within the Commission's discretion to impose default as a discovery sanction under 46 C.F.R. § 502.150(b) and that decision was well-supported by the record. Mediterranean failed to comply with multiple orders that it provide substantial outstanding discovery on the basis of erroneous and unsupported claims about foreign law, and the ALJ reasonably found that all the factors considered in

evaluating the entry of default as a discovery sanction were present here. The

notification provision at 46 U.S.C. § 41108(c)(2) did not bar entry of default.

Finally, the Commission permissibly upheld the ALJ's determination that 46

U.S.C. § 41302(d) was an independent basis supporting default. It was not an

abuse of discretion to find that Mediterranean's conduct caused undue delay.

The petition should be denied.

## ARGUMENT

### I.    Standards of Review

In general, review of agency decisions under the APA is deferential. Title 5

U.S.C. § 706(2)(A) prohibits agency action that is "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law." The arbitrary and

capricious standard is "deferential to the agency," and under it courts "must uphold

decisions that are reasonable and reasonably explained." *NextEra Energy Res.,*

*LLC v. FERC*, 118 F.4th 361, 368 (D.C. Cir. 2024) (cleaned up). Reasoned

decision-making simply means that the agency must "examine the relevant data

and articulate a satisfactory explanation for its action." *Sinclair Wyoming Refining*

*Co. LLC v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024) (cleaned up). In

administrative adjudications, agencies are "not required to make subordinate

findings on every collateral contention advanced, but only upon those issues of

fact, law, or discretion which are 'material.'" *Minneapolis & St. Louis R.R. Co. v.*

20

*United States*, 361 U.S. 173, 193-94 (1959); *see Trailways, Inc. v. ICC*, 676 F.2d 1019, 1022 (5th Cir. 1981).

Similarly, appellate courts review discovery orders, including those imposing default as a sanction, under an abuse of discretion standard. "In reviewing district courts' orders on discovery, the United States Courts of Appeal apply an abuse of discretion standard because a 'narrowly circumscribed' scope of review is consistent with district courts' 'considerable discretion in managing discovery' and their 'broad discretion to impose sanctions for discovery violations under [Federal] Rule [of Civil Procedure] 37.'" *Rana v. Franklin*, FMC Docket No. 19-03, 2022 WL 1744905, at *4 (FMC May 25, 2022) (quoting *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015) (cleaned up)). Thus, the D.C. Circuit "review[s] the district court's imposition of discovery sanctions, including a default judgment award, for abuse of discretion." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv.*, 776 F.3d 1, 4 (D.C. Cir. 2015).

An agency's legal determinations are subject to de novo review. *See Loper Bright Enters. v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 2258-59 (2024); *Tri-County Tel. Ass'n v. FCC*, 999 F.3d 714, 719 (D.C. Cir. 2021). Still, in reviewing a claim that an agency has acted in excess of statutory jurisdiction or authority under 5 U.S.C. § 706(2)(C), while "[c]ourts must exercise their independent judgment," "[c]areful attention to the judgment of the Executive Branch may help inform that

inquiry." *Loper Bright*, 144 S. Ct. at 2273. Indeed, *Loper Bright* noted that courts

may "seek aid from the interpretations of those responsible for implementing

particular statutes," which "'constitute a body of experience and informed

judgment to which courts and litigants may properly resort for guidance' consistent

with the APA." *Id*. at 2262 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140

(1944)).

## II.    The Commission Had Jurisdiction to Consider the Shipping Act Claims MCS Made Because Such Claims Are Distinct from and Go Beyond Ordinary Breach of Contract Claims

As the Commission and the ALJ explained, the agency had jurisdiction to

review the claims MCS brought under the Shipping Act. *See* January Order at 11-

13; ALJ's Default Decision at 14-16; ALJ's MTD Order at 3-10. MCS made

extensive, detailed factual allegations to support each of its statutory claims, even

prior to the point Mediterranean stopped providing discovery responses. *See id*.

Under 46 U.S.C. § 40502(f), the remedy for a breach of contract is a court action,

but Shipping Act claims like those MCS made here are distinct from and go

beyond ordinary breach of contract claims. The involvement of contracts is

unremarkable: three of the five violations alleged here occur in connection with the

performance of service contracts, under the explicit terms of the Act. Not

surprisingly, then, FMC precedent makes clear that the agency may have

jurisdiction over Shipping Act claims even if the facts involved could also support

an ordinary contract action, and even if the service contract involved in the matter has an arbitration clause. The agency's analysis of the claims here was fully consistent with that precedent. *See* January Order at 12 (citing *Anchor Shipping Co. v. Alianca Navegacao E Logística Ltda.*, FMC Docket No. 02-04, 2006 WL 2007808, at *7-11 (FMC May 10, 2006) and *Cargo One, Inc. v. Cosco Container Lines Co. Ltd*, FMC Docket No. 99-24, 2000 WL 1648961, at *14-15 (FMC Oct. 31, 2000)).

### A.    Title 46 U.S.C. § 40502(f) Does Not Foreclose Jurisdiction Over MCS's Claims, Because They Go Beyond Breach of Contract Claims

Mediterranean argues (Br. at 24-31) that the claims MCS made here are barred by 46 U.S.C. § 40502(f), but as the Commission explained in its January Order, that provision does not bar pursuit of the statutory allegations at issue. *See* January Order at 12-13. Section 40502(f) simply says that the "exclusive remedy for a breach of a service contract" is an action in court, unless the parties agree otherwise. But this FMC matter is plainly not a mere breach of contract action.

On the contrary, the five Shipping Act claims MCS made here are distinct from and go beyond breach of contract claims, entailing a different analysis of statutory standards, including in some cases review of the carrier's broader practices beyond those directly affecting the complainant, as the Commission explained. *See* January Order at 12-13; ALJ's MTD Order at 3-10. For example, 46

23

U.S.C. § 41102(c), the basis for Count I, requires carriers to observe "just and reasonable" *practices* in handling cargo. In addition, three of the other four Shipping Act claims MCS made — under 46 U.S.C. § 41104(a)(2), 41104(a)(5), and 41104(a)(9) (Counts II-IV) — specifically provide for claims to be brought in the context of the performance of a service contract. Those provisions could not be enforced as Congress directed if a carrier could evade liability simply by arguing that the conduct alleged could also support an action for breach of contract. Nor does it render 46 U.S.C. § 40502(f) meaningless, as Mediterranean contends (Br. at 29), to permit parties to pursue claims at the FMC as long as they extend beyond claims for "breach of a service contract"; the category of ordinary contract claims the statute excludes from FMC jurisdiction remains a large one. And as noted above, the interpretation of the agency charged with implementing a statute may inform the inquiry of a court deciding the scope of the agency's authority under it. *See Loper Bright*, 144 S. Ct. at 2262, 2273.

Mediterranean asserts repeatedly (Br. at 24-26) that the Commission lacks jurisdiction over MCS's claims because they are "inherently" contractual, relying heavily on the Commission's 2000 decision in *Cargo One*. But as the ALJ explained in addressing Mediterranean's arguments, the full analytical framework in *Cargo One* and *Anchor Shipping* shows that Commission will hear claims like those MCS made. *See* ALJ's Default Decision at 15-16; ALJ's MTD Order at 5-6.

24

*Cargo One* did say that the Commission would not hear claims that were "inherently" breach of contract claims, but the case recognized that the agency *will* hear claims that "also involve elements peculiar to the Shipping Act," as the Commission's later decision in *Anchor Shipping* emphasized. 2006 WL 2007808, at *9; *Cargo One*, 2000 WL 1648961, at *14. In *Anchor Shipping*, as the ALJ here explained, a claimant had actually obtained an arbitration award of several hundred thousand dollars for breach of a service contract before filing a complaint with the FMC seeking another million dollars for actions, including coercion of unjustified benefits in connection with the contract, in violation of the Shipping Act provisions currently at 46 U.S.C. § 41104(a)(5) and (9), which are also the basis for two of MCS's claims in this case. *See* 2006 WL 2007808, at *1-2, *10; ALJ's Default Decision at 15-16; ALJ's MTD Order at 5-6. Even so, *Anchor Shipping* concluded that this case context did "not outweigh the Commission's duty to protect the public by ensuring that service contracts are implemented in accordance with the Shipping Act," and the Commission allowed the matter to proceed.  2006 WL 2007808, at *9. The Commission emphasized in *Anchor Shipping* that under the Shipping Act the agency "regulates the content as well as the conduct" of such contracts, even though the contracts are between private parties, and even if the

"alleged Shipping Act violations are intertwined with breach of contract issues."

*Id*. at *9, *11.[1]

Mediterranean also asserts (Br. at 29-30) that the remedy of reparations,

comparable to contract damages, shows that this case is basically a contract case.

But the analysis does not turn on the available remedy, and if it did, it would

appear to foreclose FMC action in every complaint-initiated case involving a

service contract, which would be contrary to Congressional intent as expressed in

the statutory provisions on which MCS's claims rely. *See* ALJ's MTD Order at 4-

10.

In any event, MCS's complaint here does involve elements that are "peculiar

to the Shipping Act." *Anchor Shipping*, 2006 WL 2007808, at *9; *see* ALJ's MTD

Order at 3-10. Its factual allegations are directed at establishing the elements of

five alleged violations of the Act, and they include allegations that Mediterranean

engaged in unreasonable and discriminatory practices under statutory standards

---

[1]     Amicus World Shipping Council (WSC) faults the Commission and ALJ for
not specifically describing the analysis that emerged from *Cargo One* and *Anchor
Shipping* in terms of a "test" of whether a claim is "inherently" one for breach of
contract or one that also includes elements "peculiar to" the Shipping Act. Brief for
WSC as Amicus Curiae (Dec. 26, 2024) (Doc. No. 2091566) (Amicus Br.) at 7-8.
But the agency plainly employed the analysis from those two cases in substance,
including whether MCS's claims "extend beyond allegations of breach of the
service contract," in evaluating what the ALJ specifically described as
Mediterranean's arguments that the claims here were "inherently" contractual
ones. ALJ's MTD Order at 6; *see id*. at 3, 4, 9.

that are unique to the Act. *See*, *e.g.*, Am. Compl. at 2-4, 9-11, 15, 18-21 (alleging

specific unreasonable practices against other shippers and discriminatory practices

relative to other shippers); *see also* ALJ's MTD Order at 6 (MCS's claims "extend

beyond allegations of breach of the service contract to allege practices that violate

the Shipping Act, such as failing to maintain or provide booking reports,

systematically preferring higher-priced cargo, and coercing surcharges."). 

Mediterranean argues (Br. at 30-31) that MCS's claims are unlike those permitted

in some other service-contract cases, but the existence of a variety of permitted

claims does not show that MCS's claims here are foreclosed.[2]

Mediterranean's reliance (Br. at 28) on *Global Link Logistics, Inc. v. Hapag-

Lloyd AG*, FMC Docket No. 13-07, 2014 WL 5316345, at *20 (ALJ Apr. 17,

2014), is also misplaced. That ALJ decision found that certain claims were

inherently contractual ones because they focused closely on the meaning of a

service contract and whether it had been breached, including what Mediterranean

describes as "contract administration issues." Br. at 28; *see Global Link*, 2014 WL

5316345, at *20. That focus is very different from the distinct Shipping Act claims

MCS made here. Mediterranean is correct (Br. at 28) that among the claims

---

[2]    WSC argues more broadly (Amicus Br. at 9-12) that MCS's claims contain
no elements "peculiar" to the Shipping Act, but it does so by largely ignoring the
specific MCS allegations described above, as well as the explicit focus on activity
involving service contracts in several of the Shipping Act provisions on which
MCS bases its claims.

mentioned in the passage of *Global Link* that it cites was an "alleged failure to address a [minimum quantity commitment] shortfall." But Mediterranean fails to show that the inadequacy of that allegation to present a Shipping Act claim in that case would prevent the agency from asserting jurisdiction over the detailed allegations of violations of specific Shipping Act provisions that MCS makes here, which again go beyond Mediterranean's treatment of MCS itself. What *Global Link* does indicate is that, contrary to the hyperbolic claims of amicus WSC (Amicus Br. at 2-3, 12-16) about the Commission's overall enforcement practices, the Commission carefully evaluates each case based on its precedent, and it sometimes concludes that contract-related claims are beyond its jurisdiction.

A recent decision shows that the Commission properly applied the analytical framework in *Anchor Shipping* and *Cargo One* to this case. *See MSRF, Inc. v. HMM Co. Ltd.*, FMC Docket No. 22-20, 2023 WL 8242695, at *14-16 (ALJ Nov. 22, 2023). The ALJ in *MSRF* determined that the Commission had jurisdiction over a shipper's claims brought under four of the five provisions of the Shipping Act that MCS relies on here —based on a comparable factual scenario involving refusals to provide agreed cargo space leading to a need to pay higher rates on the spot market — because the shipper had raised allegations that were "peculiar to the Shipping Act." *Id*. at *15 (quoting *Cargo One*, 2000 WL 1648961, at *14); *see id*. at *1. In reaching that conclusion, the *MSRF* decision rejected the same basic claim

28

that Mediterranean makes here, that jurisdiction was foreclosed because the

shipper's allegations were essentially breach of contract claims subject to an

arbitration clause. *Id*. at 15-16.[3]

The Commission properly found that it had jurisdiction over MCS's claims.

**B.     The Federal Arbitration Act Does Not Foreclose Jurisdiction Over MCS's Claims Because That Act Does Not Constrain a Federal Agency's Enforcement of Its Own Statute**

Mediterranean also argues (Br. at 31-34) that MCS's claims are barred by

the Federal Arbitration Act, but as the Commission and ALJ explained, that claim

is contrary to the above precedent, including *Anchor Shipping*, which makes clear

that the agency's jurisdiction is not constrained by contractual agreements to

resolve disputes by arbitration. *See* January Order at 12-13; ALJ's Default

Decision at 15-16; ALJ's MTD Order at 6. Mediterranean cites no provision of the

Federal Arbitration Act at all, much less one that could be read to divest the

---

[3]     WSC claims (Amicus Br. at 12-16) that *MSRF* and another recent case were wrongly decided, purporting to detect a "trend" toward the FMC asserting jurisdiction over "all manner of garden-variety contract claims" and "hundreds of routine breach of contract actions" (*id*. at 12, 14). WSC's claims of a dangerous new trend based on three cases miss the mark, especially since *Anchor Shipping*, with the similar analysis described above, was a 2006 case. As for the claim that the agency has acted too assertively, the ALJ in *MSRF* ultimately concluded, in the same decision discussed above, that the claimant had *failed* to establish Shipping Act violations. *See* 2023 WL 8242695, at *1-2. The other recent case WSC cites remains pending before the ALJ. *See 20230930-dk-butterfly-1, Inc. F/k/a Bed Bath & Beyond Inc. v. Evergreen Line Joint Service Agreement*, FMC Docket No. 24-12, available at https://www2.fmc.gov/ReadingRoom/proceeding/24-12/.

Commission of jurisdiction to consider Shipping Act claims Congress has told it to adjudicate.

As discussed above, *Anchor Shipping* rejected the claim that an arbitration proceeding regarding contract claims would preclude pursuit of an FMC adjudication to address Shipping Act claims. In *Anchor Shipping*, a claimant had already obtained an arbitration award for breach of a service contract before filing an FMC complaint seeking further relief. *See* 2006 WL 2007808, at *1-2; ALJ's Default Decision at 15-16. *Anchor Shipping* determined that an arbitration clause did not outweigh the Commission's "duty to protect the public by ensuring that service contracts are implemented in accordance with the Shipping Act," 2006 WL 2007808, at *9, and as the ALJ noted, such a clause "does not divest the Commission of jurisdiction over alleged violations of the Shipping Act," ALJ's Default Decision at 16.

Mediterranean contends (Br. at 31-33) that even claims for violations of federal statutes must be arbitrated if they fall within the scope of a broad contract arbitration clause. But Mediterranean provides no support for such a clause barring the pursuit of a Shipping Act claim before the FMC, or for such a clause barring any federal regulatory agency from adjudicating a statutory claim within its jurisdiction for which for which no independent judicial remedy is available, as is the case here. Instead, Mediterranean relies almost entirely on cases from the

Second Circuit that address the arbitration of private antitrust claims. The one D.C. Circuit case Mediterranean cites (Br. at 33-34) not only supports the Commission's position here, but it was *actually relied on by Anchor Shipping* to support that decision's conclusion that arbitration clauses could not bar the Commission from deciding Shipping Act claims. *See Duke Power Co. v. FERC*, 864 F.2d 823 (D.C. Cir. 1989). As the Commission noted, in *Duke Power* the D.C. Circuit "reaffirmed its position that a mandatory arbitration clause does not negate a Federal agency's independent regulatory duty." *Anchor Shipping*, 2006 WL 2007808, at *8. Thus, the FERC "was not precluded from retaining its jurisdiction over determining whether a utility violated a filed rate schedule, despite the presence of an arbitration clause in the agreement among the utilities," which did not "preclude that agency from resolving disputes at the core of its enforcement mission." *Id*. (quoting *Duke Power*, 864 F.2d at 829); *see id*. at 8-9. And recently, the Commission relied on *Anchor Shipping* and *Duke Power* in again rejecting a claim that an arbitration clause in a service contract prevented the agency from adjudicating Shipping Act claims. *See MSRF*, 2023 WL 8242695, at *16.

## III.    The Commission Correctly Determined that MCS Had Sufficiently Stated Claims Under the Shipping Act

The Commission properly upheld the ALJ's determination that MCS's claims met the facial-plausibility standard under Federal Rule of Civil Procedure 12(b)(6). *See* January Order at 13-14; ALJ's MTD Order at 3-10; *Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009). The ALJ carefully examined each of MCS's five claims and correctly rejected Mediterranean's arguments that they were insufficient. *See* ALJ's MTD Order at 4-10.

First, Mediterranean does not specifically argue here that Counts I and II of the complaint fail to state a claim, just as it did not make such arguments to the Commission. *See* Br. at 34-35; January Order at 13. Therefore, any such challenges are now waived. *See Cornell*, 634 Fed. Appx. at 797.

Mediterranean does make a general argument (Br. at 34-35) which appears to be that MCS's overall case is implausible because it would be illogical for Mediterranean to try to coerce surcharges over any period of time, since the service contracts allowed it to terminate 30 days from MCS's refusal to accept a surcharge. Thus, Mediterranean says, it could have just terminated and sold the freed-up cargo space at higher prices on the spot market. This argument takes no account of factors such as carriers' long-term interest in retaining service-contract customers like MCS. But in any case, Mediterranean provides no support for the idea that claim sufficiency can depend on whether a respondent's alleged unlawful conduct seems to be the most savvy or logical means to a particular economic end.

As to Counts III and IV, which essentially claim unjustified discrimination and prejudice under 46 U.S.C. §§ 41104(a)(5) and 41104(a)(9), the Commission properly upheld the ALJ's determination that the complaint plausibly alleged

prohibited disparate treatment relative to other shippers. *See* January Order at 13-14; ALJ's MTD Order at 8-9. Mediterranean renews and relies heavily (Br. at 35-38) on its claim below that the provisions at 46 U.S.C. §§ 41104(a)(5) and 41104(a)(9) only reach discrimination between different *ports*, rather than discrimination between *shippers*, as MCS alleges. But that argument fares no better here. Mediterranean notes (Br. at 35) that those two provisions bar certain types of discrimination by carriers under service contracts with shippers "with respect to any port." Mediterranean argues (Br. at 35-36) that this language does not simply describe the breadth of the statute's protection, but that it limits the type of banned discrimination under service contracts to that which occurs *between ports*, so that the Shipping Act only bars discrimination between shippers with respect to service provided under (non-contractual) *tariffs*. In support of that view, Mediterranean cites the lack of the above ports language in the comparable tariff-focused provisions at 46 U.S.C. §§ 41104(a)(4) and 41104(a)(8).

As the ALJ noted, however, 46 U.S.C. §§ 41104(a)(5) and 41104(a)(9) clearly do protect shippers; only shippers can make service contracts with carriers under the Shipping Act. *See* ALJ's MTD Order at 9; 46 U.S.C. § 40102(21). And the only real case support Mediterranean provides for its novel theory about the limited reach of those two provisions is *Global Link*. *See* Br. at 36. But the portion of *Global Link* that Mediterranean quotes merely says that the Act permits carriers

33

to "charge different rates to similarly situated shippers in service contracts." 2014 WL 5316345, at *2. By contrast, 46 U.S.C. § 41104(a)(5) bars carriers from "any unjust or unfairly discriminatory practice" in the matter of rates, and section 41104(a)(9) bars carriers from giving "any unreasonable preference or advantage," standards that clearly involve more nuanced inquiries than simply whether rates differ. *Global Link* does not purport to immunize all discriminatory rate activity as between shippers in service contracts, nor does it support Mediterranean's port-discrimination argument. Mediterranean also cites *Global Link*'s discussion of the legislative and regulatory history of the Ocean Shipping Reform Act of 1998, Pub. L. 105-258, 112 Stat. 1902 (Oct. 14, 1998) (OSRA 1998). *See* Br. at 36-37 (citing 2014 WL 5316345, at *59-63, apparently meaning *21-23). But that material simply supports the idea that carriers can lawfully charge shippers different rates. It does not say that all rate discrimination between shippers is lawful despite the plain language of the two Shipping Act provisions at issue, nor does it say anything about ports.

Mediterranean also relies (Br. at 36) on a passage from a Report issued by the Senate's Committee on Commerce, Science, and Transportation well before the passage of OSRA 1998 suggesting that committee intended certain Shipping Act prohibitions to apply to acts targeted "at a locality" rather than at a particular shipper. *See* S. Rep. No. 105-61, 105th Cong., 1st Sess., at 28 (July 31, 1997).

However, a closer look at that report reveals that it relates to a prior version of the bill that became OSRA 1998 more than a year later, that the text of the two enacted provisions at issue here was very different in that superseded 1997 version of the bill, and that the quoted passage relates to nations or regions ("localities") rather than ports in any case. *See id*. at 28, 68-70 (*compare* text of proposed sections 10(b)(5) and 10(b)(9) in 1997 bill *with* 46 U.S.C. §§ 41104(a)(5) and 41104(a)(9)). Whatever the import of that 1997 report passage, it provides no guidance here.

Finally, the ALJ found that Count V had stated a refusal-to-deal claim under 46 U.S.C. § 41104(a)(10) by alleging failures to provide vessel space at agreed rates. *See* January Order at 14; ALJ's MTD Order at 9-10. In particular, the ALJ determined that MCS's allegations of Mediterranean's delayed responses and failures to book its shipments stated such a claim. *See* ALJ's MTD Order at 10 (citing *MAVL Capital Inc. v. Marine Transp. Logistics, Inc*., FMC Docket No. 16-16, 2020 WL 13512925, at *8-9 (FMC Oct. 29, 2020)). Mediterranean argues (Br. at 39-40) that this again amounts to a mere breach of contract claim, and that stating a claim under section 41104(a)(10) requires more than just a refusal. But as the ALJ explained, MCS did allege that Mediterranean's refusals were "unreasonable," "systematic," and part of a "scheme to withhold service" unless MCS agreed to pay surcharges. *See* ALJ's MTD Order at 10 (quoting Am. Compl. at 16-17, 23). In that situation, these allegations were sufficient to state a claim.

**IV.    It Was Within the Commission's Discretion to Order Default Under 46 C.F.R. § 502.150(b) for Mediterranean's Repeated Failures to Comply with the ALJ's Discovery Orders on the Basis of Unfounded Claims About Foreign Law**

The Commission's entry of default against Mediterranean under the agency's rule regarding failure to comply with discovery orders, which specifically authorizes a default sanction, was within its discretion. *See* January Order at 14-24; 46 C.F.R. § 502.150(b). Mediterranean had multiple opportunities to comply with the discovery orders at issue, but it failed to do so, persisting in its incorrect, unsupported claims about Swiss law, even after the ALJ tried to accommodate Mediterranean's concerns by authorizing a request to a Swiss court that was ultimately rejected. January Order at 14-15. In the end, as the agency found, Mediterranean failed to identify specific information that it could not produce or to show that any foreign statute actually barred the production at issue. *See id*. at 14-16, 20-22; July Order at 21-22; ALJ's Default Decision at 9-12. And without the outstanding discovery, as the ALJ reasonably concluded, the case was at an impasse. *See* January Order at 15.

As the Commission explained, under the analogous Federal Rule 37(b)(2), whether default is appropriate as a discovery sanction entails showing that three basic conditions are met: (1) a party has failed to obey an order to provide discovery; (2) *any one* of the three factors described in *Webb*, 146 F.3d at 971, is present, namely prejudice to the other party, prejudice to the judicial system, or a

36

need to deter future misconduct; and (3) lesser sanctions are inadequate to deter and punish the misconduct. *See* January Order at 16; *SEC v. China Infrastructure Inv. Corp.*, 189 F.Supp.3d 118, 129–32 (D.D.C. 2016). Mediterranean argues (Br. at 44-45) that default is a disfavored remedy that should only be imposed as a last resort, and both the Commission and the ALJ acknowledged that was the case, but the remedy is still reviewed for abuse of discretion. *See* January Order at 10, 14 (citing *Reliable Limousine*, 776 F.3d at 4). And as explained below, it was not an abuse of discretion to find that the three required conditions were present here. Mediterranean also argues (Br. at 45) that *Reliable Limousine* indicated default should be reserved for cases involving discovery misconduct such as that which reflects willful disobedience with no plausible excuse, *see* 776 F.3d at 6. But that is exactly what the Commission permissibly determined was present in this case.

### A.    Mediterranean Failed to Obey Multiple Discovery Orders Based on Erroneous and Unsupported Claims That Swiss Law Prevented It from Complying

The Commission amply demonstrated that Mediterranean failed to obey discovery orders without justification. *See* January Order at 16-18, 20-22. Specifically, Mediterranean did not provide discovery as directed by the ALJ's First Order of December 2021, the ALJ's Second Order of July 2022, or the ALJ's Third Order of September 2022, insofar as that last Order explicitly offered

Mediterranean the option to avoid default by simply providing the outstanding discovery. *Id*. at 16-17.

Mediterranean claims (Br. at 10-19, 45-46, 48-53) that default was inappropriate because Swiss Criminal Code Article 271, which applies to information transferred from Switzerland on behalf of a foreign state, prevented it from complying, but that claim was erroneous, unsupported, and correctly rejected by the ALJ. *See* January Order at 4, 14-16, 20-22. As a preliminary matter, although Swiss Criminal Code Article 273 (which applies to trade secrets) was also mentioned in some materials Mediterranean submitted below, and amicus WSC claims (Amicus Br. at 17) that Mediterranean has relied on it here, in fact Mediterranean never discusses or even cites Article 273 in its opening brief, and so any Article 273 claim is now waived. *See Cornell*, 634 Fed. Appx. at 797. Nevertheless, because the two provisions are sometimes discussed together, the Commission includes Article 273 in its discussion below.

First, Mediterranean's claims that Article 271 prevented it from complying with the ALJ's orders were factually unsupported. At the time the ALJ finally decided to impose default, the ALJ stressed that Mediterranean had still not identified any documents or witnesses it alleged were protected because they were located in Switzerland. *See* January Order at 20; Default Decision at 21. The ALJ therefore found that it was "not clear whether the refusal to provide discovery is in

fact because information is located in Switzerland or whether [Mediterranean] is refusing to provide the discovery because it disagrees with the findings related to the Commission's jurisdiction and scope of these proceedings." *Id*. Indeed, Mediterranean has a large U.S. presence, with nine offices, 21 ports, 31 terminals, and more than 1,000 employees here. *See* MSC, United States, available at https://www.msc.com/en/local-information/america/united-states (last visited Jan. 16, 2025). Even now, Mediterranean's descriptions of what responsive documents are supposedly protected and unavailable in the U.S. remain untenably vague. *See*, *e.g.*, Br. at 10 (the discovery order "compelled a Swiss company to produce business records from Switzerland"); *id*. at 21-22 (Mediterranean is a "Swiss company" that "maintained its business records in Switzerland").

This failure alone dooms Mediterranean's claim that Swiss law excused its noncompliance with the ALJ's discovery orders. As the ALJ explained in a lengthy analysis drawing on the ALJ's Second Order, a party seeking to pursue discovery through the Hague Evidence Convention, rather than through ordinary civil discovery, bears the burden of showing that the procedures are "necessary," *Luminati Networks v. Code200*, Civ. No. 19-396, 2021 WL 2819457, at *2 (E.D. Tex. 2021), and that a specific foreign law "actually bars the production or testimony at issue," by providing "information of sufficient particularity and specificity" to enable the court to make that determination, *Alfadda v. Fenn*, 149

F.R.D. 28, 34 (S.D.N.Y. 1993). *See* ALJ's Default Decision at 9-10. Mediterranean did not do so.

Even if Mediterranean had provided an adequate factual basis for its claim, federal courts have repeatedly rejected claims that Swiss Criminal Code Articles 271 and 273 bar the production of information where, as here, there is no risk of criminal sanctions. *See* ALJ's Default Decision at 9-12. The ALJ considered Mediterranean's specific claims under Swiss law, including the assertions of its Swiss counsel, but ultimately determined that its reliance on the Swiss Criminal Code in this context was groundless and did not justify its failure to comply with the FMC discovery orders. *Id.* The ALJ relied on a recent case in which a federal district court had "declined to pursue discovery under the Hague Convention or to issue a letter of request, finding that 'although Article 271 might be implicated if the responding party was threatened with criminal sanctions for failure to comply with a discovery order, the statute does not preclude voluntary disclosure in compliance with a civil discovery order if the consequence for noncompliance is procedural only.'" *Id*. at 10 (quoting *Belparts Grp., N.V. v. Belimo Automation AG*, Civ. No. 21-334, 2022 WL 1223018, at *5 (D. Ct. 2022)). The *Belparts* court relied on a number of prior decisions reaching the same conclusion as to Articles 271 and 273, even though those decisions were based on what the court described as "more robust presentations" of need. *Belparts*, 2022 WL 1223018, at *5 (citing

*EFG Bank v. AXA Equitable Life Ins. Co.*, Civ. No. 17-4767, 2018 WL 1918627
(S.D.N.Y. 2018) (Article 271); *Microsoft Corp. v. Weidmann Elec. Tech. Inc.*, Civ.
No. 15-153, 2016 WL 7165949, at *12 (D. Vt. 2016) (Article 271); *Alfadda*, 149
F.R.D. 28 (Article 273)); *see id*. at *3-5. The *Belparts* court and the ALJ here both
emphasized one passage from the *EFG Bank* case:

> Conspicuously, EFG fails to identify a single case in which a party was
> found to have violated Article 271 by disclosing its own documents absent a
> court order threatening criminal sanctions. That is presumably because no
> such case exists. Indeed, EFG's own expert on Swiss law concedes that no
> court has held that production by a party in the circumstances presented here
> violates Article 271.

ALJ's Default Decision at 10 (quoting *Belparts*, 2022 WL 1223018, at *5, and
*EFG Bank*, 2018 WL 1918627, at *2); *see EFG Bank*, 2018 WL 1918627, at *1-3;
*see also Casimir-Chery v. JTI (US) Holding Inc.*, Civ. No. 20-62568, 2021 WL
2290680, at *1 (S.D. Fla. 2021) (Article 271 does not preclude discovery where a
party would not be subject to criminal sanctions for non-compliance); *Randall v.
Offplan Millionaire AG*, Civ. No. 17-2103, 2019 WL 1003167, at *3 (M.D. Fla.
2019) (party failed to meet its burden to show that Articles 271 or 273 barred
production of information where, among other things, there was no potential for
criminal sanctions).

Summing up, the ALJ emphasized that there is no possibility of criminal
penalties in this administrative matter, and in any case a Swiss court had reviewed
the request for documents at issue and determined that Hague Evidence

41

Convention procedures were unnecessary. *See* ALJ's Default Decision at 11-12. The ALJ correctly concluded that Mediterranean had failed to show that such procedures were needed. *Id*.

Nevertheless, Mediterranean continues to claim vaguely that Hague Convention procedures are "available" and that that discovery route is "open." Br. at 17, 21, 23, 45. And it relies on a 1958 Supreme Court case standing for the unremarkable proposition that actual "fear of criminal prosecution" under a blocking statute is a basis not to produce discovery. Br. at 5, 46 (citing *Société Internationale pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958)).[4] But there is demonstrably no basis for such fear here, despite the opinions Mediterranean has provided from Switzerland, and Mediterranean's brief does not discuss any of the precedent from the ALJ's Default Decision showing that that route is unnecessary. In addition, Mediterranean has still failed to provide a single example of a U.S. court accepting the kind of claim it makes here about the reach of these provisions of Swiss

---

[4]    Amicus WSC also relies heavily (Amicus Brief at 16-19) on the *Société Internationale* case as a reason default was improper here, but the case is inapposite, to say the least. It was an action by a Swiss holding company against U.S. government officials to recover property allegedly wrongfully seized during World War II, and the documents plaintiff failed to produce were *banking records* that had been "confiscated" by the Swiss government on the grounds that their disclosure might violate a statute regarding banking secrecy and Article 273, which the Court described as "prohibiting economic espionage." 357 U.S. at 200-01.

criminal law, or of a Swiss prosecution against an entity for providing information in connection with a civil or administrative case like this one. Indeed, Mediterranean does not even explain to this Court what Article 271 actually says, perhaps because doing so would show how farfetched the potential application of the statute here really is. Mediterranean's failure to comply with discovery orders on the basis of Swiss law was plainly unjustified.

### B.    The Commission Permissibly Found that All Three *Webb* Factors Were Present in This Case

The Commission permissibly upheld the ALJ's determination that all three *Webb* factors were present here, although *only one* was needed to support the entry of default. *See* January Order at 17-22; ALJ's Default Decision at 17-22. Given that standard and Mediterranean's conduct, there was no abuse of discretion.

As to the *first Webb* factor, prejudice to MCS, the Commission noted that Mediterranean had failed to produce additional documents as ordered in more than a dozen categories, as laid out in the ALJ's First Order in December 2021. *See* January Order at 17-19. The ALJ also found that the outstanding written discovery would likely have led to more discovery, such as depositions, and the lack of that discovery prejudiced MCS. *Id*. at 17. Finally, the ALJ emphasized that Mediterranean's lack of compliance had "significantly delayed" the proceeding, causing additional prejudice to MCS, since evidence becomes harder to develop as time passes. *Id*.

Mediterranean argues broadly (Br. at 47-50) that the agency's analysis of the outstanding discovery was not specific enough to justify a default sanction, that Mediterranean had already produced a lot of responsive material that related to MCS itself, and that delay that merely prolonged litigation was insufficient, but these claims are unavailing. The ALJ did conduct an exhaustive review of all the specific categories of outstanding discovery that she had ordered produced but Mediterranean never provided. *See* January Order at 19; ALJ's Default Decision at 4-13. In addition, the claims MCS made under the Shipping Act, as well as Mediterranean's defenses, required evaluation of practices *beyond* the carrier's relations with MCS itself. *See* January Order at 18; *see also*, *e.g.*, ALJ's Default Decision at 6 (ordering production of information relevant to certain alleged conduct "occurring on a normal, customary, and continuous basis," 46 C.F.R. § 545.4, as required to establish a violation of 46 U.S.C. § 41102(c) (Count I), requiring carriers to observe "just and reasonable" practices). Finally, the production of *some* materials in response to discovery requests does not excuse the repeated failure to comply with orders to produce other materials. Mediterranean also argues (Br. at 49) that MCS's own past support for the use of the consultation procedure at 46 U.S.C. § 41108(c)(2) undermines any claim of prejudice, but such support would not negate the ALJ's independent findings of prejudice. Finally, the delay caused by Mediterranean's failures to comply did not merely prolong the

44

litigation; in light of the need for the missing information to evaluate MCS's claims, it brought the case to an "impasse." ALJ's Default Decision at 17.

As to the *second Webb* factor, the Commission permissibly upheld the ALJ's evaluation of the harm to the Commission's adjudicatory system. *See* January Order at 19-20. The ALJ described the burden caused by Mediterranean's continuing failure to provide *any* further discovery in the many categories of information at issue. *Id*. at 19. The ALJ noted that agencies must protect their integrity and the orderly conduct of proceedings. *Id*. In this regard, the ALJ listed many case deadlines that had been missed because of Mediterranean's conduct, which had disrupted FMC business and burdened the FMC's docket, requiring multiple revisions of the schedule as well as harming MCS, the Commission, and the public. *Id*. Mediterranean argues primarily (Br. at 51) that its conduct was permissible because of its reliance on the Swiss blocking statute, but as explained above that reliance was unjustified. And the company's persistent failure to provide the discovery first ordered in December 2021 played the dominant role in the case after that point, diverting FMC resources and undermining the authority of the agency's adjudicatory system. January Order at 20.

Finally, as to the *third Webb* factor, deterrence, the Commission was within its discretion to uphold the ALJ's determination. *See* January Order at 20-22. The ALJ correctly emphasized that the most severe sanctions must be available to deter

45

bad conduct by those who might be tempted to engage in similar activity. *Id*. at 20. The ALJ reasonably found Mediterranean's misconduct to be willful and deliberate, primarily for its knowing failure to comply with the ALJ's orders, even after repeated warnings that such conduct was sanctionable. *Id*. at 20-21.

Mediterranean again relies heavily (Br. at 52-53) on its view that the Swiss blocking statute prevented it from complying, but again that view is incorrect, as many federal courts have recently held. Mediterranean may have disagreed with those courts, and it could have sought to appeal the ALJ's discovery orders to the Commission. *See* 46 C.F.R. § 502.221. But it was not free to simply disregard the orders and continue submitting material it believed supported its position. *See* January Order at 21.

In this situation, the ALJ correctly identified a substantial risk of encouraging the use of similarly unsupported and erroneous claims in future matters. *See* January Order at 22; *see also Marine Transp. Logistics, Inc. v. CMA CGM, S.A.*, FMC Docket No. 22-23, 2023 WL 7328874, at *3-8 (FMC Oct. 30, 2023) (rejecting a similar claim that a French statute barred a carrier from complying with an FMC discovery order). Mediterranean refers (Br. at 53) to the "competing comity concerns" discussed in *Société Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 546 (1987). But the factors that case considered to resolve disputes about a request to use Hague

Evidence Convention procedures actually support the Commission's action here,

particularly the interests of the United States, the importance of the outstanding

discovery, the connection of the materials at issue to the United States, and the

apparent lack of such a connection to the foreign nation. *See id*. at 543-44; *Marine*

*Transport*, 2023 WL 7328874, at \*3-4 (rejecting a similar request with a detailed

analysis of *Aerospatiale* factors). Subjecting ordinary FMC discovery proceedings

about U.S. shipping activities to foreign control simply because a party asserts that

unspecified information exists overseas poses a significant threat to the fair and

timely resolution of cases before the Commission. *See* January Order at 22.

### C.    The Commission Permissibly Found That Lesser Sanctions Would Be Inadequate

With regard to the third condition for the entry of default under Federal Rule

37(b)(2), the inadequacy of lesser sanctions, the Commission permissibly upheld

the ALJ's determination that default was necessary here. *See* January Order at 22-

23. First, the ALJ had stressed that the lack of the range of discovery ordered had

significantly limited MCS's ability to make its case. *Id*. at 22. Accordingly, she

continued, "a lesser sanction such as directing that certain matters be taken as

established, prohibiting certain claims or defenses, or striking pleadings would not

be effective to remedy the failure to provide such broad discovery." *Id*. In addition,

as discussed above, failing to impose a meaningful sanction in the face of

Mediterranean's conduct would not adequately deter such conduct. Finally, the

ALJ emphasized the multiple warnings she had given Mediterranean that sanctions including default were possible, which indicated that lesser measures were having no effect. *Id*. at 22-23. Mediterranean again claims (Br. at 50) that the Commission did not evaluate the importance of the outstanding discovery in sufficient detail, but the ALJ did just that and concluded that its absence had effectively brought the case to a standstill. The entry of default was not an abuse of discretion.

### D. The Commission Permissibly Found that 46 U.S.C. § 41108(c)(2) Did Not Preclude the Entry of Default Here

The Commission properly determined that 46 U.S.C. § 41108(c)(2) did not bar the entry of default in this case. *See* January Order at 23-24; July Order at 22-24. Section 41108 describes potentially severe tariff-related penalties that are available for certain violations of the Shipping Act by common carriers. Section 41108(c) covers failures to provide information: section 41108(c)(1) specifies potential penalties related to tariff suspension and vessel clearance, and section 41108(c)(2) states that if a carrier, in defending a failure to comply with a discovery order, "alleges that information or documents located in a foreign country cannot be produced because of the laws of that country," the FMC "shall immediately notify the Secretary of State," who "shall promptly consult" with the foreign government "for the purpose of assisting the Commission" in obtaining the information. As discussed below, however, this procedure was not required in the current case.

48

Mediterranean argues (Br. at 40) that notification and consultation under section 41108(c)(2) was the "proper" course here, but it also contends (*id*. at 41-44) that the FMC had no choice but to pursue the procedure because the relevant statutory language requires it. That is incorrect. In fact, the procedure was not required in this complaint-based, reparations-only matter. *See* July Order at 23. As the Commission explained in its July Order, Mediterranean failed to show that section 41108(c)(2) applies outside the context of the potentially severe tariff-suspension and vessel-clearance penalties available under section 41108(c)(1), neither of which was involved in this case. *See id*.

In gathering information, the Commission has different options under its Rules of Practice and Procedure. *See* 46 U.S.C. § 41303(a); 46 C.F.R., Part 502. If a party fails to comply with a discovery order, the Commission may choose from the remedies detailed at 46 C.F.R. § 502.150(b); impose sanctions for "undue delay" under 46 U.S.C. § 41302(d); or ask the Attorney General to enforce the order in a U.S. district court, 46 U.S.C. § 41308. In this case the Commission, after providing Mediterranean with multiple opportunities to comply, elected to impose a default sanction under 46 C.F.R. §502.150(b) and 46 U.S.C. § 41302(d) and to award reparations, as MCS had requested. *See* 46 U.S.C. § 41305.

But the agency never suggested that it would seek to pursue the *tariff-suspension or vessel-clearance penalties* available under section 41108(c)(1) in

this complaint-based reparations case. Section 41108(c)(2) is not a free-floating

procedure that may be invoked in any and all contexts. Section 41108(c)(1) calls

for the agency to make a "find[ing]," "after notice and opportunity for a hearing,"

that a carrier has failed to provide information as required before it may impose the

specified tariff-suspension or vessel-clearance penalties. Of course, such penalties

were never at issue here. Indeed, the remedies currently available under section

41108(b) where a tariff has been suspended include civil penalties of up to

$149,887 *per shipment. See* 46 U.S.C. § 40102(22) ("shipment" means all "cargo

carried under the terms of a single bill of lading"); 46 C.F.R. § 506.4 (inflation

adjustments). In addition, penalties imposed under section 41108 must be

submitted for expedited Presidential review before they become effective. 46

U.S.C. § 41108(e). The potential for penalties of that magnitude may well call for

diplomatic resolution under section 41108(c)(2), but such penalties were never

pursued in this case.

A House report preceding the passage of the Shipping Act of 1984, in which

the provision that is now section 41108 was enacted, strongly supports the above

interpretation. That report by the Committee on Merchant Marine and Fisheries

discussed a substantially identical version of the notification provision only in the

midst of its discussion of tariff-suspension penalties, and it did so in a short

paragraph whose *only* other subject was the Presidential review of such penalties

50

under what is now section 40118(e). *See* H.R. Rep. 98-53(I), 1983 WL 25382, at

*37-38 (Apr. 12, 1983) (discussing Section 13 of H.R. 1878, 98th Cong., 1st Sess.

(Mar. 3, 1983), draft bill accompanying H.R. Rep. 98-53(I), *see* pp. 42-43, which

bill preceded the Shipping Act of 1984, Pub. L. 98-237, 98 Stat. 67 (Mar. 20,

1984)). This indicates that section 41108(c)(2) was intended to apply to matters

with potentially severe tariff-related penalties, not an ordinary reparations case like

this one.

Mediterranean argues (Br. at 40) that MCS itself has at times described the

section 41108(c)(2) procedure as mandatory in the current situation. But that

would not control the Commission's independent determination as to whether the

statute compels the use of that procedure here. *See* January Order at 24.

Even if section 41108(c)(2) could apply in a reparations case like this one,

the Commission permissibly interpreted the provision to require at least some more

specific showing than Mediterranean made here that information sought actually

was located exclusively outside the U.S. and so could not be produced because of

foreign laws, in order to deter the obvious potential for abuse of the adjudicative

process and waste of government resources. *See* January Order at 23-24; July

Order at 23-24; *Marine Transport*, 2023 WL 7328874, at *7 (rejecting claim that

section 41108(c)(2) procedure was required where carrier failed to make such a

showing); *Loper Bright*, 144 S. Ct. at 2262, 2273 (the interpretation of the agency

charged with implementing a statute may inform the inquiry of a court deciding the scope of the agency's authority under it). It is true that the statutory term "alleges" can encompass a broad range of claims, but to interpret section 41108(c)(2) to permit a carrier to invoke its extraordinary procedure even in a case where, for example, the carrier simply had copies of the information sought in the foreign nation would produce an absurd result. The Commission's interpretation was consistent with the showing of need that federal courts require when parties seek to use the procedures of the Hague Evidence Convention. *See* ALJ's Default Decision at 9-10. In this case, Mediterranean failed to show that any responsive information actually was located exclusively outside the U.S. and so could not be produced because of Swiss laws.[5]

In any case, as the Commission noted, it would frustrate the purpose of section 41108(c)(2) and the Shipping Act to permit a carrier like Mediterranean to rely on the notification provision to refuse to produce documents where it failed to make any showing of need. *See* July Order at 23-24. Section 41108(c)(2) was designed to "assist[] the Commission" in obtaining evidence, consistent with

---

[5]    Amicus WSC claims (Amicus Br. at 21-23) that the Commission has created a burdensome evidentiary requirement that will invite protracted legal battles, but that is more hyperbole. Again, the Commission has not required the submission of any particular quantum of evidence, but simply indicated that a carrier must make some more specific showing than Mediterranean did here that responsive information can't be produced because it is located only in a foreign nation.

principles of international comity. But it was not intended to provide major ocean carriers — whose ranks are now completely dominated by foreign companies who might invoke the provision, *see* Alphaliner Top 100, available at

https://alphaliner.axsmarine.com/PublicTop100/ (last visited Jan. 15, 2025) — with an easy way to evade administrative discovery obligations.

Finally, any failure of notification here would be at most harmless error. *See* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error"). Even if the Commission had notified the Secretary of State about this matter and the State Department had "consult[ed]" with the Swiss government, there is no basis to believe the Department would have devoted the resources needed to pursue a complex international negotiation when it became evident that such a burdensome procedure was legally unnecessary and ordinary FMC discovery would suffice.

**V.    It Was Within the Commission' Discretion to Order Default Under 46 U.S.C. § 41302(d) for the Undue Delay Caused by Mediterranean's Repeated Failures to Comply with the ALJ's Discovery Orders**

The Commission permissibly entered default on the alternative ground that Mediterranean's failure to comply with discovery orders had caused undue delay under 46 U.S.C. § 41302(d). *See* July Order at 19-25. First, the Commission correctly found that 46 U.S.C. § 41302(d) applies to private-party complaint proceedings like this one. July Order at 19-20. Section 41302(d) provides that, where the Commission is "unable to issue a final decision because of undue delay

caused by a party" to a proceeding "within the period for final decision under" section 41302(c), the Commission "may impose sanctions, including issuing a decision adverse to the delaying party." And section 41302(c) states that it applies to proceedings under both sections 41302 (Investigations) *and* 41301 (Complaints), the section under which this proceeding arose. *See id*. In this case, Mediterranean's failures to comply with discovery orders appeared to be at least the primary cause of two extensions of the final decision deadline in FMC No. 21-05, setting the date back by about a year. *Id*. at 20-21.

Mediterranean makes a cursory argument (Br. at 53-54) that there is no evidence section 41302(d) was intended to provide an independent basis for the entry of default in situations like this one, but it fails to engage with the above points, not even arguing specifically that the delay here was not "undue." The Commission did not abuse its discretion in imposing default on this ground.

\*   \*   \*   \*   \*   \*

54

## CONCLUSION

Because Mediterranean has failed to show that the Commission's orders were impermissible, the petition should be denied.

Respectfully submitted,

/s/ *Harry J. Summers*

PHILLIP "CHRIS" HUGHEY
General Counsel
HARRY J. SUMMERS
Attorney-Advisor
FEDERAL MARITIME COMMISSION
800 N. CAPITOL ST., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
phughey@fmc.gov
January 17, 2025                     hsummers@fmc.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation and type-style requirements of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e)(2)(B), because it contains 12,965 words, excluding the parts of the brief that are excluded by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1). The brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it was prepared using Microsoft Word 14-point Times New Roman font.

/s/ *Harry J. Summers*
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. Capitol St., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
hsummers@fmc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of January, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF System.

/s/ Harry J. Summers
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. Capitol St., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
hsummers@fmc.gov