[ORAL ARGUMENT NOT YET SCHEDULED]
**No. 24-1007, consolidated with No. 24-1262**

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————

MSC MEDITERRANEAN SHIPPING COMPANY S.A.,
*Petitioner,*

v.

FEDERAL MARITIME COMMISSION AND UNITED STATES OF AMERICA,
*Respondents,*

MCS INDUSTRIES, INC.,
*Intervenor.*

———————

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL MARITIME COMMISSION

---

**BRIEF FOR INTERVENOR MCS INDUSTRIES, INC.**

---

Matthew J. Reynolds
Huth Reynolds LLP
7800 Grampian Court
Chesterfield, VA 23838
(646) 872-9353
reynolds@huthreynolds.com

*Counsel for MCS Industries, Inc.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1) of this Court, intervenor MCS Industries, Inc. submits its Certificate as to Parties, Rulings, and Related Cases.

(A)     **Parties and Amici.** The parties to the underlying proceeding before the Federal Maritime Commission were MCS Industries, Inc., as Complainant, and MSC Mediterranean Shipping Company S.A. and COSCO Shipping Lines Co., Ltd., as Respondents. The parties to this proceeding are MSC Mediterranean Shipping Company S.A., as Petitioner, the Federal Maritime Commission and the United States of America, as Respondents, and MCS Industries, Inc., as Intervenor. The World Shipping Council has filed an *amicus curiae* brief.

(B)     **Rulings Under Review.** The rulings under review are two unanimous Orders of the Federal Maritime Commission in *MCS Industries, Inc. v. MSC Mediterranean Shipping Co. S.A.*, FMC Dkt. No. 21-05: specifically, an Order Partially Affirming Initial Decision on Default and Remanding for Further Proceedings, 2024 WL 95383 (FMC Jan. 3, 2024) (JA___), and an Order Affirming Initial Decision on Remand, 2024 WL 3514613 (FMC July 16, 2024) (JA___).

(C)     **Related Cases.** MCS Industries, Inc. is unaware of any related cases.

Dated:  January 24, 2025

 /s/ Matthew J. Reynolds
Matthew J. Reynolds

*Counsel for MCS Industries, Inc.*

## INTERVENOR'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rules 26.1 and 28(a)(1)(A) of this Court, intervenor MCS Industries, Inc. states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

Pursuant to the requirements of Circuit Rule 26.1(b) of this Court, MCS Industries, Inc. states that it is a Pennsylvania corporation and a leading importer and supplier of picture frames, poster frames, framed mirrors, and other wall décor to retailers throughout the United States and Canada.

Dated:  January 24, 2025

  /s/ Matthew J. Reynolds
Matthew J. Reynolds

*Counsel for MCS Industries, Inc.*

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT.......................................................................1

STATUTES AND RULES .........................................................................3

ARGUMENT ...........................................................................................3

   A.    Neither 46 U.S.C. § 40502(f) Nor the Federal Arbitration Act Precludes MCS Industries' Shipping Act Claims or Deprives the Federal Maritime Commission of Jurisdiction to Adjudicate Those Claims and Award Administrative Remedies.........................................................................3

     1.    MSC's Reliance on 46 U.S.C. § 40502(f) Willfully Misconstrues the Statutory Nature of MCS Industries' Causes of Action and the Administrative Remedies It Sought from the Commission.........................................................3

     2.    MSC's Interpretation of 46 U.S.C. § 40502(f) Cannot Be Reconciled with the Structure and Congressional Intent of the Shipping Act. .............................6

     3.    The Federal Arbitration Act Does Not Deprive MCS Industries of Its Right to Seek Statutory Remedies from the Commission or the Commission of Its Exclusive Jurisdiction to Provide Such Remedies. ...........................................11

   B.    MCS Industries' Causes of Action Stated Valid Shipping Act Claims..........17

   C.    MSC Cannot Leverage the Very Procedural Steps That It Requested to Excuse Its Own Baseless Refusal to Comply with Valid Orders. .......................18

     1.    MSC Could Have Voluntarily Remedied Its Discovery Deficiencies, as Demonstrated by Its Conduct in Another FMC Proceeding.............................18

     2.    MSC's Discovery Refusals Extended Beyond the Specific Discovery Requests Implicated in the Order Granting Motion to Compel, Belying Its Swiss Law Excuse for Its Failures and Delays.................................................20

     3.    MSC's Arguments on Appeal Concerning 46 U.S.C. § 41108(c)(2) Are Contradicted by MSC's Arguments Below that Hague Convention Procedures Were "Exclusive" and "Necessary"...............................................................25

     4.    MSC Mischaracterizes the Swiss Authorities' Responses to Its Requests, Which Do Nothing to Validate Its Swiss Law Excuse. .....................................31

   D.    MSC's Bait-and-Switches on Arbitration, Discovery, and the Hague Convention Violate MCS Industries' Entitlement to Due Process. ......................32

E.   MSC's Discovery Refusals and Delays Were Extensive and Prejudicial to MCS Industries, Justifying the Sanction that the Commission Imposed. ............33

CONCLUSION ........................................................................................................37

# TABLE OF AUTHORITIES

## Cases

*A/S Ivarans Rederi v. United States*, 895 F.2d 1441 (D.C. Cir. 1990)............. 13, 14

*Anchor Shipping Co. v. Aliança Navegação E Logística Ltda.*, FMC Dkt. No. 02-04, 2006 WL 2007808 (FMC 2006) ....................................15

*Bakerly, LLC, Complainant v. Seafrigo USA, Inc., Respondent*, FMC Dkt. No. 22-17, 2023 WL 1963459 (FMC Feb. 7, 2023) ......................................16

*Baltic Auto Shipping, Inc. v. Hitrinov*, FMC Dkt. No. 14-16, 2015 WL 14094543 (FMC ALJ Feb. 2, 2015)..............................................................7

*Cargo One, Inc. v. Cosco Container Lines Co. Ltd.*, FMC Dkt. No. 99-24, 2000 WL 1648961 (FMC 2000) ........................................................8

*Carlstar Grp. LLC f/k/a Carlisle Transportation Products, Inc. v. Uti, United States, Inc.*, FMC Dkt. No. 17-08, 2018 WL 2356145, 1 F.M.C.2d 103 (FMC ALJ May 18, 2018)........................................................15

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979)............................................................35

*Global Link Logistics, Inc. v. Hapag-Lloyd AG*, FMC Dkt. No. 13-07, 2014 WL 5316345 (FMC ALJ Apr. 17, 2014).................................................9, 16

*Greatway Logistics Grp., LLC, v. Ocean Network Express Pte. Ltd.*, FMC Dkt. No. 21-04, 2021 WL 3090768 (FMC ALJ July 16, 2021) ......................................7, 8

*In re: Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71 (3d Cir. 2017)...........9, 10

*Marine Transp. Logistics, Inc. v. CMA-CGM (America) LLC*, FMC Dkt. No 18-07, 2019 WL 5206007 (FMC ALJ Oct. 8, 2019).........................................8

*MAVL Capital, Inc. v. Marine Transp. Logistics, Inc.*, 130 F. Supp. 3d 726 (E.D.N.Y. 2015)............................................................7

*Mediterranean Shipping Co. USA Inc. v. AA Cargo Inc.*, 46 F. Supp. 3d 294 (S.D.N.Y. 2014) ............................................................7

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958) ..............................................................35

*Swift & Co. v. FMC*, 306 F.2d 277 (D.C. Cir. 1962)....................................... 14, 15

*Unpaid Freight Charges*, 58 Fed. Reg. 7190-02, 1993 WL 24805 (FMC Feb. 5, 1993) ............................................................7

*Webb v. District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998)................................33

**Statutes**

46 U.S.C. § 40307(a) ...................................................................10

46 U.S.C. § 40502(f).............................................3, 6, 7, 8, 9, 10, 11

46 U.S.C. § 41102(c).........................................................5, 8, 9, 17

46 U.S.C. § 41104(a)..................................................................10

46 U.S.C. § 41104(a)(10) .........................................................6, 8, 9

46 U.S.C. § 41104(a)(2)............................................................5, 17

46 U.S.C. § 41104(a)(5)................................................................5

46 U.S.C. § 41104(a)(9)..............................................................5, 8

46 U.S.C. § 41301 ................................................................10, 11

9 U.S.C. §§ 1–16....................................................................12

**Treaties**

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial
   Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555 .... 25, 26, 27, 28, 29

**Rules**

46 C.F.R. § 502.141(e)................................................................18

D.C. Circuit Rule 28(d)(2) ..............................................3, 17, 25, 31, 33

# GLOSSARY

| | |
|---|---|
| ALJ | Administrative Law Judge |
| Commission | Appellee Federal Maritime Commission |
| Complaints | MCS Industries, Inc.'s Verified Complaint, Dkt. 1 (JA____), and Verified Amended Complaint, Dkt. 38 (JA____), in the administrative proceeding below |
| FAA | Federal Arbitration Act |
| FDJP | Federal Department of Justice and Police of the Swiss Confederation |
| FMC | Appellee Federal Maritime Commission |
| FOJ | Federal Office of Justice of the Swiss Confederation |
| Hague Convention | Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters |
| MCS Industries | Intervenor MCS Industries, Inc. |
| MSC | Appellant MSC Mediterranean Shipping Company S.A. |
| RFPs | Requests for production of documents and electronically stored information |
| Shipping Act | Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 *et seq.* |
| TPI | Tribunal de Première Instance for the Canton of Geneva, Switzerland |
| WSC | *Amicus Curiae* The World Shipping Counsel |

## SUMMARY OF ARGUMENT

This appeal is the culmination of a multi-year campaign of obstruction by appellant MSC Mediterranean Shipping Company S.A. ("MSC"), currently the largest vessel-operating ocean common carrier in the world, to:

- avoid its obligation to produce highly relevant, discoverable documents, communications, and information concerning its regulations, practices, and treatment of U.S. importers such as intervenor (and complainant below) MCS Industries, Inc. ("MCS Industries") during the COVID-19 pandemic;

- avoid, by means of an unnecessary international discovery procedural gambit entirely of MSC's own making, the fair and appropriate consequences of its recalcitrance; and

- use the resulting appeal to this Court as a vehicle to seek to eliminate **both** its statutory obligations and liability to MCS Industries (and other U.S. shippers) for its conduct under the Shipping Act of 1984, as amended, 46 U.S.C. Sections 40101 *et seq.* (the "Shipping Act"), **and** the Federal Maritime Commission's (the "Commission" or "FMC") exclusive jurisdiction to adjudicate alleged violations of the Shipping Act and award administrative remedies for such violations.

MSC seeks to use this appeal, and this Court, to accomplish these goals by:

1

- rehashing meritless jurisdictional arguments that ignore, and seek to read out of existence, the express statutory protections, procedures, and administrative remedies that the Shipping Act confers on U.S. shippers;

- once again willfully misconstruing the nature of MCS Industries' statutory causes of action in the administrative proceeding below;

- mischaracterizing its own highly selective (and woefully inadequate) responses to MCS Industries' discovery requests in the case below; and

- asserting legal positions that contradict its own positions in the case below to manufacture purported bases for vacatur and remand.

MCS's industry counterparts, many of whom have faced claims substantially identical to those alleged by MCS Industries below,[1] have joined in MSC's effort to

---

[1] *See OJ Commerce, LLC v. Hamburg Südamerikanische Dampfschifffahrts-Gesellschaft A/S & Co. KG*, FMC Dkt. No. 21-11; *Foreign Tire Sales, Inc. v. Evergreen Shipping Agency (America) Corp.*, FMC Dkt. No. 22-05; *Royal White Cement, Inc. v. CMA CGM S.A.*, FMC Dkt. No. 22-06; *Achim Importing Co. Inc. v. Yang Ming Marine Transport Corp.*, FMC Dkt. No. 22-08; *MSRF Inc. v. HMM Co. Ltd.*, FMC Dkt. No. 22-20; *MSRF Inc. v. Yang Ming Marine Transport Corp.*, FMC Dkt. No. 22-21; *U Shippers Grp. Inc. v. Maersk A/S dba Maersk*, FMC Dkt. No. 22-22; *20230930-DK-Butterfly-1, Inc. f/k/a Bed Bath & Beyond Inc. v. Orient Overseas Container Line Ltd.*, FMC Dkt. No. 23-02; *CertiFit, Inc. v. Evergreen Shipping Agency (America) Corp.*, FMC Dkt. No. 23-03; *Bed Bath & Beyond Inc. v. Yang Ming Marine Transport Corp.*, FMC Dkt. No. 23-10; *20230930-DK-BUTTERFLY-1, Inc. v. MSC Mediterranean Shipping Co. SA*, FMC Dkt. 23-12; *20230930-DK-BUTTERFLY-1, Inc. f/k/a Bed Bath & Beyond Inc. v. Evergreen Line Joint Serv. Agr. (FMC #011982)*, FMC Dkt. No. 24-12; *PKDC, LLC v. CMA CGM S.A.*, FMC Dkt. No. 24-21; *Nielsen & Bainbridge LLC v. Ocean Network Express Pte. Ltd.*, FMC Dkt. No. 25-02; *Euromarket Designs, Inc. v. MSC Mediterranean Shipping Co. SA*, FMC Dkt. No. 25-03.

eviscerate the protections of the Shipping Act by means of an *amicus curiae* brief filed by their trade association, the World Shipping Counsel (the "WSC").

For the reasons stated herein, as well as those stated in the brief of appellee the Federal Maritime Commission (the "Commission" or "FMC"), the arguments in the briefs of MSC and WSC should be rejected, and MSC's petition for review, and the other relief that MSC seeks, should be denied.

## STATUTES AND RULES

Except for the additional applicable statutes and regulation contained in the Addendum to this brief, the applicable statutes and regulations are contained in the Addendum to MSC's Corrected Brief filed in this appeal (Dec. 26, 2024) (Doc. 2091556).

## ARGUMENT

**A.     Neither 46 U.S.C. § 40502(f) Nor the Federal Arbitration Act Precludes MCS Industries' Shipping Act Claims or Deprives the Federal Maritime Commission of Jurisdiction to Adjudicate Those Claims and Award Administrative Remedies.**

   *1.     MSC's Reliance on 46 U.S.C. § 40502(f) Willfully Misconstrues the Statutory Nature of MCS Industries' Causes of Action and the Administrative Remedies It Sought from the Commission.*

MSC's argument that 46 U.S.C. Section 40502(f) deprives the Commission of jurisdiction over MCS Industries' claims below is legally meritless for the reasons detailed in the Commission's brief, which, consistent with Circuit Rule 28(d)(2) of this Court, MCS Industries will not repeat here. It is important to note, however, that

3

MSC's arguments in this connection depend entirely on misconstruing the explicitly statutory nature of MCS Industries' causes of action and the remedies it sought under the Shipping Act in this case.

MSC's strategy of willful blindness to the straightforward allegations of Plaintiff's Verified Complaint and Verified Amended Complaint (collectively, the "Complaints") reaches back to the earliest stages of this case, even before the filing of the motion to compel discovery that eventually led to MSC's default below. In its October 8, 2021 Submission of Disputes Concerning Scope of Initial RFPs, one of the first substantive filings in the case below, MCS Industries advised the Chief Administrative Law Judge (the "ALJ") that MSC had made a "narrow and self-serving proposal" to limit discovery drastically that "misconstrues and improperly cabins the nature of MCS Industries' causes of action".[2] Over three years later, MSC still refuses to accept that MCS Industries' claims in this case are not breach of contract claims seeking contractual damages, but instead *statutory claims* seeking *statutory remedies* for MSC's conduct in violation of the *statutory requirements and prohibitions* of the Shipping Act from the administrative agency that is *statutorily* charged with *exclusive* jurisdiction to administer and enforce that statute, including:

---

[2] Dkt. 16 (Complainant MCS Industries, Inc.'s Submission of Disputes Concerning Scope of Initial RFPs) at 4 (JA___).

4

- 46 U.S.C. Section 41102(c)'s requirement that MSC "may not fail to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property" of MCS Industries—or other shippers (Count I of MCS Industries' Complaints);

- 46 U.S.C. Section 41104(a)(2)'s prohibition on MSC "provid[ing] service in the liner trade that is . . . not in accordance with the rates, charges, classifications, rules, and practices contained in . . . a service contract" (Count II of MCS Industries' Complaints);

- 46 U.S.C. Section 41104(a)(5)'s prohibition on MSC, "for service pursuant to a service contract, engag[ing] in any unfair or unjustly discriminatory practice in the matter of rates or charges with respect to any port" (Count III of MCS Industries' Complaints);

- 46 U.S.C. Section 41104(a)(9)'s prohibition on MSC, "for service pursuant to a service contract, giv[ing] any undue or unreasonable preference or advantage or impos[ing] any undue or unreasonable prejudice or disadvantage with respect to any port" (Count IV of MCS Industries' Complaints); and

- 46 U.S.C. Section 41104(a)(10)'s prohibition on MSC "unreasonably refus[ing] to deal or negotiate" with MCS Industries (Count V of MCS Industries' Complaints).

MSC appears to believe that if it simply repeats its meritless arguments enough times, it can eventually succeed in unilaterally transforming MCS Industries' statutory Shipping Act causes of action into common law breach of contract claims. It cannot. Simply put, MCS Industries' claims in this case are not the type of claim subject to 46 U.S.C. Section 40502(f).

### 2. *MSC's Interpretation of 46 U.S.C. § 40502(f) Cannot Be Reconciled with the Structure and Congressional Intent of the Shipping Act.*

The mere fact that MSC's conduct constituted ***both*** breaches of its service contracts ***and*** violations of the Shipping Act, or that breach of contract claims could be or have been brought separately in court (or, as discussed below, in arbitration), in no way eliminates or limits MCS Industries' right to bring statutory claims seeking statutory remedies from the Commission—the administrative agency that Congress vested with exclusive authority over Shipping Act claims, violations, and remedies—and in no way eliminates or limits the Commission's jurisdiction to adjudicate such statutory claims or authority to provide such statutory remedies to MCS Industries.

It is well settled that "[t]he Commission has ***exclusive jurisdiction*** to administer and enforce the 1984 [Shipping] Act. ***Violations of the 1984 [Shipping]***

***Act can be rectified only by the sanctions and remedies provided for in that Act***." *Unpaid Freight Charges*, 58 Fed. Reg. 7190-02, 1993 WL 24805, at \*7193 (FMC Feb. 5, 1993) (emphasis added); *accord Baltic Auto Shipping, Inc. v. Hitrinov*, FMC Dkt. No. 14-16, 2015 WL 14094543, at \*4 (FMC ALJ Feb. 2, 2015). Federal courts agree. *See, e.g.*, *Mediterranean Shipping Co. USA Inc. v. AA Cargo Inc.*, 46 F. Supp. 3d 294, 301 (S.D.N.Y. 2014) ("[T]he Shipping Act does not provide for a private cause of action in federal district court; rather, ***alleged violations of the Shipping Act must be addressed with the Federal Maritime Commission***.") (emphasis added); *accord MAVL Capital, Inc. v. Marine Transp. Logistics, Inc.*, 130 F. Supp. 3d 726, 731 (E.D.N.Y. 2015) (collecting cases and dismissing Shipping Act claims).

"[E]ven when there is litigation between the parties in other courts, the Commission has an obligation to determine whether an entity has violated the Shipping Act." *Greatway Logistics Grp., LLC, v. Ocean Network Express Pte. Ltd.*, FMC Dkt. No. 21-04, 2021 WL 3090768, at \*2 (FMC ALJ July 16, 2021). Consequently:

> While [46 U.S.C. § 40502(f)] reasonably precludes the Commission from adjudicating breach of contract claims, the courts more properly equipped to address those matters ***are not authorized to address Shipping Act matters exclusively within the Commission's jurisdiction***. Such issues are not addressed in actions for breach of contract ***and no remedy for such violations would be provided in a breach of contract action***. Moreover, . . . reliance on the Commission to pursue such violations <u>sua sponte</u> in its investigatory role ***would eviscerate the reparations remedy afforded complainants by the***

> ***statute***. Therefore, we find that the ALJ should proceed to consider those claims.

*Id.* at *3 (quoting *Cargo One, Inc. v. Cosco Container Lines Co. Ltd.*, FMC Dkt. No. 99-24, 2000 WL 1648961, at *15 (FMC 2000)) (emphasis added).

The Commission's rejection of MSC's arguments in this case is consistent with the sound reasoning of prior decisions in other, similar litigations. *See, e.g.*, *Marine Transp. Logistics, Inc. v. CMA-CGM (America) LLC*, FMC Dkt. No 18-07, 2019 WL 5206007, at *6–7 (FMC ALJ Oct. 8, 2019) (rejecting the respondent's arguments in a motion to dismiss that the complainant's claims under 46 U.S.C. Sections 41102(c), 41104(a)(9), and 41104(a)(10) were mere breach of contract claims subject to dismissal pursuant to 46 U.S.C. Section 40502(f) because "the existence of a service contract would not be grounds to dismiss the proceeding where Shipping Act violations are alleged"); *Greatway Logistics Grp., LLC*, 2021 WL 3090768, at *1, *4 (denying the respondent's motion to stay an FMC case alleging, *inter alia*, violation of 46 U.S.C. Section 41102(c) pending certain developments in a parallel federal district court litigation involving alleged breach of contract claims because, even though the parallel actions were "based on the same two bills of lading", "the Commission and the district court are adjudicating different issues" and "[a]s Shipping Act violations are raised in this proceeding and respondent is a regulated entity, the Commission has jurisdiction over this proceeding"). Even the *Global Link Logistics, Inc. v. Hapag-Lloyd AG* decision on which MSC and *amicus*

*curiae* WSC seek to rely expressly recognized that "Section 40502(f) does not deprive the Commission of jurisdiction over all disputes about service contracts . . . ." *Global Link Logistics, Inc. v. Hapag-Lloyd AG*, FMC Dkt. No. 13-07, 2014 WL 5316345, at \*11 (FMC ALJ Apr. 17, 2014).

Moreover, the Commission's consistent assertion of exclusive jurisdiction to investigate and adjudicate violations of the Shipping Act, including pursuant to private party complaints such as the Complaints at issue here, and exclusive authority to provide statutory remedies for such violations, is consistent with Congressional intent in enacting the Shipping Act. As the U.S. Court of Appeals for the Third Circuit has discussed in detail, "the Shipping Act's text, scheme, and legislative history demonstrate Congress's intent to create a **comprehensive**, predictable **federal framework** to ensure efficient and nondiscriminatory international shipping practices." *In re: Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 82 (3d Cir. 2017) (discussing relevant legislative history of the Shipping Act).

> To achieve these goals, Congress prohibited certain activities. Among other things, the Shipping Act makes certain unfair devices unlawful, such as . . . failing to establish just and reasonable regulations and practices regarding receiving, handling, storing, or delivering property, id. § 41102(c), [and] unreasonably refusing to deal or negotiate, id. §§ 41104(10) . . . .
>
> In addition to prohibiting such acts, **Congress created specific enforcement mechanisms for persons and entities injured by these illegal practices**. It empowered the FMC to investigate and punish

9

> illegal conduct pursuant to a ***uniform regime***. By granting the FMC this authority, Congress has put in place a regulator familiar with complex foreign commerce issues confronting ocean common carriers. This expertise enables the FMC to make informed decisions about whether conduct violates the Act and warrants punishment. ***Moreover, Congress provided a means for private parties injured by the illegal acts of such carriers to seek relief ranging from double damages and attorneys' fees to injunctions***.

*Id.* at 86 (internal citation omitted and emphasis added). Indeed, in that case the Third Circuit found the regulatory framework that Congress created with the Shipping Act, to be sufficiently comprehensive and exclusive to preempt not only federal antitrust laws, from which the Shipping Act expressly exempts certain regulated agreements or activities, *see* 46 U.S.C. § 40307(a), but also state antitrust, consumer protection, and unjust enrichment laws. *See In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71 at 83–87.

MSC's interpretation of 46 U.S.C. Section 40502(f) would effectively write several of the express prohibitions and protections of 46 U.S.C. Section 41104(a) out of the Shipping Act entirely, a result clearly contrary to the Congressional intent and structure of the Shipping Act discussed above and detrimental to U.S. shippers such as MCS Industries. This Court should reject that interpretation in favor of the Commission's interpretation of Section 40502(f), which harmonizes it with the substantive protections afforded to U.S. shippers by Section 41104(a) and the exclusive administrative procedure provided to them by 46 U.S.C. Section 41301.

10

### 3. *The Federal Arbitration Act Does Not Deprive MCS Industries of Its Right to Seek Statutory Remedies from the Commission or the Commission of Its Exclusive Jurisdiction to Provide Such Remedies.*

The willfulness of MSC's efforts to misconstrue MCS Industries' claims, and the hollowness of MSC's jurisdictional arguments before this Court, are both highlighted by the fact that, ***after*** losing on the motion to compel discovery and its belated motion to dismiss MCS Industries' Verified Complaint, MSC responded by commencing a separate, retaliatory arbitration against MCS Industries, seeking to extract contractual liquidated damages for some of the very same cargo space shortfalls that led to MCS Industries' Shipping Act claims against MSC in this case. In addition to defending against MSC's cynical liquidated damages claims, MCS Industries has, consistent with the arbitration clauses in the parties' contracts, asserted in that proceeding breach of contract counterclaims against MSC, which remain the subject of ongoing litigation. MSC's pursuit of that arbitration in parallel with this case demonstrates that contractual arbitration does not preclude, but instead can proceed in parallel with, a Shipping Act case before the Commission, consistent with Commission precedent and fulfilling the purposes of both 46 U.S.C. Section 40502(f) and 46 U.S.C. Section 41301.

MSC notably did not file a motion to dismiss MCS Industries' Verified Complaint at the outset of the case (instead waiting until ***after*** the ALJ had granted MCS Industries' motion to compel discovery to do so), and ***never*** filed a motion to

compel arbitration against MCS Industries in this case or in any court. Moreover, MSC's belated motion to dismiss papers did not even mention the Federal Arbitration Act, 9 U.S.C. Sections 1–16 *et seq.* (the "FAA"), much less argue that the FAA precluded MCS Industries from asserting its statutory Shipping Act claims against MSC before the Commission. There again, MSC instead repeatedly sought to mischaracterize MCS Industries' causes of action as breach of contract claims and address them as such.[3] Indeed, MSC did not advance the (inapposite) jurisdictional case law on which it now seeks to rely until it was faced with a decision on default against it, over a year after the case was filed,[4] and did not invoke the Federal Arbitration Act until ***after*** the ALJ had already granted that decision on default, in its Exceptions to that decision.[5]

Nevertheless, MSC now argues that the Federal Arbitration Act deprives the Commission of jurisdiction to hear and adjudicate MCS Industries' statutory Shipping Act claims or grant the statutory remedies that the Shipping Act provides because MSC's boilerplate service contracts contain arbitration clauses. In making such an argument, of course, MSC is also implicitly arguing—and asking this Court

---

[3] *See* Dkt. 31 (Motion to Dismiss the Complaint in Its Entirety, Or as to Count V in the Alternative for Summary Disposition) at 4–5, 12–13, 17 (JA___); *see also* Dkt. 36 (Reply in Support of Respondent's Motion to Dismiss) at 4 (JA___).

[4] *See* Dkt. 56 (Respondent Mediterranean Shipping Company S.A.'s Response to Order to Show Cause) at 28–29 (JA___).

[5] *See* Dkt. 65 (Respondent Mediterranean Shipping Company S.A.'s Exceptions to Initial Decision and Memorandum and Brief in Support) at 4, 31–33 (JA___).

to make the unprecedented finding—that claims seeking administrative remedies for violations of the Shipping Act can be subjected to mandatory private arbitration, thereby excluding the Commission from the adjudication of such claims entirely. Although MSC and *amicus curiae* WSC rely on decisions of other U.S. Courts of Appeals in other statutory contexts (e.g., the antitrust laws), in the context of the Shipping Act and the Federal Maritime Commission, such an argument is not only unprecedented, but also directly contradicted by prior decisions of this Court and the Commission.

> As this Court explained in *A/S Ivarans Rederi v. United States*:
>
> Private regulated parties cannot agree to waive the subject matter jurisdiction of the agency charged with the statutory responsibility to insure that parties implement agreements as approved by and filed with that agency. And ***just as assuredly, private parties may not agree to confer such powers on an arbitration panel***. . . . Since Congress clearly envisioned a role for the FMC to play in investigating and adjudicating possible violations of the Shipping Acts, we think it rather extreme to conclude that the FMC "waived" its statutory obligations simply by approving an arbitration clause.

895 F.2d 1441, 1445 (D.C. Cir. 1990). The Court there noted that, even in the more extreme case where arbitration was actually mandated by the Commission itself (unlike here), "the Commission always retains its statutory right to hear complaints that a filed agreement has been *modified* through an arbitration decision, in effect to review the arbitration award, even if under a deferential standard of review", because "[i]f it were otherwise, ***parties through arbitration could eviscerate the filing***

***requirements that Congress considered necessary for the public interest***." *Id.* at 1446 (emphasis in bold added).

The Court there further distinguished then-recent decisions of the United States Supreme Court permitting the mandatory arbitration of securities and racketeering law claims, explaining that "[t]hose cases did not address the situation in which the regulated parties must file the agreement with and obtain the approval of an agency charged with protecting the public interest"—there, as here, the FMC. *Id.* The Court further noted that in a prior decision, it had "concluded that an arbitration decision resolving a dispute under the Shipping Act of 1916 'is not simply a private matter between two private litigants, but also has its public aspects,' since agreements among ocean carriers legally existed only by the Commission's approval." *Id.* (quoting and citing *Swift & Co. v. FMC*, 306 F.2d 277, 281–82 (D.C. Cir. 1962)). In *Swift & Co.*, this Court further explained:

> No private arbitration could negate the [Federal Maritime] Board's [i.e., the Commission's predecessor] statutory power to determine the validity of the dual-rate agreement. The more serious issue is whether the Board is precluded by the arbitration from awarding Swift reparations. We think not, for the arbitration opinion decided only the meaning of the Freighting Agreement, as garnered from the intent of the parties and the surrounding circumstances. That may have been appropriate for the arbitration, but, as we have pointed out, the Board's function is to interpret and rule on the legality of the agreement's language and effect in the light of the public interest. We have examined the arbitration opinion and award carefully, but find no mention whatever of the legality of the agreement, as opposed to its interpretation. In these circumstances, at least, the Board was certainly free to rule on the legality issue and to award reparations. Especially is

14

> this true where, as here, the order is not simply a private matter between two private litigants, but also has its public aspects.

306 F.2d at 282.

This Court's prior decisions are consistent with Commission precedent, which has consistently rejected arguments like those advanced by MSC here in prior administrative proceedings involving similar claims. The existence of a service contract between the parties containing language requiring arbitration of breach of contract claims "'does not outweigh the Commission's duty to protect the public by ensuring that service contracts are implemented in accordance with the Shipping Act'", and consequently "an arbitration provision does not deprive the Commission of its authority to determine whether a respondent committed Shipping Act violations" because "'[t]o preclude [the complainant] from proceeding with its complaint solely because a private arbitrator previously issued a ruling would be inconsistent with our statutory mandate to hear such complaints.'" *Carlstar Grp. LLC f/k/a Carlisle Transportation Products, Inc.*, FMC Dkt. No. 17-08, 2018 WL 2356145, at *13, 1 F.M.C.2d at 118 (quoting *Anchor Shipping Co. v. Aliança Navegação E Logística Ltda.*, FMC Dkt. No. 02-04, 2006 WL 2007808, at *9 (FMC 2006)). Consistent with this body of precedent, it is clear that the existence of arbitration clauses in MSC's service contracts with MCS Industries does not preclude MCS Industries' Shipping Act claims or deprive the Commission of jurisdiction over them.

To the extent MSC and *amicus curiae* WSC rely on *Global Link Logistics, Inc.*, that decision notably is "not binding" precedent because that case "settled prior to Commission review." *Bakerly, LLC, Complainant v. Seafrigo USA, Inc., Respondent*, FMC Dkt. No. 22-17, 2023 WL 1963459, at *7 (FMC Feb. 7, 2023). MSC and WSC's extensive reliance on *Global Link Logistics, Inc.* is also substantively misplaced, as that case came before the Commission in a very different posture and is readily distinguishable. There, the respondent ocean carrier had first demanded payment of liquidated damages allegedly owed to it under its service contract with the complainant shipper and had demanded arbitration of that matter pursuant to an arbitration clause in the service contract. *See Global Link Logistics, Inc.*, 2014 WL 5316345, at *7. The shipper responded by filing a case before the Commission, alleging, *inter alia*, on the basis of the parties' alleged prior course of dealing that that the ocean carrier had violated the Shipping Act by refusing to reduce its rates from those agreed in the service contract and reduce the shipper's contractual minimum quantity commitment to match the shipper's actual bookings during the term of the service contract—in other words, by refusing to vary from the terms of the parties' written service contract. *See id.* If anything, the posture here is **reversed**, with MCS Industries having first alleged violations of the Shipping Act, including conduct that was not in accordance with the parties' service contract, and MSC subsequently initiating a retaliatory arbitration against MCS Industries.

16

**B.      MCS Industries' Causes of Action Stated Valid Shipping Act Claims.**

For the reasons detailed in the Commission's brief, which, pursuant to Circuit Rule 28(d)(2) of this Court, MCS Industries will not repeat here, neither the ALJ nor the Commission erred in concluding that each of the causes of action in MCS Industries' Complaints stated a valid claim under the Shipping Act. It is notable, however, that in this appeal MSC does ***not*** challenge jurisdiction with respect to Counts I and II of MCS Industries' Complaints, which allege violations of 46 U.S.C. Sections 41102(c) and 41104(a)(2), respectively. By focusing its arguments on appeal on MCS Industries' other Shipping Act claims, MSC apparently seeks to draw the Court's attention away from the fact that Count I, by the plain language of both MCS Industries' Complaints and 46 U.S.C. Section 41102(c) itself, ***necessarily*** concerns MSC's "***regulations and practices*** relating to or connected with receiving, handling, storing, or delivering [the] property" of MCS Industries ***and other U.S. shippers***, and thus cannot possibly be mischaracterized as a mere bilateral breach of contract claim. 46 U.S.C. § 41102(c) (emphasis added). This focus on MCS Industries' other, arguably narrower Shipping Act causes of action also appears calculated to distract the Court from the fact that much of the discovery that MSC refused to produce in the proceeding below (discussed below) related to MCS Industries' 46 U.S.C. Section 41102(c) claim in Count I, as to which MSC does not raise specific jurisdictional arguments.

17

**C.      MSC Cannot Leverage the Very Procedural Steps That It Requested to Excuse Its Own Baseless Refusal to Comply with Valid Orders.**

**1.      *MSC Could Have Voluntarily Remedied Its Discovery Deficiencies, as Demonstrated by Its Conduct in Another FMC Proceeding.***

The motion to compel discovery, the order granting that motion, and the decisions on default that led to the Commission's unanimous decisions that are the subject of this appeal could have been avoided by MSC entirely had MSC simply complied with its discovery obligations under Rule 201 of the Commission's Rules of Practice and Procedure, which specifies, *inter alia*, the "[s]cope of discovery and limits" for private party actions before the Commission. 46 C.F.R. § 502.141(e). Under Rule 201, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense", and, echoing the former language of Rule 26 of the Federal Rules of Civil Procedure, such "[r]elevant information need not be admissible at hearing if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

As an initial matter, MSC could have voluntarily produced the documents and communications and answered the interrogatories that were the subject of the motion to compel discovery and the ALJ's order granting that motion at any time. Any suggestion to the contrary is belied by MSC's discovery conduct in other proceedings before the Commission, which demonstrates that its refusal to produce discovery in this case was not based on a sincere fear of Swiss legal restrictions on

18

discovery. MSC was also a respondent in *Intermodal Motor Carriers Conference, American Trucking Associations, Inc. v. Ocean Carrier Equipment Management Association Inc., Mediterranean Shipping Company, et al.*, FMC Dkt. No. 20-14. At the very same time as MSC was fighting tooth and nail against complying with its discovery obligations in this case, MSC produced discovery located in Switzerland ***both before and after*** a motion to compel with respect to discovery in the *Intermodal* proceeding. MSC gave the following update in a joint status report in that action:

> MSC's data is maintained in servers located in Switzerland and transmittal was delayed due to compliance issues under Swiss privacy laws. The requests were first evaluated by MSC's headquarters in Geneva to determine the legality of compliance under Swiss law, a process which took a considerable period of time. There were also IT issues, because the data was maintained in Geneva and it took time to provide access for the conduct of initial searches from the U.S. and collect the data.[6]

Nonetheless, even as it asserted (contrary to the ruling of the Swiss court and the ALJ's orders in this case) that it feared criminal liability if it produced Swiss custodial data in ***this*** case, MSC ***produced*** such data in the *Intermodal* action, without seeking consultation with the U.S. Department of State or Hague Convention processes. MSC has ***never*** explained, in the proceeding below or in its briefing before this Court, why it was able to voluntarily produce data supposedly "located in Switzerland" in the *Intermodal* case, but not here.

---

[6] Raleigh Decl., *Intermodal Mot. Carriers Conf. v. Ocean Carrier Equip. Mgmt. Ass'n, Inc.*, FMC Dkt. No. 20-14, 2021 WL 4287419, at *2 (FMC Sept. 14, 2021).

**2.      *MSC's Discovery Refusals Extended Beyond the Specific Discovery Requests Implicated in the Order Granting Motion to Compel, Belying Its Swiss Law Excuse for Its Failures and Delays.***

MSC's discovery refusals in this case were extensive, reaching even beyond the specific interrogatories and requests for production of documents and electronically stored information ("RFPs") that were the subject of the motion to compel discovery and the ALJ's order granting that motion (which, of course, is what MSC claims created its Swiss law excuse for noncompliance). MCS Industries' motion to compel discovery was occasioned by MSC's refusal to produce documents and communications responsive to ***more than two dozen*** of MCS Industries' first set of RFPs and refusal to answer ***any*** of MCS Industries' first set of interrogatories. However, MSC's discovery refusals did not stop there. Despite explicitly admitting in a December 20, 2021 Joint Status Report that "***[t]he Swiss blocking statutes do not implicate Respondent MSC's compliance with voluntary discovery***" and that, thus, "***supplemental discovery exchanged between the Parties***, and the third-party discovery now being pursued ***can proceed in parallel with that process***",[7] MSC ***refused to produce a single additional document*** pursuant to MCS Industries' subsequent, substantially identical document requests concerning the 2020–2021 shipping year in its second set of RFPs, which were served after the motion to

---

[7] Dkt. 28 (Dec. 20, 2021 Joint Status Report and Proposed Revised Discovery Schedule) at 1–2 (JA___) (emphasis added).

compel discovery had been fully briefed (and thus were not specifically the subject of that motion). Similarly, MSC ***never produced a single document*** in response to MCS Industries' third set of RFPs, which were not served until after the ALJ had granted MCS Industries' motion to compel discovery and denied MSC's motion to dismiss the Verified Complaint, reinforcing that MSC's refusals to comply with its discovery obligations in this case was not a mere issue of obtaining supposedly requisite authorizations in connection with Swiss law.

Indeed, nowhere does MSC argue, much less prove, that the documents and communications sought by MCS Industries' RFPs or the information necessary to answer MCS Industries' interrogatories existed exclusively in Switzerland and could not be produced or provided from MSC's files, servers, employees, or agents elsewhere in the world, including within the United States. As the largest ocean carrier in the world, and especially given that this case involves MSC's practices and conduct with respect to U.S.-based MCS Industries and other importers of cargo into the United States, it would be beyond credulity to suggest that all of the documents, communications, and information subject to the Order Granting Motion to Compel exists ***only*** in Switzerland and could ***only*** be produced from there.[8]

---

[8] By way of example, MSC claimed in its opposition to MCS Industries' motion to compel discovery that "MSC has produced a large number of documents from MSC USA Inc.", which it described as "an agent for MSC" and noted was the entity that "accepted service of the Complaint in this proceeding for MSC", "in this case on the

Any suggestion by MSC that the partial discovery that it produced in this case was sufficient, or that the discovery that it refused to produce was superfluous or duplicative, is particularly brazen given MSC's position that MCS Industries did not provide a sufficient documentary basis for the sanctions amount awarded in this case. MSC is, in effect, demanding the very kinds of documents and communications that MSC itself refused to produce in this case, thereby seeking to reward its own discovery misconduct by depriving MCS Industries of an award of reparations based on the impact of that conduct. The reason why the ALJ had to emphasize in her Order Granting Motion to Compel that MSC's *practices* with respect to U.S. shippers were at issue was that MSC refused to produce any documents or communications concerning those practices, instead selectively producing only partial discovery concerning a handful of specific booking requests for which it believed it had excuses for refusing, rejecting, or cancelling.[9] Consequently, MCS Industries never received a complete, or even close to complete, document production from MSC.

---

same basis as from MSC itself", reflecting that MSC's documents, communications, and information existed in multiple jurisdictions, and not exclusively in Switzerland. Dkt. 23 (Complainant MCS Industries, Inc.'s Motion to Compel Discovery from Respondent MSC Mediterranean Shipping Company S.A. and Respondent MSC Mediterranean Shipping Company S.A.'s Counterstatements and Opposition the [sic] Motion to Compel, Or in the Alternative, Request to Defer Its Consideration Pending Resolution of a Motion for Summary Disposition) at 71 (JA___); *see also id.* at 70 & n.56 (JA___).

[9] *See* Dkt. 27 (Order Granting Mot. to Compel) at 6–7, 10 (JA___).

Moreover, MSC refused to produce any documents and communications from its own appointed booking agents, to which the ALJ had previously issued subpoenas to no avail.[10] As MSC well knew, day-to-day communications concerning requests for cargo space and attempts to book MCS Industries' cargo typically were not usually between MCS Industries and MSC, but instead between the parties' respective agents and—to the extent such day-to-day communications left any paper trail, at all, much less one that still exists—such documents or communications would be in the possession of those agents.[11] Nor, critically, were MSC's agents at issue located in Switzerland; each subpoena recipient was located in China,[12] thus eliminating any Swiss law bases for MSC to resist production of their records.

MSC's incentive in resisting discovery was, and is, clear. By refusing to procure and produce the very documents and communications that it later argued

---

[10] *See, e.g.*, Dkt. 35 (Jan. 10, 2022 Joint Status Report) at 3 (JA___); Dkt. 41 (Feb. 28, 2022 Joint Status Report) at 4 (JA___).

[11] As with MSC's appointed booking agents, the ALJ also issued a subpoena to Expeditors International of Washington, Inc., which responded by providing documents and communications for production in this action. *See, e.g.*, Dkt. 43 (Apr. 4, 2022 Joint Status Report) at 1 (JA___); Dkt. 41 at 6–7 (JA___).

[12] *See, e.g.*, Dkt. 56 at 14–15 & n.2 (JA___) (discussing the ALJ's subpoenas to MSC's appointed booking agents in China and MSC's "efforts" to obtain documents from them, which "were not successful"). In that filing, MSC falsely described its own appointed booking agents in China as "Complainant's agents" even though MSC's contracts with them specifically appoints them to serve as "Booking Agents" for the corresponding local MSC entities. *See* Dkt. 77 (Complainant MCS Industries, Inc.'s Reply to Respondent MSC Mediterranean Shipping Company SA's Exceptions to Initial Decision on Remand) at 14, n.5 & Ex. 1 (JA___).

were indispensable to establishing proximate cause, MSC hoped to create an impossible standard that would insulate ocean carriers from Shipping Act liability. Under MSC's scheme, a regulated ocean common carrier could:

- ignore the full breadth of a shipper's claims regarding a carrier's regulations or practices to focus instead only on specific, isolated, cherry-picked bookings or booking attempts for which the carrier believes it could establish excuses or justifications;

- refuse to produce relevant documents and communications in its own files other than those that it selectively chooses to produce in order to advance its own preferred alternative narrative, even when ordered to do so by the ALJ;

- refuse to procure and produce relevant documents and communications from its own agents, even where its contracts with such agents give it the authority to do so and the agents are not located in a jurisdiction subject to a blocking statute;[13] and then

- claim that such documents and communications are indispensable to establishing proximate cause for an award of reparations, even when

---

[13] *See* Dkt. 77 at 14, n.5 & Ex. 1 (JA___); Dkt. 56 at 14–15 & n.2 (JA___).

such reparations are supported by a declaration and documentary evidence.[14]

As reflected by the foregoing, MSC's Swiss law excuses are not only legally meritless, but also utterly inapplicable to broad swaths of discovery that MSC never produced, delaying the case below and independently justifying the sanction imposed.

### 3.    *MSC's Arguments on Appeal Concerning 46 U.S.C. § 41108(c)(2) Are Contradicted by MSC's Arguments Below that Hague Convention Procedures Were "Exclusive" and "Necessary".*

MSC's arguments on appeal regarding the applicability of the procedures set forth in 46 U.S.C. Section 41108(c)(2) to this case are legally meritless and need not even be reached for the reasons detailed in the Commission's brief which, consistent with Circuit Rule 28(d)(2) of this Court, MCS Industries will not repeat here. It bears noting, however, that those arguments directly contradict MSC's own position in the proceeding below, in which it consistently insisted on the use of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555 (the "Hague Convention").

---

[14] *See* Dkt. 72 (Decl. of Brittany Montesano) & Exs. 1–5 thereto (JA\_\_\_).

At the outset of discovery in this case, MSC's counsel ***explicitly assured MCS Industries' counsel that it was not aware of any issues with Swiss discovery rules***.[15] As reflected in the parties' February 28, 2022 Joint Status Report:

> Complainant's counsel raised with Respondent's counsel the issue of Swiss law, and whether it could interfere with discovery in this case, during conferences in September and October 2021. It was not until December 16, 2021, however—after Complainant had filed and prevailed on its motion to compel—that Respondent raised the issues of Swiss law [at issue].[16]

MSC first surfaced discussion of the Hague Convention in its portion of the parties' January 10, 2022 Joint Status Report, claiming that "Swiss law could require procedures that could prove time-consuming to comply with the discovery order under the Hague Convention, which could involve formal intergovernmental requests."[17] On February 25, 2022, shortly after the ALJ had denied MSC's motion to dismiss MCS Industries' Verified Complaint and granted MCS Industries' motion for leave to file its Verified Amended Complaint, MSC unilaterally filed a "Notice and Update on Joint Status Report" attaching a legal opinion memorandum from MSC's Swiss counsel and stating that "even under a more limited case-by-case view

---

[15] *See* Dkt. 16 Ex. 1 (JA___) (Oct. 6, 2021 letter from MCS Industries' counsel to MSC's counsel) at 3 ("We inquired whether MSC will raise any Swiss law objections or issues with respect to our RFPs, and whether there would be any data privacy issues with your collection from MSC custodians located abroad, and you indicated that you were not aware of any such issues.").

[16] Dkt. 41 at 7 (JA___).

[17] Dkt. 35 at 4 (JA___).

of international comity recognized under U.S. law, ***the use of the Hague Evidence Convention procedures are appropriate in this case* . . . .**"[18] Notably, that memorandum ***nowhere*** mentioned or proposed that the ALJ proceed pursuant to 46 U.S.C. Section 41108(c)(2), and instead stated that "[f]rom a Swiss legal perspective, the Hague Convention is ***exclusively*** applicable among Contracting States as regards the taking of evidence", and ***not*** merely "an 'option'" because such an interpretation "deprives Switzerland of the ***exclusive*** use of the Hague Convention for document requests from the United States."[19]

In the parties' February 28, 2022 Joint Status Report, MCS Industries noted that "Respondent could have voluntarily answered Complainant's interrogatories and produced all relevant documents, communications, and information without forcing Complainant to file, and win, a motion to compel" and requested that the ALJ and/or the Commission "take any and all actions necessary to facilitate and ensure Respondent's compliance with its obligations under the Rules and the Order in this case, including pursuant to 46 U.S.C. Section 41108(c)."[20] In response, MSC reiterated that its February 25, 2022 filing "sets out an orderly procedure [i.e., the Hague Convention procedure] that is consistent with the schedule proposed and

---

[18] Dkt. 40 (Respondent's Notice and Update on Joint Status Report) at 2 (JA___) (emphasis added).

[19] *Id.* at Mem. ¶¶ 21–22 (JA___) (emphasis added).

[20] Dkt. 41 at 8 (JA___).

complies with Swiss and U.S. law including comity concerns, and stands ready to assist that process."[21]

In the parties' April 4, 2022 Joint Status Report, in response to MCS Industries' argument that Swiss law did not actually prevent MSC from complying with the ALJ's Order Granting Motion to Compel, MSC again argued "***that compliance with procedures under the Hague Convention is*** both ***necessary*** and desirable" and arguing specifically that "[t]his government-to-government consultation process" set forth in 46 U.S.C. Section 41108(c)(2) "is consistent with the use of Hague Convention procedures."[22] In response to MCS Industries' acknowledgment that, "[t]hough mandatory in its language, Section 41108 does not purport to be an exclusive remedy", MSC observed that "it may well be that the Swiss government will respond in that process [under Section 41108(c)] by confirming that the letters of request procedure of the Hague Convention should be complied with."[23] Ultimately, "[w]ithout waiving [its] arguments about the inadequacy and undue cost and burden of the Hague Evidence Convention options, in order to comply with the Presiding Officer's instruction in the March 4 Order to attach a proposed request, Complainant . . . attach[ed] a draft request prepared using

---

[21] *Id.*
[22] Dkt. 43 at 5, 6 (JA___) (emphasis added).
[23] *Id.* at 8 (JA___).

the Model for Letters of Request under the Hague Evidence Convention" to the April 4, 2022.[24]

MSC complains about the contents of the Request for International Judicial Assistance pursuant to the Hague Evidence Convention issued by the ALJ[25] and the manner in which MCS Industries transmitted it and its supporting materials and associated translations (together, the "Letter of Request")—all prepared at MCS Industries' expense—to the Swiss authorities. Notably, however, despite being the one that had insisted on Hague Convention procedures, MSC did nothing at the time to supplement the Letter of Request issued by the ALJ with the additional details or discussions of law that it now claims was missing from it. MSC's counsel participated in the preparation of the draft letter of request submitted to the ALJ, which explicitly listed the documents to be included with it—notably including MCS Industries' *second* set of interrogatories and *third* set of RFPs to MSC[26]—and which

---

[24] *Id.* at 12 (JA___).

[25] *See* Dkt. 44 (Order Granting Request for Letter of Request under Hague Convention) (JA___) (attaching signed letter of request).

[26] Although the ALJ's Order Granting Motion to Compel was issued before MCS Industries filed its Verified Amended Complaint extending its claims to the 2020–2021 shipping year, the Letter of Request expressly incorporated MCS Industries' discovery requests relating to *both* the early months of the 2021–2022 shipping year *and* the 2020–2021 shipping year, *see* Dkt. 44 at 5–6 (JA___), as did the ALJ's Order Requiring Production of Discovery. *See* Dkt. 50 at 4 (JA___). Accordingly, the ALJ properly awarded sanctions in connection with the full time period covered by the Verified Amended Complaint's claims.

did not omit any documents or information that MSC had requested at the time to be included.

Moreover, MCS Industries sent copies of the Letter of Request to the Swiss Federal Office of Justice (the "FOJ") *on the same day* as it sent copies to the designated Hague Convention Central Authority for the canton of Geneva, the Tribunal de première instance (the "TPI").[27] In sending the Letter of Request directly to the TPI as well as to the FOJ, MCS Industries' counsel was following the express instructions in the FOJ's written Guidelines for International Judicial Assistance in Civil Matters, which provide that "'[t]he request for judicial assistance *is sent* to the Central Authority of the state addressed (the receiving authority)'" and note that, as an alternative, "'[s]uch applications *may*, however, be lodged with the FOJ, which will transfer them to the competent central cantonal authority.'"[28] Indeed, the June 15, 2022 response from the Swiss FOJ, which MCS Industries promptly forwarded to MSC, *expressly confirmed that the TPI was, in fact, the competent authority to process the Letter of Request*.[29]

---

[27] *See* Dkt. 45 (June 3, 2022 Joint Status Report) at 1 (JA___); *see also* Dkt. 77 at 5 n.1 (JA___) (citing the Swiss Confederation's *Liste des autorités centrales cantonales pour l'entraide judiciaire en matière civile et commerciale* identifying the TPI as the central authority for the Canton on Geneva).

[28] *See* Dkt. 77 at 5 n.1 (JA___) (quoting the Swiss Confederation's *International Judicial Assistance in Civil Matters Guidelines* (3d ed. 2003), at 21 (emphasis added)).

[29] *See* Dkt. 48 (July 15, 2022 Joint Status Report) at 8 (JA___).

### 4. MSC Mischaracterizes the Swiss Authorities' Responses to Its Requests, Which Do Nothing to Validate Its Swiss Law Excuse.

MSC's continued engagement with the Swiss authorities after the TPI's rejection of the Letter of Request was unnecessary for the reasons detailed in the ALJ's decisions, the Commission's rulings under review in this appeal, and the FMC's brief, which, consistent with Circuit Rule 28(d)(2) of this Court, MCS Industries will not repeat here. It is, however, notable that the further responses MSC received from the Swiss authorities did not in any way confirm or support MSC's claimed fear of criminal jeopardy under Swiss law. The FOJ's October 17, 2022 email to MSC's Swiss counsel merely confirmed that, in the FOJ's opinion, another Letter of Request could be submitted, and that, for that reason, "[a]n authorization under Article 271 of the [Swiss] Criminal Code cannot be granted".[30] Nowhere does that opinion state that Article 271 would apply in connection with this case. To the contrary, the opinion explicitly confirms that "this is an act of taking evidence in a civil and commercial matter"[31]—i.e., not a matter involving potential criminal liability to which Article 271 arguably would apply. The subsequent November 7, 2022 written Decision of the Swiss Federal Department of Justice and Police (the "FDJP") procured by MSC's Swiss counsel essentially echoes the FOJ's opinion,

---

[30] Dkt. 59 (Notice of Determination of the Swiss Federal Office of Justice that the Procedures of the Hague Convention Apply to This Proceeding and Must Be Used) at 6 (JA___).

[31] *Id.*

and likewise contains nothing that supports MSC's argument regarding the applicability of Article 271 here despite the absence of potential criminal liability before the Commission.[32]

## D.    MSC's Bait-and-Switches on Arbitration, Discovery, and the Hague Convention Violate MCS Industries' Entitlement to Due Process.

MSC's about-face on several issues in this appeal is not just a matter of intellectual consistency, but also of due process to MCS Industries. As detailed above, MSC pulled a bait-and-switch in this case on the issue of arbitration: not filing a motion to compel arbitration or a motion to dismiss at the outset of the case, waiting until after an adverse decision to file a motion to dismiss that does not even mention the Federal Arbitration Act, and then ultimately arguing the issue only when faced with a decision on default. MSC voluntarily produced documents and communications from its files that it selectively chose in order to advance its own preferred alternative narrative of MCS Industries' claims but then refused to produce dozens of categories of relevant, discoverable documents and communications, including documents and communications from its own appointed booking agents

---

[32] Dkt. 61 (Notice of Issuance of Formal Decision of the Swiss Federal Department of Justice and Police that the Hague Convention Procedures Apply to This Proceeding and Must Be Used) (JA___) & 63 (JA___) (English translation of the FDJP Decision). MSC's naming of these filings notably reinforces the utter contradiction between its position in the case below and its position on appeal regarding the mandatory applicability of the Hague Convention.

outside of Switzerland, and refused to answer *any* of MCS Industries' first set of interrogatories.

MSC likewise pulled a bait-and-switch with MCS Industries and the ALJ, repeatedly insisting on the Hague Convention Letter of Request as the exclusive, necessary procedure for such further discovery, only to claim now that the ALJ and Commission impermissibly ignored 46 U.S.C. Section 41108(c)(2) in the process. MSC should not be rewarded for this pattern of misdirection, which has already cost MCS Industries substantial time, effort, and attorneys' fees, and delayed its recovery in this case, with yet another "bite at the apple".

**E.     MSC's Discovery Refusals and Delays Were Extensive and Prejudicial to MCS Industries, Justifying the Sanction that the Commission Imposed.**

MSC's discovery refusals and delays in this case were extraordinary and unjustified, and materially prejudiced MCS Industries' ability to proceed with its Shipping Act claims. The Commission's brief discusses at length how MSC's conduct fulfilled all three of the factors set forth in *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998), justifying the decision on default against MSC, as well as the reasons why a lesser sanction would have been inadequate, which, again consistent with Circuit Rule 28(d)(2) of this Court, MCS Industries will not repeat here. Several procedural points from the case below, however, bear additional emphasis.

MSC's undue delays began not with its refusal to comply with the ALJ's Order Granting Motion to Compel, but instead with its *earlier* discovery misconduct that resulted in MCS Industries having to file its successful motion to compel in the first place. As detailed above, at the very outset of discovery ***MCS Industries' counsel specifically raised with MSC's counsel the issue of Swiss law and whether it could interfere with discovery, and MSC's counsel stated that it was not aware of any such issues***.[33] MSC's conduct was especially egregious given that, in the contemporaneous *Intermodal* proceeding discussed above, MSC voluntarily produced data that it claimed was "located in Switzerland", demonstrating that MSC's refusals to produce discovery in this action were entirely voluntary.[34] As the ALJ explained in the Initial Decision on Default, at ***any point*** during that time MSC could have ***voluntarily*** complied with its discovery obligations, but chose not to.[35]

Respondent's undue delays continued ***after*** the TPI had rejected the Letter of Request,[36] and ***even after*** the ALJ correctly concluded, consistent with the decisions of several federal courts, that the claimed Swiss blocking statute at issue ***did not***

---

[33] *See* Dkt. 16 Ex. 1 at 3 (JA___).

[34] *See, e.g.*, Dkt. 16 at 2–5 (JA___).

[35] *See* Dkt. 64 (Initial Decision on Default) at 9–12 (JA___).

[36] *See, e.g.*, Dkt. 55 (Order Denying Respondent's Motion for an Extension of Time and Order to Show Cause) at 1 (JA___).

34

*apply* because this case involved no threat of criminal sanction against MSC.[37] Indeed, as MCS Industries noted in the proceeding below, since late November 2021 (approximately four months after this case was filed), except for filings relating to MSC's belated (and unsuccessful) motion to dismiss and MCS Industries' Verified Amended Complaint,[38] virtually *every* filing below was a direct result of MSC's refusal to comply with its discovery obligations.[39]

MSC was well aware of the delays occasioned by its conduct, and of the burden such delays imposed on the ALJ and on MCS Industries. Indeed, MCS Industries repeatedly requested that sanctions be imposed in light of the delay and burden created by MSC's discovery misconduct. In the parties' February 28, 2022 Joint Status Report, MCS Industries noted:

> [B]ecause the delay in obtaining Swiss legal clearance was entirely due to Respondent, which chose to wait over four months after Complainant raised the issue before filing its Memo, and because Respondent could have voluntarily answered Complainant's interrogatories and produced all relevant documents, communications, and information without forcing Complainant to file, and win, a motion to compel, Complainant respectfully suggests that *if Respondent continues in its noncompliance with the Presiding Officer's Order past any new deadline set by the Presiding Officer, then additional sanctions,*

---

[37] *See* Dkt. 64 at 10–12 (JA___). Accordingly, MSC and WSC's discussions of *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979), and *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958), are misplaced and irrelevant.
[38] Dkt. 29–34, 36–39 (JA___).
[39] *See, e.g.*, Dkt. 71 (Complainant MCS Industries, Inc.'s Brief on Remand) at 2–3 (JA___).

*including without limitation an adverse inference and entry of judgment, may become appropriate*.[40]

In the April 4, 2022 Joint Status Report, MCS Industries again raised the issue of MSC's discovery delays, noting that the "now months-long delay in obtaining Swiss legal clearance was entirely due to Respondent, which chose to wait over four months after Complainant raised the issue before filing its memo on the claimed Swiss legal issue", and that "Respondent could instead have answered Complainant's interrogatories and produced all relevant documents, communications, and information on a voluntary basis, avoiding the need to pursue any of these options."[41] In its September 2, 2022 opposition to MSC's motion for a further extension of time, MCS Industries again argued that sanctions, including a decision on default against MSC, were an appropriate remedy for MSC's pattern of delay and noncompliance.[42] Notably, MSC's brief nowhere challenges the calculation of the Commission's sanctions award, which was supported by a declaration and documentary evidence from MCS Industries, or offers any alternative calculation.[43]

---

[40] Dkt. 41 at 8 (JA___) (emphasis added).

[41] Dkt. 43 at 11 (JA___).

[42] Dkt. 53 (Complainant MCS Industries, Inc.'s Opposition to Respondent MSC Mediterranean Shipping Company SA's Motion for an Extension of Time) at 5–6 (JA___).

[43] *See* Dkt. 72 & Exs. 1–5 thereto (JA___).

MSC made its own bed in the proceeding below, and the ALJ and Commission have rightly made MSC sleep in it. MSC should have produced discovery voluntarily, as it did in the *Intermodal* proceeding—but it chose not to. If MSC truly believed discovery would implicate Swiss law issues, it should have disclosed them in September 2021, when MCS Industries first inquired about such issues—but it chose not to. If MSC truly believed the Commission lacked jurisdiction over MCS Industries' Shipping Act claims due to the arbitration clauses in its boilerplate service contracts, it should have filed a motion to compel arbitration—but it chose not to. Instead, MSC followed a deliberate pattern of discovery misconduct resulting, ultimately, in a default sanction expressly authorized by statute. That statutory sanction should be affirmed.

## CONCLUSION

For the foregoing reasons, as well as those stated in the Commission's brief, the Court should deny MSC's petition for review and the other relief that MSC seeks.

Dated:  January 24, 2025

Respectfully submitted,

  /s/ Matthew J. Reynolds
Matthew J. Reynolds
Huth Reynolds LLP
7800 Grampian Court
Chesterfield, VA 23838
(646) 872-9353
reynolds@huthreynolds.com

*Counsel for MCS Industries, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation and type-style requirements of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Circuit Rule 32(e)(2)(B) of this Court, because it contains 9,062 words, excluding the parts of the brief that are excluded by Rule 32(f) of the Federal Rules of Appellate Procedure and Circuit Rule 32(e)(1) of this Court. The brief also complies with the typeface and type-style requirements of Rule 32(a)(5)–(6) of the Federal Rules of Appellate Procedure because it was prepared using Microsoft Word 14-point Times New Roman font.

 /s/ Matthew J. Reynolds
Matthew J. Reynolds

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Matthew J. Reynolds

Matthew J. Reynolds

**INTERVENOR'S ADDENDUM**

# INTERVENOR'S ADDENDUM

## TABLE OF CONTENTS

| Authority | Page(s) |
| --- | --- |
| 46 U.S.C. § 40307(a) | a |
| 46 U.S.C. § 41102(c) | b |
| 46 U.S.C. § 41104(a) | c–d |
| 46 U.S.C. § 41301 | e |
| 46 C.F.R. § 502.141(e) | f |

**46 U.S.C. § 40307. Exemption from antitrust laws**

(a) In General.—The antitrust laws do not apply to—

(1) an agreement (including an assessment agreement) that has been filed and is effective under this chapter;

(2) an agreement that is exempt under section 40103 of this title from any requirement of this part;

(3) an agreement or activity within the scope of this part, whether permitted under or prohibited by this part, undertaken or entered into with a reasonable basis to conclude that it is—

(A) pursuant to an agreement on file with the Federal Maritime Commission and in effect when the activity takes place; or

(B) exempt under section 40103 of this title from any filing or publication requirement of this part;

(4) an agreement or activity relating to transportation services within or between foreign countries, whether or not via the United States, unless the agreement or activity has a direct, substantial, and reasonably foreseeable effect on the commerce of the United States;

(5) an agreement or activity relating to the foreign inland segment of through transportation that is part of transportation provided in a United States import or export trade;

(6) an agreement or activity to provide wharfage, dock, warehouse, or other terminal facilities outside the United States; or

(7) an agreement, modification, or cancellation approved before June 18, 1984, by the Commission under section 15 of the Shipping Act, 1916, or permitted under section 14b of that Act, and any properly published tariff, rate, fare, or charge, or classification, rule, or regulation explanatory thereof implementing that agreement, modification, or cancellation.

**46 U.S.C. § 41102. General prohibitions**

(c) Practices in Handling Property.—A common carrier, marine terminal operator, or ocean transportation intermediary may not fail to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property.

**\* Version Prior to the Enactment of the Ocean Shipping Reform Act of 2022, Pub. L. No. 117-146, 136 Stat. 1272 (2022)**

**46 U.S.C. § 41104. Common carriers**

(a) In General.—A common carrier, either alone or in conjunction with any other person, directly or indirectly, may not—

(1) allow a person to obtain transportation for property at less than the rates or charges established by the carrier in its tariff or service contract by means of false billing, false classification, false weighing, false measurement, or any other unjust or unfair device or means;

(2) provide service in the liner trade that is—

(A) not in accordance with the rates, charges, classifications, rules, and practices contained in a tariff published or a service contract entered into under chapter 405 of this title, unless excepted or exempted under section 40103 or 40501(a)(2) of this title; or

(B) under a tariff or service contract that has been suspended or prohibited by the Federal Maritime Commission under chapter 407 or 423 of this title;

(3) retaliate against a shipper by refusing, or threatening to refuse, cargo space accommodations when available, or resort to other unfair or unjustly discriminatory methods because the shipper has patronized another carrier, or has filed a complaint, or for any other reason;

(4) for service pursuant to a tariff, engage in any unfair or unjustly discriminatory practice in the matter of—

(A) rates or charges;

(B) cargo classifications;

(C) cargo space accommodations or other facilities, with due regard being given to the proper loading of the vessel and the available tonnage;

(D) loading and landing of freight; or

(E) adjustment and settlement of claims;

(5) for service pursuant to a service contract, engage in any unfair or unjustly discriminatory practice in the matter of rates or charges with respect to any port;

(6) use a vessel in a particular trade for the purpose of excluding, preventing, or reducing competition by driving another ocean common carrier out of that trade;

(7) offer or pay any deferred rebates;

(8) for service pursuant to a tariff, give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage;

(9) for service pursuant to a service contract, give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any port;

(10) unreasonably refuse to deal or negotiate;

c

(11) knowingly and willfully accept cargo from or transport cargo for the account of a non-vessel-operating common carrier that does not have a tariff as required by section 40501 of this title, or an ocean transportation intermediary that does not have a bond, insurance, or other surety as required by section 40902 of this title;

(12) knowingly and willfully enter into a service contract with an ocean transportation intermediary that does not have a tariff as required by section 40501 of this title and a bond, insurance, or other surety as required by section 40902 of this title, or with an affiliate of such an ocean transportation intermediary; or

(13) continue to participate simultaneously in a rate discussion agreement and an agreement to share vessels, in the same trade, if the interplay of the authorities exercised by the specified agreements is likely, by a reduction in competition, to produce an unreasonable reduction in transportation service or an unreasonable increase in transportation cost.

**46 U.S.C. § 41301. Complaints**

(a) In General.—A person may file with the Federal Maritime Commission a sworn complaint alleging a violation of this part, except section 41307(b)(1). If the complaint is filed within 3 years after the claim accrues, the complainant may seek reparations for an injury to the complainant caused by the violation.

(b) Notice and Response.—The Commission shall provide a copy of the complaint to the person named in the complaint. Within a reasonable time specified by the Commission, the person shall satisfy the complaint or answer it in writing.

(c) If Complaint Not Satisfied.—If the complaint is not satisfied, the Commission shall investigate the complaint in an appropriate manner and make an appropriate order.

**46 C.F.R. § 502.141 Duty to disclose; general provisions governing discovery.**

(e) *Scope of discovery and limits.*

(1) Unless otherwise limited by the presiding officer, or as otherwise provided in this subpart, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the presiding officer may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at hearing if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

(2) *Limitations on frequency and extent.*

(i) *Specific limitations on electronically stored information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the presiding officer may nonetheless order discovery from such sources if the requesting party shows good cause. The presiding officer may specify conditions for the discovery.

(ii) *When required.* On motion or on its own, the presiding officer may limit the frequency or extent of discovery otherwise allowed by these rules if the presiding officer determines that:

(A) The discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(B) The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(C) The burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the proceeding, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.