[ORAL ARGUMENT NOT YET SCHEDULED]
**No. 24-1007**
(consolidated with No. 24-1262)

---

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

MSC MEDITERRANEAN SHIPPING COMPANY S.A.,

*Petitioner*

v.

FEDERAL MARITIME COMMISSION,

*Respondent*

MCS INDUSTRIES, INC.

*Respondent-Intervenor*

---

On petition for review of orders of the Federal Maritime Commission

---

# REPLY BRIEF OF PETITIONER
# MSC MEDITERRANEAN SHIPPING COMPANY S.A.

---

Michael F. Scanlon
John Longstreth
Christiana K. Goff
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com
christi.goff@klgates.com

*Counsel for MSC Mediterranean*
*Shipping Company S.A.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Petitioner submits the following:

### A. Parties, Intervenors, and Amici

The parties to this proceeding are:

1. Petitioner

    MSC Mediterranean Shipping Company S.A.

2. Respondent

    Federal Maritime Commission

3. Intervenor for Respondent

    MCS Industries, Inc.

4. Amicus

    World Shipping Council

### B. Rulings Under Review

*Order Affirming Initial Decision on Remand*, FMC Dkt. No. 21-05 (Federal Maritime Commission, served July 16, 2024)

*Order Partially Affirming Initial Decision on Default and Remanding for Further Proceedings*, Dkt. No. 21-05 (Federal Maritime Commission, served Jan. 3, 2024)

## C. Related Cases

Petitioners are unaware of any cases related to the current consolidated case.

*/s/ Michael F. Scanlon*

Michael F. Scanlon
John Longstreth
Christiana K. Goff
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com
christi.goff@klgates.com

*Counsel for MSC Mediterranean Shipping Company S.A.*

February 14, 2025
(filed February 18, 2025
due to ecf unavailability)

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................1

RESPONSE TO COUNTERSTATEMENT OF JURISDICTION...................6

RESPONSE TO COUNTERSTATEMENT OF THE CASE............................6

I.    THE COMMISSION HAS NOT ENGAGED IN ANY
      MEANINGFUL WAY WITH THE JURISDICTIONAL
      LIMITATION OF 46 U.S.C. § 40502(F) .....................................................7

II.   THE COMMISSION HAS NOT ENGAGED IN ANY
      MEANINGFUL WAY WITH THE ARBITRATION CLAUSES IN
      THE CONTRACTS UNDERLYING THE CLAIMS IN THIS
      PROCEEDING ...............................................................................12

III.  THE COMMISSION DOES NOT MEANINGFULLY DEFEND
      ITS HOLDING THAT THE AMENDED COMPLAINT STATED
      VALID SHIPPING ACT CLAIMS ................................................14

IV.   THE COMMISSION PROVIDES NO LEGAL OR FACTUAL
      BASIS FOR ITS REFUSAL TO UNDERTAKE CONSULTATIONS
      WITH THE SWISS AS REQUIRED BY 46 U.S.C. 41108(C)(2) .........18

      A.    The Commission Has Misread the Statute ....................................18

      B.    The Commission Misstates Swiss Law, Exactly the Error that
            Proper Consultation Could Have Prevented ..................................21

V.    THE COMMISSION HAS CITED NO FACTS OR PRECEDENT
      WARRANTING A JUDGMENT BY DEFAULT UNDER
      JUDICIAL OR COMMISSION PRECEDENT OR THE STATUTE
      THE COMMISSION RAISED SUA SPONTE ......................................24

VI.   CONCLUSION ...............................................................................28

I

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A/S Ivarans Rederi v. United States*,
   895 F.2d 1441 (D.C. Cir. 1990)........................................................13

*Adenariwo v. FMC*,
   No. 14-1044 (D.C. Cir.) .................................................................2

*Anchor Shipping Co. v. Alianca Navegacao E Logística Ltda.*,
   2006 WL 2007808 (FMC May 10, 2006)......................................9, 12

*\*Calcutt v. FDIC*,
   143 S. Ct. 1317 (2023).................................................................2

*\*Cargo One, Inc. v. Cosco Container Lines Co. Ltd*,
   2000 WL 1648961 (FMC Oct. 31, 2000) .......................1, 7, 10, 15

*City of Oakland v. FMC*,
   No. 12-1080 (D.C. Cir.) .................................................................2

*Cornell v. FMC*,
   No. 14-1208 (D.C. Cir.) .................................................................2

*Crocus Investments, LLC v. FMC*,
   No 21-1199 (D.C. Cir.) .................................................................2

*\*Duke Power Co. v. FERC*,
   864 F.2d 823 (D.C. Cir. 1989).................................2, 9, 12, 14

*EFG Bank v. AXA Equitable Life Ins. Co.*,
   2018 WL 1918627 (S.D.N.Y. 2018)..........................................23-24

*Evergreen Shipping Agency (Am.) Corp. v. FMC*,
   106 F.4th 1113 (D.C. Cir. 2024)......................................................9

*Evergreen Shipping Agency (America) Corp. v. FMC*,
   No. 23-1052 (D.C. Cir.) .................................................................2

*\*Global Link Logistics, Inc. v. Hapag-Lloyd AG*,
   2014 WL 5316345 (ALJ Apr. 17, 2014) .........................................17

*In re: Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 82 (3d Cir.
   2017), ................................................................................11

*Landstar Exp. America v. FMC*,
   569 F.3d 493 (D.C. Cir. 2009) ...........................................11

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024) .......................................................3

*Maher Terminals, LLC v. FMC*,
   No. 15-1035 (D.C. Cir.) ......................................................2

*Milner v. Department of the Navy*,
   562 U.S. 562 (2011)...........................................................20

*Puerto Rico Ports Authority v. FMC*,
   No. 06-1407 ........................................................................2

*Santa Fe Discount Cruise Parking, Inc. v. FMC*,
   No. 17-1089 ........................................................................2

*United States v. Woods*,
   571 U.S. 31 (2013)............................................................20

*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv.,
   LLC*, 776 F.3d 1 (D.C. Cir. 2015).....................................25

**Western Overseas Trade and Dev. Corp. v. ANERA*,
   26 S.R.R. 874 (FMC 1994) ................................................7

**Statutes**

9 U.S.C. § 2 ...........................................................................12

28 U.S.C. § 2344 .....................................................................2

28 U.S.C. § 2348 ......................................................................2

46 U.S.C. § 40102(21) ...........................................................16

46 U.S.C. § 40502(f).........................................1, 6-7, 10-11, 15

46 U.S.C. § 41104(a)(2) .........................................................15

46 U.S.C. §§ 41104(a)(4) and (8) ........................................................16

46 U.S.C. §§ 41104(a)(5) and (9) ........................................................16

46 U.S.C. § 41108(c)(2) ................................................3, 5-6, 18-21, 27

46 U.S.C. § 41302(d) ...........................................................................26

\* Authorities upon which we chiefly rely are marked with one
asterisk.

\*\* *Authorities published in the Pike & Fischer Shipping Regulations
Reports (S.R.R.), which are not readily available on an electronic
database such as Westlaw or Lexis, are marked with two asterisks.
These cases are attached in an addendum to Petitioner's opening
brief.*

## <u>GLOSSARY</u>

| | |
|---|---|
| Act or Shipping Act | Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101-41310 |
| ALJ | Chief Administrative Law Judge of the Federal Maritime Commission Erin Wirth |
| Commission or FMC | Federal Maritime Commission |
| FMC Br. | Brief of Respondent Federal Maritime Commission, filed January 17, 2025 |
| Geneva Court | Court of First Instance in Geneva, Switzerland |
| Hague Convention | Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters |
| Hague Procedures | Government-to-government procedures under the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters |
| MCS Br. | Brief of Intervenor MCS Industries, Inc., filed January 24, 2025 |
| Pet. Br. | Corrected Brief of Petitioner MSC Mediterranean Shipping Company SA, filed December 26, 2024. |
| Swiss Authority | Federal Department of Justice and Police of Switzerland |

| | |
|---|---|
| Swiss Justice Office | Federal Office of Justice of Switzerland |
| 1998 Act | Ocean Shipping Reform Act of 1998, Pub. L. 105-258 |

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Federal Maritime Commission ("Commission or FMC") does not have jurisdiction to hear breach of contract claims.   46 U.S.C. § 40502(f).   The Commission has held that for this provision "to have meaning, it must have been intended to preclude the filing of some complaints of Shipping Act violations, and not just breach of contract claims, as such claims would not be actionable before the Commission in any event." *Cargo One, Inc. v. Cosco Container Lines Co. Ltd*, 2000 WL 1648961, at *14 (FMC Oct. 31, 2000).[1]  Claims "premised on the obligation to meet one's contract commitments" are thus "outside its jurisdiction," even if they also might state Shipping Act claims.  *Id.*

The Commission ignored this precedent and rendered it meaningless in holding that it had jurisdiction over claims by Intervenor MCS Industries, Inc. ("MCS Industries") against Petitioner MSC Mediterranean Shipping Co., S.A. ("Mediterranean Shipping").  It simply observed that the private complaint before it stated Shipping Act claims that it had a "duty" to address and undertook no further analysis.  *See* JA _____ [ROA  64 at 15; 68 at 2].  The Commission thus improperly considered  claims that were directly and unquestionably grounded in  allegations

---

[1] The Commission has stated that this  is narrower  than its  prior test, but that issue is not raised here because the amended complaint in this case should have been dismissed under either standard.   *See Cargo One*, WL 2000 1648961, at *14 (describing the prior  standard as giving dispositive weight to the relief sought).

that Mediterranean Shipping had not met its contractual obligations.  *See* Pet. Br. at 3, 25.

The Commission's brief makes no attempt to supply the analysis required under its own precedent.[2]  Nor could it properly do so in any event, since the orders it is defending contain no such analysis.  *See, e.g., Calcutt v. FDIC*, 143 S. Ct. 1317, 1321 (2023) (agency decision cannot be upheld on grounds not stated by the agency).  MCS Industries' brief makes the error even more glaring, as it simply quotes its Shipping Act claims and cites to several decisions of Commission administrative law judges holding that stating a Shipping Act claim is enough.  Int. Br at 6-7.  The Commission likewise argues that the parties' arbitration clause was not relevant because Shipping Act claims were stated, ignoring this Court's caution that an agency has no "license to disregard mandatory arbitration clauses in routine contract disputes."  *Duke Power Co. v. FERC*, 864 F.2d 823, 831 (D.C. Cir. 1989).  This alone requires  that the Commission's order be reversed and the case remanded to the Commission to dismiss the underlying proceeding.

---

[2] The United States is a statutory party to this proceeding.  *See* 28 U.S.C. §§ 2344, 2348.  It "takes no position with respect to the order of the Federal Maritime Commission under review," Doc. #2094917, filed Jan, 17, 2025, although it almost invariably joins the Commission's briefs in this Court.  *See e.g. Evergreen Shipping Agency (America) Corp. v. FMC*, No. 23-1052; *Crocus Investments, LLC v. FMC*, No 21-1199; *Santa Fe Discount Cruise Parking, Inc. v. FMC*, No. 17-1089; *Maher Terminals, LLC v. FMC*, No. 15-1035; *Cornell v. FMC*, No. 14-1208; *Adenariwo v. FMC*, No. 14-1044; *City of Oakland v. FMC*, No. 12-1080; and *Puerto Rico Ports Authority v. FMC*, No. 06-1407.

If the Court nonetheless determines that further proceedings are necessary, it will need to address other errors in the Commission's Order.

First, the Commission's holding that the amended complaint stated valid Shipping Act claims contradicts the plain language of the Shipping Act which, among other things, makes clear that a claim of discrimination between shippers can be made only under tariff carriage and not contract carriage.

Second, the Commission likewise contradicts plain statutory language in arguing that it properly dispensed with the consultation procedures required by 46 U.S.C. § 41108(c)(2), or equivalent procedures, even though Mediterranean Shipping alleged, and supported with unchallenged authority interpreting Swiss law, that it would be subject to criminal legal risk if it complied with a discovery order without them. The Commission's brief, like the order under review, never quotes the statutory language, but purports to limit the consultation requirement to tariff or vessel clearance proceedings, and to add inchoate additional requirements to its applicability. Neither limitation appears in the statute. The Commission's approach would have been unreasonable even before *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244, 2261, 2266 (2024) and is plainly contrary to law now.

Because it ignores the consultation requirement, the Commission also arrogates the power to determine Swiss law and gets it wrong. The Commission states erroneously that a decision of a Swiss Court of First Instance ("Geneva

3

Court") that government-to-government procedures under the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Procedures") were unavailable—a decision later repudiated at the highest level of the Swiss government—resolved Mediterranean Shipping's dilemma and made its further pursuit of those procedures "unnecessary." FMC Br. at 1, 41-42, 53. Record evidence ignored by the Commission and the administrative law judge hearing the case ("ALJ")expressly contradicted this finding. *See* JA ____, ____ [ROA 56, Ex. 1 at 5-6, Ex. 2 at 9-11; 63 at 3-4]. The Geneva Court decision increased Mediterranean Shipping's legal risk by not authorizing use of procedures necessary to assure compliance with Swiss law. Faced with this untenable situation, Mediterranean Shipping promptly sought and obtained a solution, but the Commission and the ALJ refused to pursue it. *See* JA ____ [ROA 63].

As part of this improper attempt to divine the requirements of Swiss law rather than pursue the consultation procedures, the ALJ (but not the Commission's Order) referred to nonprecedential decisions of courts in this country to suggest Mediterranean Shipping faced no jeopardy in Switzerland. *See* FMC Br. at 40-41. Mediterranean Shipping provided the opinion of Swiss counsel, supported by an analysis of legal scholars, explaining why this interpretation was incorrect under Swiss law. *See* JA ____ [ROA 56, Ex. 1-2]. The Commission's failure to follow the required consultation procedures thus led to exactly the error the consultation

4

process is designed to avoid, a misstatement of Swiss law that left Mediterranean Shipping facing untenably conflicting legal obligations.

*Third,* even if it were assumed, contrary to the foregoing, that Mediterranean Shipping were at fault for not providing the ordered discovery, the Commission wholly failed to justify the entry of a default judgment. The Commission cites no precedent upholding a default under facts anything like those here, and precedent is directly to the contrary. The Commission's cursory discussion of alternatives short of default was entirely inadequate, and MCS Industries' discussion of the point repeatedly misstates the record to try to justify its excessive rhetoric.

This Court should grant the petition for review, vacate the default judgment, and order the Commission to dismiss the underlying proceeding for lack of jurisdiction. If the Court determines that the Commission does have jurisdiction, it should likewise vacate the default judgment and order the Commission to undertake consultations under 46 U.S.C. § 41108(c)(2) or use the Hague Procedures. The Court should also rule that the Shipping Act does not provide a cause of action for breach of a service contract simply because it is a filed agreement, or for discrimination between shippers as to service contracts.

## RESPONSE TO COUNTERSTATEMENT OF JURISDICTION

The Commission's counterstatement of jurisdiction, like the Orders under review, ignores the limitation on its jurisdiction of 46 U.S.C. § 40502(f), and states that jurisdiction exists if a Shipping Act claim is stated. This view is inconsistent with the Commission's own precedent and renders § 40502(f) a nullity.

## RESPONSE TO COUNTERSTATEMENT OF THE CASE

The Commission's counterstatement of the case does not identify any instance where Mediterranean Shipping misstated or mischaracterized the record, but contains misstatements and omissions of its own. For example, after the Geneva Court ruled erroneously that the Hague Procedures were not available, MCS Industries itself insisted that some other form of consultation under 46 U.S.C. § 41108(c)(2) was necessary, and made no suggestion of impermissible delay. *See* JA _____ [ROA 48 at 2]. Similarly, the Commission states that it was not until "late February 2022" that Mediterranean Shipping first raised the issue of its potential criminal liability for production under the December 8, 2021, discovery order. FMC Br. at 10. In fact, Mediterranean Shipping expressly noted twelve days later that compliance "will likely require governmental approvals under Swiss law," JA _____, [ROA 28 at 1], and its position that the Hague Procedures or some other form of consultation was necessary has been entirely consistent. *See*, *e.g.*, JA _____, _____ [ROA 40 at 1, ROA 56].

6

## I.   THE COMMISSION HAS NOT ENGAGED IN ANY MEANINGFUL WAY WITH THE JURISDICTIONAL LIMITATION OF 46 U.S.C. § 40502(F)

The Commission's precedent required it, when applying the jurisdictional limitation of 46 U.S.C. § 40502(f), to examine "whether a complainant's allegations are inherently a breach of contract" and "premised on the obligation to meet one's contract commitments." *Cargo One,* 2000 WL 1648961, at \*14.  A claim can be barred under this limitation even if it is "couched in terms of alleged violations of the 1984 Act." *Western Overseas Trade and Dev. Corp. v. ANERA*, 26 S.R.R. 874, 884 (FMC 1994).   The Commission's brief barely mentions *Cargo One*, and like the orders under review entirely fails to undertake any analysis of whether the claims at issue are inherently contractual or premised on breach of contract claims.  It does not deal with *Western Overseas* at all.  It thus does not engage with Mediterranean Shipping's demonstration that MCS Industries' claims are expressly premised on an alleged breach of contract.  *See* Pet. Br. at 24-31.  Indeed, the Commission's brief quotes the ALJ's statement of the claims as that Mediterranean Shipping "disregarded service contracts."  FMC Br. at 9.

Absent the required  analysis, the Commission is left to argue that the claims "are distinct from and go beyond ordinary contract claims" because there are "extensive, detailed factual allegations to support each of [them]." *Id.*, at 19, 22.  Regardless of how much verbiage they contained, each of those claims depended

7

directly on the assertion that Mediterranean Shipping had breached its contract.  An allegation that a breach of contract constitutes an unreasonable practice because it was allegedly undertaken for some improper purpose (Count I) is an allegation of breach of contract.  So too were the allegations that the alleged contract breaches constituted a failure to operate in accordance with a filed agreement, namely the service contracts themselves (Count II), discrimination (Counts III and IV) and a refusal to deal (Count V).  The Commission argues that Mediterranean's conduct was alleged to be "unreasonable," "systematic," and part of a "scheme to withhold service," FMC Br. at 35, but a breach of contract claim does not change its character simply based on  labels.

The Commission also asserts that the "involvement of contracts is unremarkable" in a Shipping Act claim.  FMC Br. at 22.   Contracts are not merely "involved" here. Each claim depends directly on assertions that the contract had been breached, and none states a claim unless a breach of contract is first found.  The Commission also states that the allegations include "in some cases review of the carrier's broader practices beyond those directly affecting the complainant."  FMC Br. at 23.  Whatever this may mean, claims based on a breach of contract cannot be saved by the suggestion that other parties' contracts might have been breached too (or in the case of the discrimination claim, that other parties' contracts may not have been breached).  Again, the question is not whether the claims include Shipping Act

8

language beyond what might be necessary to state a breach of contract claim; it is whether they are inherently contractual and necessarily require the Commission to decide breach of contract matters outside its jurisdiction.  They do.

The Commission cites *Anchor Shipping Co. v. Alianca Navegacao E Logística Ltda.*, 2006 WL 2007808, at *7-11 (FMC May 10, 2006) as recognizing its "duty to protect the public by ensuring that service contracts are implemented in accordance with the Shipping Act." FMC Br. at 25.  This *ipse dixit* argument ignores the limitation on the Commission's jurisdiction that it cannot consider contract-based claims.  *Anchor Shipping* explains  that "under the Shipping Act the agency 'regulates the content as well as the conduct' of such contracts," *id.*, but that is exactly the distinction Mediterranean Shipping pointed out in its opening brief.  *See* Pet. Br. at 30-31, 33-34.   The Commission has not been asked to regulate the "content of the contracts" here in any way, for example, by overriding a contractual provision to achieve some regulatory goal as it has sought to do in its cases regulating detention and demurrage charges.  *See Evergreen Shipping Agency (Am.) Corp. v. FMC*, 106 F.4th 1113, 1117-18 (D.C. Cir. 2024) (Commission's jurisdiction not challenged but its decision held arbitrary and capricious).  Nor is it being asked to determine whether a contract is consistent with its regulatory mandate, as was the case in *Duke Power*, as Mediterranean Shipping also noted in its opening brief.  Pet. Br. at 33-34.  Instead, here the Commission was called upon to adjudicate whether

9

Mediterranean Shipping had, in the Commission's words, "disregarded service contracts" for some allegedly improper purpose. FMC Br. at 9. The Commission has never addressed this distinction.[3]

The Commission protests that it has not "rendered 46 U.S.C. § 40502(f) meaningless" as "the category of ordinary contract claims the statute excludes from FMC jurisdiction remains a large one." FMC Br. at 24. But if the Commission's reasoning here is enough then the provision is meaningless, as the Commission itself noted in *Cargo One*. 2000 WL 1648961, at *14. And the proof is in the pudding; the Commission does not cite to any precedent where it recognizes such a "large" category of claims, or to any case in the last ten years where it has found subsection 40502(f) to limit its jurisdiction. To the contrary, the Commission cites only to a series of recent cases where administrative law judges have allowed claims to go forward based on the same inadequate analysis the Commission accepted here. *See* FMC Br. at 28-29. The Commission notes that one of those cases found against the complainant on the merits, FMC Br. at 29 n.3, but an agency's usurpation of jurisdiction is not saved merely because it ultimately rejects a claim it should never have decided to begin with.

---

[3] Intervenor notes that "Section 40502(f) does not deprive the Commission of jurisdiction over all disputes about service contracts," Int. Br. at 9, but under the Commission's reading the statute does not preclude jurisdiction over *any* such disputes.

10

Finally, MCS Industries seeks to bolster the Commission's position by citing *In re: Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 82 (3d Cir. 2017), in which the Third Circuit held that the Shipping Act preempts federal antitrust and state antitrust and related laws. Subsection 40502(f) was not an issue in that case, and so it does not advance the Commission's cause. There is also no basis to suggest that applying the jurisdictional limitation here might leave anticompetitive actions in ocean shipping without a remedy. Indeed, in this case the original complaint included numerous allegations of collusive and anticompetitive behavior, and Mediterranean Shipping did not move to dismiss it until the amended complaint entirely abandoned those allegations, without explanation, making clear that the claims in this proceeding were based entirely on the asserted breach of bilateral contracts between the parties.

This is not the first time the Commission has been before this Court after failing to deal with express limitations on its jurisdiction. *See Landstar Exp. America v. FMC*, 569 F.3d 493, 498 (D.C. Cir. 2009) (rejecting the Commission's attempt to exercise jurisdiction over forwarder agents because "neither courts nor federal agencies can rewrite a statute's plain text to correspond to its supposed purposes."). The Commission's assertion of jurisdiction here is likewise inconsistent with a plain statutory limitation on its jurisdiction and should be rejected.

11

## II.  THE COMMISSION HAS NOT ENGAGED IN ANY MEANINGFUL WAY WITH THE ARBITRATION CLAUSES IN THE CONTRACTS UNDERLYING THE CLAIMS IN THIS PROCEEDING

The Commission's dismissal of any obligation to give effect to the arbitration clauses in the agreements between the parties mirrors its lack of analysis of the jurisdictional limitation itself.  The Commission again relies on its *ipse dixit* statement in *Anchor Shipping* that it has a "duty" to consider Shipping Act claims whether or not an arbitration clause exists, or an arbitration is already pending.  FMC Br. at 31.  The Commission also ignores this Court's instruction in *Duke Power* that an agency cannot "disregard mandatory arbitration clauses in routine contract disputes," and instead cites *Duke Power*'s inapposite discussion of an agency's exercise of its regulatory authority.  *Id.*[4] 1.

Again, this is not a case where the Commission has been called upon to determine if contracts or their terms meet regulatory requirements.  Rather, the Commission has been asked to hold that alleged breaches of contract are unreasonable and discriminatory practices, refusals to deal, and failures to abide by

---

[4] Although this Court's direction that an agency may not disregard an arbitration clause is clear, the Commission expresses confusion as to which provision of the Federal Arbitration Act might impose such a duty.  FMC Br. at 29-30.  The Act provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce" providing for arbitration "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  *See* Pet. Br. at 31-33 (citing numerous cases, none addressed by the Commission, recognizing the "federal policy favoring the liberal enforcement of arbitration clauses," including the need to resolve any ambiguities in favor of arbitration).

filed agreements, namely the contracts themselves. The parties agreed that breach of contract claims would be arbitrated, not shoehorned into alleged Shipping Act violations to give one party a preferred forum.

MCS Industries quotes this Court's decision in *A/S Ivarans Rederi v. United States*, 895 F.2d 1441 (D.C. Cir. 1990), at length even though the Commission has neither cited nor relied on it. Int. Br. at 13. *Ivarans* held that "the Commission always retains its statutory right to hear complaints that a filed agreement has been *modified* through an arbitration decision." 895 F.2d at 1446. That is not at issue here. MCS Industries did not ask the Commission to modify its service contracts, or to hold that an arbitration award improperly amended them in violation of regulatory requirements. It asked the Commission to hold that Mediterranean Shipping breached the contracts as written for improper purposes, and that these breaches violated the Shipping Act. Again, while an agency may retain the right to modify contracts under its regulatory authority, or to determine if a contract as modified by an arbitrator meets statutory requirements, it cannot ignore arbitration provisions simply by asserting its own jurisdiction, as the Commission has done here.

MCS Industries' other arguments are of no weight. It asserts that Mediterranean Shipping's invocation of the arbitration clause was somehow retaliatory, Int. Br. at 11, 16, but that is an argument for the arbitrators (who have

rejected it) and not this Court. The parallel arbitration does show the clear harm of the Commission's usurpation of authority—duplicative litigation. Intervenor also makes much of the fact that it went to the Commission first before the arbitration was initiated, *id*. at 16, but jurisdictional limitations do not yield to such tactics. Finally, other than to miscite *Duke Power,* neither the Commission nor its intervenor deal with any of the authority Mediterranean Shipping cited on this issue, just as the Commission did not address it in the orders under review.

## III. THE COMMISSION DOES NOT MEANINGFULLY DEFEND ITS HOLDING THAT THE AMENDED COMPLAINT STATED VALID SHIPPING ACT CLAIMS

The Commission's attempts to defend the holdings in the orders that the amended complaint stated plausible and legally sufficient claims confirm the deficiencies in the claims. Faced with the fundamental incompatibility of MCS Industries' claims that Mediterranean Shipping engaged in an elaborate scheme to breach its contracts in order to sell contractually obligated space on the spot market and to coerce a surcharge rather than simply invoke the termination clause, *see* Pet. Br. at 8, the Commission fails to address the illogic and simply responds that Mediterranean Shipping may not have wanted to jeopardize a "long-term interest in retaining service-contract customers" or may not have undertaken the "most savvy or logical means to a particular economic end." FMC Br. at 32. This speculation is just as implausible as MCS Industries' claims. Under the Commission's theory,

14

Mediterranean Shipping did not want to jeopardize its relationship with a shipper by exercising a contractual right, but chose to engage in a protracted campaign of contract noncompliance instead. The Commission cannot avoid the obvious absurdity of that speculation by terming such conduct as merely "unsavvy." And contrary to the Commission's assertion, this ground for dismissal applies to Counts I and II of the amended complaint just as to the others.

As to Count II, which alleged failure to operate in accordance with a filed agreement under 46 U.S.C. § 41104(a)(2), Mediterranean Shipping has shown that this cannot state a claim based on alleged breaches of service contracts as the filed agreements, as that would directly conflict with subsection 40502(f)'s prohibition on the Commission's jurisdiction over such claims. Pet. Br. at 27. The Commission never explains how such a claim could be allowed without rendering subsection 40502(f) a complete nullity. The Commission has not cited, and Mediterranean Shipping has not located, any prior case where the Commission has found a violation of paragraph 41104(a)(2) based on alleged breach of a service contract. *See Cargo One*, 2000 WL 1648961, at *14 (absent very unusual circumstances, any claim that a carrier violated 46 U.S.C. § 41104(a)(2) is the equivalent of a breach of contract claim and must be dismissed). Even if the Commission had a legitimate regulatory purpose in applying paragraph 41104(a)(2) to, for example, a carrier's attempt to avoid a statutory or regulatory requirement applicable to service contracts, it has no

15

jurisdiction to entertain a claim of breach of contract simply by rebranding is as a failure to comply with the terms of a filed service contract. In the context of this case, the two are one and the same.

Counts III and IV allege that Mediterranean's various contract breaches discriminated against MCS Industries, but the Shipping Act does not permit claims of discrimination among shippers as to contract carriage as opposed to carriage under a tariff, only claims of discrimination directed against ports. *See* Pet. Br. at 35. Rather than applying the plain language of the Act distinguishing tariff and contract carriage on this point, *compare* 46 U.S.C. §§ 41104(a)(4) and (8) (for tariffs, prohibiting "any" discrimination and "any" unreasonable preference or disadvantage) *with* 46 U.S.C. §§ 41104(a)(5) and (9) (for service contracts, prohibiting discrimination and unreasonable preference or disadvantage only "with respect to any port"), the Commission argues without any support in the statute that such claims are permissible because only shippers can enter into service contracts. FMC Br. at 33. Congress surely knew that, *see, e.g.,* 46 U.S.C. § 40102(21) (defining service contract); yet expressly chose to limit discrimination claims to discrimination *only* "with respect to any port." The Commission entirely ignores this limitation.

*Global Link Logistics, Inc. v. Hapag-Lloyd AG*, 2014 WL 5316345 (ALJ Apr. 17, 2014), a decision the ALJ and the Commission orders entirely ignored, discusses

16

the legislative history of this statutory distinction at length should the Court wish to confirm what is made clear by the statutory language.  *See* Pet. Br. at 36-37.  The Commission's brief seizes on the fact that *Global Link* referred only to rate discrimination and suggests that all other forms of discrimination against shippers are cognizable.  FMC Br. at 33-34.  The statute makes no such distinction, and *Global Link* itself never suggests it does.  The two nondiscrimination provisions applicable to service contracts are applicable *in their entirety* only to discrimination "with respect to any port."  The Commission's brief also argues that the pertinent legislative history should be ignored because the statutory language proposed at the time limited the reach of the statute to discrimination against "localities" and not "ports."  *Id.*  Neither version prohibited discrimination against shippers, and the Commission does not explain why the change from "localities" to "ports" should make any difference for this purpose.

As to Count V, the Commission concedes that the basis of the claim was "alleg[ed] failures to provide vessel space at agreed rates."  FMC Br. at 35.  This alone requires its dismissal as an inherently contractual claim, and it does not become less so just because the breaches are alleged to be "unreasonable," "systematic," and part of a "scheme."  The Commission does not even attempt to deal with case law demonstrating that the allegation that Mediterranean Shipping did

17

not provide the contractual allocation MCS Industries "needed" does not state a claim.  *See* Pet. Br. at 39.

## IV.  THE COMMISSION PROVIDES NO LEGAL OR FACTUAL BASIS FOR ITS REFUSAL TO UNDERTAKE CONSULTATIONS WITH THE SWISS AS REQUIRED BY 46 U.S.C. 41108(C)(2)

As set out above, after the ALJ directed use of the Hague Procedures and the Geneva Court ruled—erroneously as later confirmed by the Swiss Minister of Justice—that those procedures were not available, both parties submitted that further consultations were needed to resolve the impasse.  *See* JA ____ [ROA 48 at 2, 7]. MCS Industries reiterated its position that the statute required them; Mediterranean Shipping proposed that correcting the error so that the Hague Procedures could be used would be the most efficient way to consult, and neither party argued for immediate production.  *Id.*  Nonetheless, the ALJ reversed course, overrode the parties, and ordered production.  The Commission's approval of this startling about-face is wrong on every level.

### A.    The Commission Has Misread the Statute

The Commission's brief, like the orders under review, entirely ignores the plain language of the statutory requirement, which it never quotes in full, to argue that it does not apply "outside the context of the potentially severe tariff-suspension and vessel-clearance penalties available under section 41108(c)(1)."  FMC Br. at 49. This argument was not raised by any party, by the ALJ, or in the Commission's

January 2024 order affirming the default, and appeared for the first time in the July 2024 Order.  JA ____ [ROA 78 at 23] (asserting that "there was no need earlier to explore all the infirmities in Mediterranean's argument.").  Indeed, the ALJ's Initial Decision awarding a default judgment did not even address paragraph 41108(c)(2).  The Commission's brief discussion of the issue in the July Order makes no mention of the language of paragraph 41108(c)(2), much less explain how it would be proper to read a limitation into the provision that is not contained or even hinted at in the language of that paragraph.  *Id*.  Like the Commission's brief, it simply notes that paragraph 41108(c)(1) deals with tariff suspension and vessel clearance penalties and then tries to read that limitation into paragraph 41108(c)(2).

The most basic problem with this newly-invented argument is that paragraph (c)(2) does not refer to (c)(1), much less incorporate a limitation based on it.  To the contrary it applies to *any* foreign law defense of a "failure to comply with a subpoena or discovery order."  To the extent that (c)(1) is relevant to this provision, it is to confirm that (c)(2) is broader than (c)(1).  First, (c)(2) refers to a "subpoena *or discovery order*," while (c)(1) refers only to a "subpoena under section 41303."  Second, section 41303 itself is broadly applicable to any "investigation or adjudicatory proceeding," not just one where a certain penalty is sought.  The

19

limitation the Commission seeks to craft in paragraph 41108(c)(2) cannot be squared with the plain language of the statute.[5]

Not content with inventing one limitation on the applicability of paragraph 41108(c)(2), the Commission goes on to invent another, namely that Mediterranean Shipping was required to make some inchoate showing as to its ability to comply with the order. *See* FMC Br. at 4 (arguing that "the Commission properly interpreted [41108(c)(2)] to require at least a more specific showing than Mediterranean made here"). Again, there is no support for this limitation in the statute, which merely requires a carrier to "allege[] that information or documents located in a foreign country cannot be produced because of the laws of that country." In any event, Mediterranean Shipping went far beyond mere allegations, providing confirmation from the Swiss government that the Hague procedures were applicable and providing several opinions of Swiss counsel and an opinion of Swiss academic legal experts supporting its position that the order placed it in legal jeopardy and that the act of production would create that risk regardless of the location of the documents.

---

[5] The Commission cites legislative history, which of course cannot be used to rewrite the plain language of a statute. *See United States v. Woods,* 571 U.S. 31, 47 n.5 (2013) (refusing to consider legislative history where statutory text unambiguous); *Milner v. Department of the Navy*, 562 U.S. 562, 572 (2011) (refusing to allow "ambiguous legislative history to muddy clear statutory language").

*See* JA ____, ____, ____ [ROA 63, 40, 56, Ex. 1-2].  The record contains no contrary Swiss legal opinion.

Noting that MCS Industries "itself has at times described the section 41108(c)(2) procedure as mandatory in the current situation," *see*, *e.g.*, JA ___ [ROA 43 at 7], the Commission protests "that would not control the Commission's independent determination."  FMC Br. at 51. The point, however, is that faced with the plain language of paragraph 41108(c)(2), it considered consultations mandatory, even after the Geneva Court's ruling, and not the cause of prejudicial delay.  Only the Commission seeks to add nonexistent limitations and requirements to the statute.

### B.    The Commission Misstates Swiss Law, Exactly the Error That Proper Consultation Could Have Prevented

The Commission misstated Swiss law in numerous ways, most basically by assuming that the Geneva Court's ruling that the Hague Procedures were inapplicable resolved the separate question of Mediterranean Shipping's risk and made those procedures or any other form of consultation "unnecessary."  *See* FMC Br. at 1, 41-42, 53.  Not only was the Geneva Court in error, as confirmed by the Swiss Minster of Justice, *see* JA ____ [ROA 63 at 3-4], but that court did not address the applicability of Section 271, much less rule or have the ability to rule that Mediterranean Shipping would face no jeopardy under that statute if it complied.  *See* JA ____ [ROA 47, Ex. 2 at 7].  Both parties thus advised the ALJ that further consultations were necessary.  *See* JA ____ [ROA 48 at 2, 7].

21

When the ALJ nonetheless ordered production, Mediterranean Shipping acted swiftly to obtain a resolution by requesting a waiver of Section 271 so that it could proceed without risk. Directly contrary to the Commission's repeated misstatements of Swiss law, the Swiss Minister of Justice did *not* state that a waiver was "unnecessary" because the Geneva Court had resolved the matter. To the contrary her office denied the waiver on the basis that the Hague Procedures were both available and required to be used. JA ____ [ROA 63 at 3-4]. The ALJ and Commission refused to accept this authoritative determination of Swiss law on the basis that Mediterranean Shipping had improperly "gone around the court." JA ____ [ROA 68 at 2]. This arrogated the power to decide proper Swiss procedural practice as well as Swiss substantive law.

Having improperly refused consultations to obtain a proper reading of Swiss law, and disregarded the authoritative construction of Swiss law that Mediterranean Shipping was nonetheless able to obtain, the ALJ went on to determine for herself that Mediterranean Shipping's "reliance on the Swiss Criminal Code" was "groundless." FMC Br. at 50. In doing so, the ALJ rejected advice from Swiss counsel and Swiss legal scholars that was uncontradicted by any evidence in the record, and instead relied on unpublished nonprecedential decisions of *U.S.* courts, not Swiss courts, to conclude that Article 271 does not apply unless there are criminal consequences under U.S. law for the production. FMC Br. at 40-42; JA

_____ [ROA 68; 78] (citing *EFG Bank v. AXA Equitable Life Ins. Co.*, 2018 WL 1918627 (S.D.N.Y. 2018) and *Belparts Grp., N.V. v. Belimo Automation AG,* 2022 WL 1223018, at *5 (D. Ct. 2022), which followed *EFG Bank*.).  This was also error.

Swiss counsel directly addressed *EFG Bank*, stating it was out of date and could not be confidently relied on when, as here, the production at issue is compelled by order.  Swiss counsel pointed to the more recent case of a Swiss asset manager found criminally liable despite not facing criminal sanctions in the foreign proceeding for the production.  JA _____ [ROA 43, Second Memorandum on Swiss Law at 4].  The ALJ refused to accept this advice on the asserted basis that evidence must "*fall[] within the scope of international judiciary assistance*" for jeopardy to attach.  JA _____ [ROA 64 at 11] (emphasis in original).  This compounded the errors of relying on the incorrect Geneva Court ruling that the Hague Procedures were not available and refusing to consider the authoritative later advice that they were.

*EFG Bank* also relies upon a Swiss ruling with very different facts where the parties had agreed to the production.  *See* 2018 WL 1918627 at *2 (citing Swiss decision  finding "the parties under[took] to mutually surrender certain documents" and that there was no order by a foreign authority compelling production but merely "orders allowing agreements between the parties.").  Mediterranean Shipping was by contrast compelled to produce the discovery, with consequences that were not merely procedural in nature but included immediate sanction and default, raising the

problem of competing sovereign compulsions that comity is designed to address. Again, the attempt to discover Swiss law based on nonprecedential U.S. law sources, rather than from the Swiss themselves as the consultation procedures provide, led the Commission into error.

Finally, whatever the wisdom or accuracy of the *EFG Bank* court's attempt to determine Swiss law, that court was not subject to a statutory consultation requirement.  The Commission was, despite its efforts to rewrite the statute to avoid that obligation.  There was no basis for its failure to follow the procedures the Swiss government expressly outlined, much less to have defaulted Mediterranean Shipping for working to obtain that compliance mechanism to resolve its legal risk.

## V.     THE COMMISSION HAS CITED NO FACTS OR PRECEDENT WARRANTING A JUDGMENT BY DEFAULT UNDER JUDICIAL OR COMMISSION PRECEDENT OR THE STATUTE THE COMMISSION RAISED SUA SPONTE

The Commission's discussion of the default issue is based on its erroneous arguments that consultations were not required and that Mediterranean Shipping delayed the proceeding by raising "baseless" concerns under the Swiss blocking statutes.  FMC Br. at 36-54.  These conclusions are erroneous as a matter of law as discussed above, and therefore also constitute an abuse of discretion.   The Commission does not dispute that default judgments are reserved for the most extreme cases generally involving a complete failure to participate or willful disobedience without any plausible excuse.  *Wash. Metro. Area Transit Comm'n v.*

*Reliable Limousine Serv., LLC*, 776 F.3d 1, 6 (D.C. Cir. 2015). It offers some rhetoric that Mediterranean Shipping engaged in a "campaign of officious misdirection," FMC Br. at 1, but there was no misdirection—Mediterranean Shipping consistently stated it could not produce compelled discovery without authorization and sought and received explicit rulings from the Swiss government to resolve the matter that the Commission simply refused to consider.

To the extent the case was "effectively brought . . . to a standstill," FMC Br. at 48, it was because the ALJ declined the parties' entreaties to engage in further consultations rather than pursuing the path the Swiss authorities confirmed was open. The Commission cites no precedent approving a default judgment under anything like these circumstances and addresses contrary precedent by repeating its incorrect assertions as to Swiss law. FMC Br. at 3, 36. Nor did the ALJ or the Commission make any attempt to assess the importance of the outstanding discovery to the issues in the case, but merely asserted it was in a number of different unexplained "categories." *Id.* at 45; JA _____ [ROA 64 at 19].

MCS Industries' approach to the issue is to string together a series of hyperbolic statements, none of which undermine any of Mediterranean Shipping's basic assertions. These need not all be addressed, but a few examples make the point. MCS Industries says that "MSC ***never produced a single document***" in response to one of its document requests, Int. Br. at 21 (emphasis in original), but

25

MCS Industries likewise refused to provide any documents while the parties pursued a resolution to the Swiss law issues. MCS Industries' statement that "MSC refused to produce any documents and communications from its own appointed booking agents," Int. Br at 22, is also false. Mediterranean Shipping asked these parties to provide the documents, and when they refused had no recourse because they are not in fact its legal agents and it had no ability to direct their compliance. JA ____, _____, _____ [ROA 35 at 6, ROA 41 at 4, ROA 56 at 14]. MCS Industries likewise mischaracterizes discussions between counsel as to the Hague issues, failing to distinguish between voluntary and compelled production, Int Br. at 26, and falsely accuses Mediterranean Shipping of taking inconsistent positions as to the Hague Procedures. *Id.* at 26-27. Mediterranean Shipping's position has been consistent that those procedures were an efficient substitute for consultation procedures, but that in any case some process was necessary. MCS Industries' attempts to suggest bad faith by mischaracterizing the record should be rejected.

The Commission's "alternative ground" for its decision, the delay provision of 46 U.S.C. § 41302(d), adds nothing. FMC Br. at 53-54. The Commission does not argue that this provision, which has never previously been applied in any context, provides a standard different from judicial and Commission precedent governing default, none of which supports a default here. The Commission's assertion that Mediterranean Shipping never "even argu[ed] specifically that the delay here was

not "undue," *id*. at 54, is risible; its position has always been that it proceeded promptly and diligently to resolve its legal jeopardy and that the resulting delay was necessary and cannot possibly be viewed as "undue."

## VI.   CONCLUSION

The Court should grant the petition for review, vacate the default judgment, and order the Commission to dismiss the underlying proceeding for lack of jurisdiction.  If the Court determines that the Commission does have jurisdiction, it should vacate the default judgment and order the Commission to undertake consultations under 46 U.S.C. § 41108(c)(2) or the Hague Procedures as to the discovery at issue.  The Court should also rule that the Shipping Act does not provide a cause of action for breach of a service contract simply because it is a filed agreement, or for discrimination between shippers.

Respectfully submitted,

*/s/ John Longstreth*

Michael F. Scanlon
John Longstreth
Christiana K. Goff
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9000
michael.scanlon@klgates.com
john.longstreth@klgates.com
christi.goff@klgates.com

*Counsel for MSC Mediterranean Shipping Company S.A.*

February 14, 2025
(filed February 18, 2025
Due to ecf unavailability)

28

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e)(1) because this brief contains 6474 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

I further certify that this document complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Times New Roman 14-point font using Microsoft Word.

*/s/ John Longstreth*
John Longstreth

## CERTIFICATE OF SERVICE

I certify that on February 18, 2025, I filed the foregoing Reply Brief for Petitioner with the Clerk of the United States Court of Appeals for the D.C. Circuit via the CM/ECF system, which will notify all participants in the case who are registered CM/ECF users.


*/s/ John Longstreth*